UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Case No. 6:18-bk-6821-KJ |
| | ) | |
| DON KARL JURAVIN, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## <u>CHAPTER 11 PLAN OF REORGANIZATION</u><br><u>OF</u><br><u>DON KARL JURAVIN</u>

**COUNSEL FOR DEBTOR**

Aldo G. Bartolone, Jr., Esq.
Florida Bar No. 173134
Bartolone Law, PLLC
1030 N. Orange Ave., Suite 300
Orlando, Florida 32801
Telephone: 407-294-4440
Facsimile: 407-287-5544
E-mail: aldo@bartolonelaw.com

**January 3, 2020**

PURSUANT TO 11 U.S.C. § 1125 NOTHING CONTAINED IN THIS PLAN OF REORGANIZATION OF DON KARL JURAVIN DATED JANUARY 3, 2020 (THE "PLAN") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICIATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTOR'S DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FORM TIME TO TIME HEREAFTER.   REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTY, AND OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN.  ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INTRODUCTION

DON KARL JURAVIN proposes the following plan of reorganization (the "Plan") pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtor's known history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan. Debtor, Don Karl Juravin, is the proponent of the Plan (the "Plan Proponent") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for: priority tax claims; 4 classes of secured claims; 2 classes of unsecured claims; and 1 class of equity interests.

Only holders of certain Claims and Equity Interests specified in the Plan are entitled to vote on the Plan. **ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTERETS ARE URGED TO CAREFULLY READ THE EXCULPATION AND INJUNCTION PROVISIONS SET FORTH HEREIN.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION**.

## ARTICLE I – DEFINITIONS

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under Sections 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request or motion seeking such cost or expense in the Chapter 11 Case on or before the Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor In Possession (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation

duly and validly incurred or assumed by the Debtor In Possession in the ordinary course of it business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-1930, and (iv) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court, provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 7.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtor with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provision of the Plan or any Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes, pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenging nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Assets** shall mean each and every item of Property of the Estate and every interest of the Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, privileges, Claims, demands or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract rights, or other rights, including without limitation rights to payment, contribution or distribution, whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other contracts, agreements, licenses, and leases.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean this bankruptcy case of the Debtor, which is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtor's Bankruptcy Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the estate, created pursuant to Section 541 of the Code, by the commencement of the Debtor's Bankruptcy case and shall include all property of the Estate as defined in such Section.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("F.R.B.P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended (the "Local Rules").

**Bella Collina** shall mean Bella Collina Property Property Owner's Association, Inc.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Section 544-554 (or equivalent provisions of applicable non-bankruptcy laws); (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtor, any party named or identified in the Debtor's schedules or statement of financial affairs, any pleadings filed in this Bankruptcy Case; and (c) the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 6:18-bk-6821-KJ under the caption *In re Don Karl Juravin.*

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Claims Bar Date** shall mean January 4, 2020 for non-governmental units or 180 days from the Petition Date for governmental units, which are the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 90 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C., 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtor.

**Conversion Date** shall mean September 16, 2019, the date on which the Bankruptcy Court entered an Order and Notice Converting Case to Chapter 11 (Doc. No. 174).

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**DCS** shall mean DCS Real Estate Investments, LLC.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtor** shall mean Don Karl Juravin, whose address is 15118 Pendio Drive, Montverde, Florida 34756.

**Debtor-In-Possession** shall mean Don Karl Juravin, as Debtor-In-Possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim of Interest.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under the applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof.  To the extent an objection relates to the allowance of only a

part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean funds to be paid to Holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met.  In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed and Debtor stipulates in writing that the Effective Date shall occur on such date.

**Executory Contract** shall mean every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Section 365 of the Bankruptcy Code, pursuant to the Plan or pursuant to separate motion.

**Equity Interests** shall mean all equitable interests of the Debtor in all non-exempt Assets.

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitations, the Causes of Action.

**Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

**Final Order** shall mean: (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired,, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of Debtor, which commences on the first day of January and concludes on the final day of December in the following calendar year.

**FTC** shall mean the Federal Trade Commission.

**FTC Adversary** shall mean *Federal Trade Commission v. Don Karl Juravin*, Adversary Proceeding Number 6:19-ap-00030-KJ, pending in the United States Bankruptcy Court, Middle District of Florida, Orlando Division.

**FTC Litigation** shall mean *Federal Trade Commission v. Don Juravin, et al.*, Case No. 8:15-cv-2231-MSS-CPT, United States District Court, Middle District of Florida, Tampa Division.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, province, territory, municipality, or other governmental entity in or of the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim: (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Homestead Property** refers to the Debtor's primary residence located at 15118 Pendio Drive, Montverde, Florida 34756.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean Debtor's legal and equitable interests in all exempt and non-exempt Assets.

**IRS** shall mean Internal Revenue Service, a government agency, which is a bureau of the United States Department of the Treasury.

**JI** shall mean Juravin, Incorporated, a Florida corporation.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore,

now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, Reorganized Debtor, or any other party with standing to bring such a challenge.

**MB Financial** shall mean Mercedes-Benz Financial Services USA LLC.

**MCO** shall mean Must Cure Obesity Co., a Florida corporation.

**Non-ordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; *provided, however,* that any due and unpaid, post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**Petition Date** shall mean October 31, 2018, the date on which the Court entered the order for relief under Chapter 7 of the Code.

**Plan** shall mean this amended Chapter 11 plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to Sections 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses, pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to F.R.B.P. 3001, 3002 or 3003.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Pro Rata** shall mean with respect to an Allowed Claim in a given class, that same proportion that the Allowed Claims bears to the aggregate of all Allowed Claims in such class.

**Pro Rata Share** means as to any Allowed Class 6 Unsecured Claim as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of: (i) the numerator of which is the amount of such Allowed Class 6 Unsecured Claim; and (ii) the denominator of which is the sum of (x) all Allowed Class 6 Unsecured Claims as of such date plus (y) all Disputed Class 6 Claims as of such date.

**PSR** shall mean PSR Developers LLLP.

**Reorganized Debtor** shall mean the Debtor emerging from this Chapter 11 and created on the Effective Date.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtor or Reorganized Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. § 101(51).

**Unclaimed Property** shall mean any cash, or any other Property of the Debtor or Reorganized Debtor unclaimed for a period of six (6) months after any Distribution.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a creditor holding an Allowed Unsecured Claim.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

### A.   General Rules of Classification

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Nothwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

### B.   Classifications

All Claims and Interests treated under Articles III – V of the Plan are divided into the following classes, which shall be mutually exclusive:

Class 1 – PSR

Class 1 consists of the Allowed Secured Claim of PSR. This Claim is secured by a first-priority mortgage lien on the Homestead Property. The Allowed Class 1 Secured Claim is in the amount of $1,332,509.75. This Class is Unimpaired.

Class 2 – Bella Collina

Class 2 consists of the Holder of the Disputed Claim of Bella Collina. This Disputed Class 2 Secured Claim is counted for financial projection purposes only, in the amount of $141,324.31, without conceding that Bella Collina has any allowed claim, and subject to any and all of the Debtor's rights under Sections 105, 362, 502, 506, 510, 544, 547, 550, 551 and 552 of the Bankruptcy Code and applicable non-bankruptcy law. This Class is Impaired.

Class 3 – MB Financial (GLS550)

Class 3 consists of the Allowed Secured Claim of MB Financial. This Claim is secured by first priority lien on a 2018 Mercedes-Benz GLS550, VIN: 4JGDF7DE7JB003154. The Allowed Class 3 Secured Claim is in the amount of $34,740.82. This Class is Impaired.

Class 4 – MB Financial (S560)
Class 4 consists of the Allowed Secured Claim of MB Financial.  This Claim is secured by first priority lien on a 2018 Mercedes-Benz S560, VIN: WDDUG8DB3JA367158.  The Allowed Class 4 Secured Claim is in the amount of $75,455.27.  This Class is Impaired.

Class 5 - FTC
Class 5 consists of the Allowed Unsecured Claim of the FTC.  The FTC holds an unsecured claim against the Debtor arising out of a final judgment obtained in the FTC Litigation.  The pending balance of the judgment against the Debtor is in the amount of $24,820,763.28.  This Class is Impaired.

Class 6 – General Unsecured Claims
Class 6 consists of the Allowed Unsecured Claims against the Debtor.  This Class is Impaired.

Class 7 – Equity Interests
Class 7 consists of all legal and equitable interests of the Debtor in all non-exempt Assets.  This Class is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

### A.      Administrative Claims

1.      Nonordinary Course Administrative Claims.

a.      Any person, including any professional who has rendered services to Debtor during the course of the Bankruptcy Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Reorganized Debtor shall bar such a claimant from seeking recovery on such Claim.

b.      Each Holder of a Nonordinary Course Administrative Claim or Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such Holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date of the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court.  As provided for in Article VII of the Plan, the Debtor's cash-on-hand as of the Effective Date shall be first used to pay Nonordinary Course Administrative

Claims.  However, nothing in this provision of the Plan shall preclude the Debtor from paying any Holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim Holder consents to different payment terms.

> 2.      Ordinary Course Administrative Claims.

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto.  An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

## B.      Priority Tax Claims

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax[1] Claim against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with Section 1129(a)(9)(c) of the Bankruptcy Code, which will be paid based on a five (5) year amortization and maturity with payments made monthly.  Holders of Allowed Secured Tax Claims shall receive interest at the statutory rate.  Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes an Allowed Claim.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

There are two (2) classes of Unimpaired Claims and Interests as follows:

## A.      Class 1 – PSR

Class 1 consists of the Allowed Secured Claim of PSR.  PSR has filed Proof of Claim Number 5, alleging a secured claim in the amount of $1,332,509.75. This Claim is secured by a first-priority mortgage lien on the Homestead Property.

PSR shall be secured by a lien on the Homestead Property to the same validity and priority as existed as of the Petition Date.  Pursuant to the note and mortgage in favor of PSR, which is secured by the Homestead Property, the monthly contractual payment to PSR is in the amount of $6,830.00.  The Debtor is current on his monthly contractual payments to PSR. The Debtor shall continue to perform under the loan documents with PSR and shall continue to make the monthly contractual payments to PSR pursuant to the note and mortgaged held by PSR.

Class 1 is Unimpaired.

---

[1] Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. § 507(a)(8) shall be treated as a Class 6 General Unsecured Claim.

B.      **Class 7 – Equity Interests**

Class 7 consists of all legal and equitable interests of the Debtor in all non-exempt Assets.

Class 7 is Unimpaired.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

A.      **Determination of Allowed Amounts**

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim.  Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and non-bankruptcy law, as well as the right to assert that any such Claim included amounts subject to equitable subordination or other equitable relief.  The Reorganized Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date.  Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

B.      **Impairment/Classification Controversies**

If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

C.      **Class 2 – Bella Collina**

Class 2 consists of the Holder of the Disputed Claim of Bella Collina.  This Disputed Class 2 Secured Claim is counted for financial projection purposes only, in the amount of $141,324.31, without conceding that Bella Collina has any allowed claim, and subject to any and all of the Debtor's rights under Sections 105, 362, 502, 506, 510, 544, 547, 550, 551 and 552 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and applicable non-bankruptcy law.

The Debtor has filed an Objection to Claim No. 6 of Bella Collina (the "Bella Collina Objection") (Doc. No. 228).  If the Bella Collina Objection is overruled, then in full satisfaction of the allowed secured claim, Bella Collina shall be secured by a lien on the Homestead Property to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 120 months at a five percent (5.00%) fixed rate of interest.  The first payment will be due on the thirtieth day after

the Effective Date and shall continue on the same day of each month thereafter. The monthly payments of principal and interest to Swift will be in the amount of $1,498.96. The Debtor shall have the absolute right to pre-pay some or all of the allowed secured claim of Bella Collina prior to the maturity date under the Plan with no penalties, fees or interest.

If the Bankruptcy Court determines that Bella Collina has an allowed secured claim for an amount less than the full value stated in their Proof of Claim, said amount shall be paid on the same terms stated above.

Class 2 is Impaired.

### D.    Class 3 – MB Financial (GLS550)

Class 3 consists of the Allowed Secured Claim of MB Financial. This Claim is secured by first priority lien on a 2018 Mercedes-Benz GLS550, VIN: 4JGDF7DE7JB003154. The Allowed Class 3 Secured Claim is in the amount of $34,740.82.

MB Financial filed Proof of Claim Number 8, alleging a secured claim in the amount of $34,740.82 arising out of a pre-petition loan to Debtor for the purchase of a 2018 Mercedes-Benz GLS550, bearing Vehicle Identification Number 4JGDF7DE7JB003154.

In full satisfaction of MB Financial's Allowed Secured Claim, MB Financial shall be secured by a lien on the 2018 Mercedes-Benz GLS550 to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 60 months at a seven and one-half percent (7.50%) fixed rate of interest. The first payment will be due on the thirtieth day after the Effective Date and shall continue on the same day of each month thereafter. The monthly payments of principal and interest to MB Financial will be in the amount of $696.13. The Debtor shall have the absolute right to pre-pay some or all of the Allowed Secured Claim of MB Financial prior to the maturity date under the Plan with no penalties, fees or interest.

Upon payment in full of the Allowed Secured Claims of MB Financial, MB Financial shall release their lien on the 2018 Mercedes-Benz GLS550, bearing Vehicle Identification Number 4JGDF7DE7JB003154, and shall cause the original title to be issued to the Debtor or Reorganized Debtor.

Class 3 is Impaired.

### E.    Class 4 – MB Financial (S560)

Class 4 consists of the Allowed Secured Claim of MB Financial. This Claim is secured by first priority lien on a 2018 Mercedes-Benz S560, VIN: WDDUG8DB3JA367158. The Allowed Class 4 Secured Claim is in the amount of $75,455.27.

MB Financial filed Proof of Claim Number 9, alleging a secured claim in the amount of $74,455.27 arising out of a pre-petition loan to Debtor for the purchase of a 2018 Mercedes-Benz S560, bearing Vehicle Identification Number WDDUG8DB3JA367158.

In full satisfaction of MB Financial's Allowed Secured Claim, MB Financial shall be secured by a lien on the 2018 Mercedes-Benz S560 to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 60 months at a seven and one-half percent (7.50%) fixed rate of interest. The first payment will be due on the thirtieth day after the Effective Date and shall continue on the same day of each month thereafter. The monthly payments of principal and interest to MB Financial will be in the amount of $1,511.97.  The Debtor shall have the absolute right to pre-pay some or all of the Allowed Secured Claim of MB Financial prior to the maturity date under the Plan with no penalties, fees or interest.

Upon payment in full of the Allowed Secured Claims of MB Financial, MB Financial shall release their lien on the 2018 Mercedes-Benz S560, bearing Vehicle Identification Number WDDUG8DB3JA367158, and shall cause the original title to be issued to the Debtor or Reorganized Debtor.

Class 4 is Impaired.

F.    **Class 5 – FTC**

Class 5 consists of the Allowed Unsecured Claim of the FTC.  The FTC holds an unsecured claim against the Debtor arising out of a final judgment obtained in the FTC Litigation. The pending balance of the judgment against the Debtor is in the amount of $24,820,763.28.

The FTC filed Proof of Claim Number 3 alleging an unsecured claim in the amount of $24,820,763.28.  The FTC has filed the FTC Adversary seeking to except their debt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

In the event the Debtor is the prevailing party in the FTC Adversary, in full satisfaction of the Class 5 Allowed Unsecured Claim of the FTC, the total sum of $500,000.00 shall be paid to the FTC.  Payments shall be made in 40 equal quarterly installments over a period of one hundred twenty (120) months.  Each quarterly payment shall be in the amount of $12,500.00.  The first quarterly payment shall be due on the sixtieth day following the Effective Date and will continue every three months thereafter.

In the event the FTC is the prevailing party in the FTC Adversary, then the Class 5 Unsecured Claim of the FTC shall be non-dischargeable and become an Unimpaired Class and not entitled to vote on the Plan.

Class 5 is Impaired.

G.    <u>**Class 6 – Allowed Unsecured Claims**</u>

Class 6 consists of the Allowed General Unsecured Claims against the Debtor.  The Debtor estimates that the total amount of Allowed Unsecured Claims against the Debtor will be $477,573.87.  In full satisfaction of the Class 6 Allowed Unsecured Claims, the total sum of $100,000.00 shall be paid to the Holders of Class 6 Allowed Unsecured Claims on a *Pro Rata* basis.  Payments shall be made in 20 equal quarterly installments over a period of sixty (60) months.  The first payment shall be due on the sixtieth day following the Effective Date and will continue every three months thereafter.

Class 6 is Impaired.

H.    <u>**Disputed Claims**</u>

No distribution will be made to any Holder of a Disputed Claim.  Any distributions to a Holder of a Disputed Claim shall be made only to the extent such Disputed Claim is or becomes an Allowed Claim pursuant to a Final Order, by settlement, or otherwise.  To the extent Claims are Disputed Claims, the Debtor shall establish an appropriate reserve for Disputed Claims to be deducted from the amounts to be distributed to Holders of Allowed Unsecured Claims after the Effective Date.  Any person who holds both an Allowed Claim and a Disputed Claim will receive the appropriate distribution on the Allowed Claim, although no distribution will be made on the Disputed Claim until such dispute is resolved by settlement or Final Order.

## <u>ARTICLE VI – UNEXPIRED LEASES AND EXECUTORY CONTRACTS</u>

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred.  Such Claim shall be served upon the Debtor. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 6 General Unsecured Claims.  The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or by law) existing as of the Petition Date to any current or former officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to Section 365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF IMPLEMENTATION

A.     **Business Operations and Cash Flow**

The Plan contemplates that the Debtor will continue to operate the Debtor's businesses. The Debtor also anticipates that his wife will make continued contributions to the Debtor's household income. The Debtor believes cash flow from the continued operation of his businesses, plus his wife's contributions, will be sufficient to meet his household expenses and all Plan Payments.

B.     **Funds Generated During Chapter 11**

Funds generated by the Debtor, including contributions by the Debtor's wife to household income, during this Chapter 11 Case will be used for household expenses and Plan Payments to all Holders of Allowed Claims in Classes 1 through 6. If the Debtor sells any non-exempt Assets within sixty (60) months from the Effective Date, all net proceeds shall be used to make Plan Payments. It is in the Debtor's sole and absolute discretion to which Plan Payments such net proceeds shall apply.

C.     **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

D.     **Employment of Professionals Post-Confirmation**

After the Effective Date, the Debtor may retain professionals on such terms as the Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.

E.     **Re-vesting of Assets**

The remaining property of the estate of the Debtor shall vest in the Reorganized Debtor on the Effective Date, except as otherwise provided in the Plan. As of the Effective Date, all property of the Debtor or Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

F.     **Limitations of Liability**

The Debtor and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, shall have no liability to any

19

entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document relating to, arising out of, or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence.

## ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION

### A.    Cash Payments

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

### B.    Delivery of Distributions

Distributions and deliveries to Holders of Allowed Claims and Interests shall be made at the addresses set forth on the Proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no Proof of Claim or Interest is filed, or if the Debtor or Reorganized Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor are notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

### C.    Time Bar to Cash Payments

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

### D.    Transfer of Claim

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any requests made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice,

20

the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

### A.    Objection Deadline

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interests no later than ninety (90) days after the Confirmation Date.

### B.    Prosecution of Objections

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests.   All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III above.

### C.    No Distribution Pending Allowances

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

### D.    Escrow of Allocated Distributions

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims.  As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise.  If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

### E.    Distributions After Allowance

Payments and distributions form escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim becomes an Allowed Claim shall be distributed, together

with dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

### F.      Distributions After Disallowance

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interests to which the Disallowed Claim or Interest belongs.

## ARTICLE X – TRUSTEE FEES

All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the Plan, will be paid on or before the Effective Date.

## ARTICLE XI – DISCHARGE, LIMITATION OF LIABILITY, GENERAL INJUNCTION AND CAUSES OF ACTION

### A.      General Injunction

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold, or may hold a Claim or other Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interest, other than actions brought to enforce rights or Claims not discharged under the Plan, Confirmation Order, or the Plan documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan; (d) asserting a setoff, right of subrogation or recoupment of any kind against any Debt, Liability or obligation due to the Debtor, the Reorganized Debtor for the purpose of consummating and implementing the transactions and acts contemplated by this Plan; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or Confirmation Order.  The Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, shall have the right to independently seek enforcement of this general injunction provision.

22

B.    <u>Discharge</u>

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) on the Effective Date the Confirmation Order shall operate as a discharge under 11 U.S.C. § 1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Reorganized Debtor and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to § 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the Effective Date (i) all Holders of Claims shall be barred and enjoined from asserting against the Reorganized Debtor and its property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtor shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest.  Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code

C.    <u>No Liability for Tax Claims</u>

Unless a taxing governmental authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such Governmental Authority shall be allowed against the Debtor or the Reorganized Debtor for taxes, penalties, interest, additions to the tax or other charges arising out of the failure, if any, of the Debtor, any of its affiliated, or any other Person or Entity, to have paid the tax or to have filed any tax return (including any excise tax return, income tax return or franchise tax return) in and for any period or arising out of any audit of any return for a period before the Petition Date.  The Reorganized Debtor shall be responsible for the filing of all unfiled tax returns of the Debtor relating to any period prior to the Effective Date.

D.    <u>Exculpations from Liability</u>

Each of the listed parties shall have the right to individually seek enforcement of this provision.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

E.    <u>No Successor Liability</u>

Except as otherwise provided in the Plan or in the Confirmation Order for the purpose of consummating and implementing the transactions and acts contemplated by this Plan do not, and shall not be deemed to, pursuant to the Plan, or otherwise, assume, agree to perform, pay or indemnify any Holders of any Claims or Equity Interests or otherwise have any responsibilities for any Liabilities, Claims, Debts or obligations of the Debtor or the Reorganized Debtor, whether arising prior to, on or after the Effective Date, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, is not, nor shall it be deemed

to be a successor or successor in interest to the Debtor by reason of any theory of law or equity, and shall have no successor or transferee liability of any kind or character, and the Confirmation Order shall contain language to this effect.

## ARTICLE XII – RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain the fullest and most expansive jurisdiction that is permitted under applicable law to issue any order or process to carry out the provisions of the Plan, including, but not limited to, determine all claims, enforce all obligations established in the Plan and the Confirmation Order, adjudicate any adversary proceeding or contested matter pending on the Confirmation Date or contemplated in the Plan or available under the Plan, determine any application for the allowance of compensation pursuant to Sections 330, 331 or 503(b), to enforce and interpret the Plan and to resolve any dispute and questions of any kind arising in connection with any act arising out of or contemplated by the Plan and the rights created herein or in the Confirmation Order.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as set forth specifically in the preceding paragraph.

## ARTICLE XIII – MISCELLANEOUS

### A.    Modification of the Plan

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rule requirements.

After entry of the Confirmation Order, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (a) the Debtor or the Reorganized Debtor (as the case may be) obtains approval of the Bankruptcy Court for such modification, after notice and hearing, and (b) such modification shall not materially or adversely affect the interests for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, or the interests, rights, treatment, or distributions of any Class of Allowed Claims or Equity Interests under the Plan.

After the Confirmation Date, and before substantial consummation of the Plan, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that: (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor obtains Bankruptcy Court approval of such modification, after notice and hearing; and (c) such modification is accepted by at least two-

thirds (2/3) in amount, and more than one-half (1/2) in number, of Allowed Claims or by at least two-thirds (2/3) in amount of Allowed Equity Interests voting.

**B.      Confirmation Order and Plan Control**

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C.      Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.      No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**E.      Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**F.      Further Assurances**

The Debtor or the Reorganized Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**G.      Notices**

All notices, requests, or other documents in connection with, or required to be served by the Plan, shall be in writing and shall be sent by United States Mail, first class and postage prepaid, or by overnight delivery by a recognized courier service to the following:

       Counsel for the Debtor and Reorganized Debtor:

       Aldo G. Bartolone, Jr., Esq.
       Bartolone Law, PLLC
       1030 N. Orange Ave., Suite 300
       Orlando, Florida 32801

       Debtor and Reorganized Debtor:

       Don Karl Juravin
       15118 Pendio Drive
       Montverde, Florida 34756

       United States Trustee:

       Office of the United States Trustee
       400 W. Washington Street
       Suite 1100
       Orlando, Florida 32801

**H.**      **Estimated Claims**

       To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount greater than the estimated amount.

**I.**      **Consent to Jurisdiction**

       Except to the extent that any agreement, including any loan-related document emanating from this Plan, provides for jurisdiction in another forum, upon any default under the Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

       By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

J.      **Modification of Payment Terms**

　　　　The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

K.      **Compliance with Tax Requirements**

　　　　In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements.  The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with the below.  The payment of all taxes on all Distributions shall be the sole responsibility of the distribute.

L.      **Distribution of Unclaimed Property**

　　　　Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant Distribution date shall be forfeited and such Distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

　　　Respectfully submitted this 3rd day of January, 2020.

　_/s/ Aldo G. Bartolone, Jr._
ALDO G. BARTOLONE, JR.
Florida Bar No. 173134
BARTOLONE LAW, PLLC
1030 N. Orange Ave., Suite 300
Orlando, Florida 32801
Telephone: 407-294-4440
Facsimile: 407-287-5544
E-mail: aldo@bartolonelaw.com
Attorney for Debtor
