Marc J. Randazza (FL Bar No. 625566)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com
*Attorney for Creditors*
*Consumer Opinion Corp. & Opinion Corp.*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| In Re:<br><br>Don Karl Juravin<br><br>     Debtor.<br><br>Address:<br>  15118 Pendido Drive<br>  Monteverde, FL 34756<br><br>Last four digits of Social Security No.: 0745 | <br><br><br><br><br>Case No.: 6:18-BK-06821-CCJ<br><br><br><br><br><br><br>Chapter 11 |

### COMBINED RESPONSE OF CREDITORS CONSUMER OPINION CORP. AND OPINION CORP. D/B/A PISSEDCONSUMER.COM TO DEBTOR'S OBJECTIONS TO THEIR CLAIMS

Creditors, Consumer Opinion Corp. and Opinion Corp. d/b/a PissedConsumer.com, by and through undersigned counsel, hereby file this Response in opposition to 1) Objection to Claim No. 1 of Consumer Opinion Corp. (Doc. 230); and 2) Objection to Claim No. 2 of Opinion Corp. d/b/a PissedConsumer.com (Doc. No. 231), and in support hereof further states as follows:

/

/

/

## I. Introduction

1. On October 31, 2018 ("Petition Date"), Debtor Don Karl Juravin filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, which was converted to a petition under Chapter 11 on September 16, 2019 ("Conversion Date").

2. On January 7, 2019, Creditor Consumer Opinion Corp. filed Proof of Claim No. 1 ("COC Claim") and Creditor Opinion Corp. d/b/a PissedConsumer.com filed Proof of Claim No. 2 ("OC Claim", and collectively "the Claims").

3. The COC Claim and the OC Claim each alleged identical general unsecured claims in the amount of $481,806.98. This is the amount of damages they suffered at the hands of Debtor on account of violation of Fla. Stat. § 501.201 and malicious prosecution related to the "Roca Labs Lawsuit" identified in Debtor's Objections.

4. Debtor does not dispute the validity of Creditors' claims against Roca Labs, Inc. Instead, Debtor merely claims that he was not a party to the Roca Labs Lawsuit and made no claims in that suit, thereby disclaiming the Claims by Creditors.

## II. Jurisdiction and Venue

5. This Court has subject matter jurisdiction to consider and determine this proof of claim pursuant to 28 U.S.C. §§ 157 and 1334, and Rule 3001.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1409(a) and Local Rule 1071-1 of the United States Bankruptcy Court for the Middle District of Florida.

## III. Background Facts

7. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, any party objecting to the

claim has the burden of introducing evidence sufficient to rebut the presumption of validity. *See generally,* Collier on Bankruptcy ¶ 3001.09[2] (16th ed. 2019).

8. Debtor's Objections to the Claims offer no evidence to rebut the presumption of validity. For ease of reference, Creditors restate herein the facts underpinning their Claims.

9. In a proceeding before the Middle District of Florida, the Federal Trade Commission proved that Debtor has made millions of dollars by running a common enterprise of multiple companies in the State of Florida, including but not limited to Roca Labs, Inc[1]. *See FTC v. Roca Labs, Inc*., No. 8:15-cv-2231, 2018 U.S. Dist. LEXIS 182171, at *4-5 (M.D. Fla. Sep. 14, 2018).

10. Roca Labs produced and marketed purported weight-loss products that it advertised as an alternative to gastric bypass surgery. *See id*.

11. Debtor controlled every aspect of Roca Labs and is individually liable for its unlawful actions. *See id.* at *53-56.

12. Customers who purchased Roca Labs' weight loss products, which cost approximately $640.00 for a three-month supply, were subjected to a gag-clause that prohibited customers from publishing disparaging comments about Roca Labs' weight-loss products. See Exhibit __, Roca Labs Terms and Conditions, attached as Exhibit 2.

13. Roca Labs advertised the weight-loss products with deceptive illustrations, such as the one shown below in Figure 1, to show how its weight loss products worked:

/
/
/
/
/

---

[1] See 2014 Florida Profit Corporation Amended Annual Report, attached as Exhibit 1.

**Figure 1**



14. The Roca Labs weight loss products were, essentially, dietary fibers, and there is no evidence that any of its products worked as claimed. See *FTC v. Roca Labs, supra* at *22-24.

15. At all relevant times herein, Roca treated Consumer Opinion[2] and Opinion Corp.[3] as joint operators of a consumer review website called <pissedconsumer.com> ("Consumer Review Website"). *See Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1314-15 (M.D. Fla. 2015).

16. Consumers complained on the Consumer Review Website that Roca Labs' weight loss products were "JUNK" and that Roca Labs was not honest about its product. See *id.* at 1315.

17. In 2014, Debtor, on behalf of Roca Labs, filed a meritless lawsuit against the Creditors alleging that consumers should not be allowed to post truthful reviews criticizing Roca Labs on Creditors' Consumer Review Website. See, generally, *id.*

18. Roca Labs claimed, among other claims, that the Creditors' consumer review website tortuously interfered with its customers' contractual relationships by allowing Roca Labs'

---

[2] See Consumer Opinion New York Entity Information, attached as Exhibit 3.
[3] See Opinion Corp. New York Entity Information, attached as Exhibit 4.

customers to violate the "gag clause" in its Terms of Use, given that the customers wrote truthful but negative reviews about its weight loss products on the Consumer Review Website.

19. Debtor relentlessly pursued this vexatious lawsuit against the Creditors in an attempt to bully the Creditors into agreeing to censor the truthful consumer reviews which revealed Roca Labs' unfair and deceptive business practices.

20. The United States District Court for the Middle District of Florida ("District Court") granted the Creditors' Motion for Summary Judgment finding that the Creditors were entitled to immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c). See 140 F. Supp. 3d 1311.

21. Such gag clause practices, including the suit against Creditors, violated the FTC Act. *See, FTC v. Roca Labs, supra* at *37-42.

22. The Creditors incurred attorneys' fees in the amount of $480,806.98 because it had to defend itself from Debtor's vexatious lawsuit. See Exhibit 5.

23. On September 14, 2018, the District Court granted the FTC's Motion for Summary Judgment and found that Roca Labs had engaged in deceptive and unfair acts, and that Debtor was individually liable for Roca Labs' deceptive and unfair acts. *See, FTC v. Roca Labs, supra* at 53.

24. The District Court found that Debtor was personally liable for the deceptive acts of Roca Labs because the multiple entities named in the FTC Complaint operated as a common enterprise, Debtor knew of the material misrepresentations and had participated in the deceptive acts, and Debtor had complete control over every aspect of Roca Labs, including the website, its products, and what lawsuits it pursued. *See id.* at 55.

25. The District Court further found that Debtor personally controlled Roca Labs, and that he personally received $7 million from the named corporate defendants from 2009 through 2015. See *id.* at 55.

26. Further, the District Court ruled that Debtor was individually liable for Roca Labs's actions because he liberally transferred funds back and forth from the different corporate accounts and paid his personal expenses from the corporate accounts. See *id.*

**IV. Analysis**

**A. Debtor is Personally Liable for the Debts of Roca Labs to Creditors**

27. At all relevant times, Roca Labs was Debtor's alter ego.

28. Under Florida law, the corporate veil may be pierced and alter ego liability found where there is "proof of deliberate misuse of the corporate form—tantamount to fraud. Such deliberate misconduct can be shown by closely examining the relationship between the shareholder and the corporation—there must be indicators that the corporation was a mere device or sham to accomplish some ulterior purpose, evade some statute, employed by the stockholders for fraudulent or misleading purposes, organized or used to mislead creditors, or evade existing personal liability." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 303 F. Supp. 3d 1282, 1286 (M.D. Fla. 2018) (internal citation and quotation marks omitted) citing *In re Hillsborough Holings Corp.,* 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994).

29. As a matter of law, it was established that Debtor and one other person "were the only owners and officers of" of certain entities operating as a common enterprise, one of which was Roca Labs. *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1399 (M.D. Fla. 2018).  It was "established that Juravin knew of the material misrepresentations [by Roca Labs] and either participated in the deceptive acts or had authority to control them." *Id.* at 1400. "Juravin controlled virtually every aspect of the Corporate Defendants' business, including marketing, websites, claim substantiation, expenditures, personnel, and lawsuits." *Id.* "From 2009 through 2015, Juravin controlled RLI, personally receiving approximately $7 million from the Corporate Defendants during this timeframe. … Juravin solely controlled [Roca Labs'] main checking accounts,

personally authorized credit card expenditures for online ads, and received bank statements addressed to his home for [Roca Labs] and ZCL. … Juravin also liberally transferred funds back and forth between all Corporate Defendants, transferred substantial sums to himself, and often paid his personal expenses from the corporate accounts." *Id.*

30. Debtor is estopped from denying the foregoing.

31. The foregoing demonstrate that Debtor utilized Roca Labs for fraudulent and misleading purposes, to evade personal liability.  Under Florida law, the veil may be pierced and Debtor found liable to Creditors as Roca Labs' alter ego.

32. Alternately, as in the litigation with the FTC, Debtor and Roca Labs may be found to have operated as a common enterprise.

33. "To determine whether a common enterprise, or maze of interrelated companies, exists, courts consider the pattern and frame-work of the whole enterprise. Factors relevant in a court's consideration of whether a common enterprise among entities exists include whether they (1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing.  A common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations.   Courts have also found that entities constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, No. 17-80495-CIV, 2019 U.S. Dist. LEXIS 152336, at *34 (S.D. Fla. Sep. 5, 2019) (internal citations and quotation marks omitted).

34. Notably, Debtor and Roca Labs are substantively consolidated, as "(1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some

harm or to realize some benefit." *Eastgroup Props. v. S. Motel Assocs., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991).

35. The Court in the FTC action found that the defendant entities therein "operated as a common enterprise." *FTC v. Roca Labs, Inc*., 345 F. Supp. 3d at 1400. Debtor's role was a key factor in that finding. *Id.* There is a substantial identity between Debtor and Roca Labs for the reasons set forth in the alter ego analysis above. Consolidation is necessary to avoid an asset-drained corporate shell being used to evade liability.

36. Thus, this Court may find Debtor personally liable for the debts of Roca Labs.

### B. Creditors' Claims are Otherwise Valid

37. Creditors are aggrieved persons within the meaning of Fla. Stat. § 501.211(1).

38. Debtor, acting through Roca Labs, engaged in "trade or commerce" as defined in the Act, § 501.203(8), by advertising, soliciting, providing, offering, or distributing a good, namely, his complained of weight-loss supplements.

39. At all times material, Debtor engaged in commerce with a "thing of value" as defined in the Act, § 501.203(9), namely by paying money to file a meritless suit against Creditors.

40. Under Fla. Stat. § 501.203(3), Debtor's adjudicated violation of the FTC Act, 15 U.S.C. §§ 41 *et seq.* constitutes a violation of the Act.

41. Debtor has engaged in unfair and deceptive acts and practices, has misled consumers through his actions, including by bringing frivolous lawsuits, and Creditors have been aggrieved by Debtor's violations of the Act.

42. Creditors had to retain an attorney to represent it in connection with Debtor's meritless lawsuit, and Creditors were responsible to jointly pay the reasonable attorneys' fees accrued in defending themselves from suit.

43. Thus, Debtor is liable to Creditors for the foregoing damages pursuant to Fla. Stat.§ 501.211, and they are entitled to recover actual damages, plus attorneys' fees and court costs as provided in Fla. Stat. § 501.2105 from Debtor.

44. Similarly, Debtor is liable to Creditors for malicious prosecution.

45. To prevail on a claim for malicious prosecution, a plaintiff must show "(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994); *see also, Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017)

46. When Debtor, through Roca Labs, commenced his meritless lawsuit against Creditors, he commenced an original judicial proceeding against the Creditors.

47. At all times material, Debtor had complete control over Roca Labs and was the legal cause of the original proceeding.

48. The termination of the original proceeding constituted a *bona fide* termination of that proceeding in favor of the Creditors given that Creditors had absolute immunity from suit pursuant to Federal law.

49. Debtor had no reasonable grounds to prosecute the original proceeding, due to a lack of probable case on the basis of Creditors' immunity from suit pursuant to Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c).

50. Debtor was greatly indifferent to the rights of Creditors, pursuing the lawsuit with malice to harm Creditors and for the purpose of bullying Creditors into removing critical reviews of Roca Labs.

51. Thus, due to Debtor's foregoing malicious prosecution, Creditors were jointly damaged in the amount of amount of $480,806.98.

### V. Conclusion

52. Debtor is the alter ego of or maintained a substantial identity with Roca Labs that he used to inflict harm on anyone who complained about their ineffectual weight-loss product. When customers complained on the PissedConsumer.com review site, Juravin took action not only against the customers, but against Creditors, wrongly trying to bully them into removing criticism of Debtor's scam. This protracted litigation cost Creditors dearly and they are entitled to recompense from Juravin, even if the plan provides only a fraction of the damages they suffered.

**WHEREFORE,** Creditors Consumer Opinion Corp. and Opinion Corp. d/b/a PissedConsumer.com respectfully request this Honorable Court enter and Order (a) denying the 1) Objection to Claim No. 1 of Consumer Opinion Corp. (Doc. 230); and 2) Objection to Claim No. 2 of Opinion Corp. d/b/a PissedConsumer.com (Doc. No. 231); (b) allowing Claim Nos. 1 and 2; and (c) granting such further relief that this Court deems just and proper.

Dated: January 29, 2020.                  Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza (FL Bar No. 625566)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com

*Attorney for Creditors*

Case No.: 6:18-BK-06821-CCJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF on all parties entitled to service including, but not limited to, Debtor's attorney, Aldo G. Bartolone, Jr., Esq., Bartolone Law, PLLC, 1030 N. Orange Avenue, Suite 300, Orlando, Florida, 32801, who has also been served this day via First Class Mail, postage prepaid.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza (FL Bar No. 625566)
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
ecf@randazza.com

*Attorney for Creditors*