UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Case No. 6:18-bk-6821-KJ |
| | ) | |
| DON KARL JURAVIN, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**<u>AMENDED DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125</u>**
**<u>OF</u>**
**<u>DON KARL JURAVIN</u>**

**COUNSEL FOR DEBTOR**

Aldo G. Bartolone, Jr., Esq.
Bartolone Law, PLLC
1030 N. Orange Ave., Suite 300
Orlando, Florida 32801
Telephone: 407-294-4440
Facsimile: 407-287-5544
E-mail: aldo@bartolonelaw.com

**January 31, 2020**

## I.    <u>INTRODUCTION</u>

DON KARL JURAVIN (the "Debtor") has prepared and is disseminating the Amended Disclosure Statement ("Disclosure Statement") to holders of claims against and interests in the Debtor for the purpose of soliciting acceptance of its Plan of Reorganization (the "Plan")  The Debtor believes this Disclosure Statement contains the information that is material, important and necessary for its creditors and interest holders to arrive at an informed decision in exercising their right to vote for acceptance of the Plan.  As a holder of a claim against or interest in the Debtor, your acceptance is important.  For a Class of Claims to accept the Plan, acceptances must be filed by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims for such classes that actually vote on the Plan.  A failure to vote on the Plan does not constitute either an acceptance or rejection of the Plan.  The Debtor urges parties-in-interest to read this Disclosure Statement and the Plan carefully prior to casting votes for or against the Plan.

**THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.  THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THE DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING DEBTOR (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBRTOR OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.  THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLSUTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, DEBTOR'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.**

**ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED**

**IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT.   THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR AND STOCKHOLDER IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.**

**THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.**

**A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN.  EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Don Karl Juravin, is a debtor under Chapter 11 of the Bankruptcy Code in a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court").

As prescribed by the Code and the Rules, Claim asserted against, and Equity Interests in, the Debtor are placed into "Classes."  The Plan designated priority tax claims, four (4) classes of secured claims, one (1) class of unsecured claims, and one (1) class of equity interests.  The classification of Claims and treatment of each Class are discussed in detail below.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired" and the Holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan (the "Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

---

**<u>VOTING DEADLINE</u>**

The last day to vote to accept or reject the Plan is March 4, 2020. All votes must be received by the Clerk of the United States Bankruptcy Court for the Middle District of Florida, 400 W. Washington Street, Suite 5100, Orlando, Florida 32801, by 5:00 p.m. (EST) on that day. You may cast your ballot by mail or online at <u>www.flmb.uscourts.gov</u>.

---

Upon receipt, the Ballots will be tabulated, and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail below, the Bankruptcy Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court will schedule a hearing (the "Confirmation Hearing") to consider whether the Debtor has complied with those requirements.

The Bankruptcy Code permits a court to confirm a plan even if all Impaired Classes have not voted in favor of a plan. Confirmation of a plan over the objection of a Class is sometimes referred to as a "cramdown." As described in greater detail below, the Debtor has expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

## II.    SUMMARY OF CHAPTER 11

### A.    <u>Property of the Estate</u>

The commencement of a chapter 11 bankruptcy case creates an estate comprising all the legal and equitable interest of the Debtor in property as of the date the petition is filed. Sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the Bankruptcy Court orders the appointment of a trustee. No trustee has been appointed in this case.

### B.    <u>Automatic Stay</u>

Pursuant to Section 362 of the Bankruptcy Code, the filing of a chapter 11 petition operates as an automatic stay applicable to all entities for various actions, including actions to collect pre-petition claims from the Debtor or otherwise interfere with its property or business.

### C.    <u>Plan of Reorganization</u>

The chapter 11 plan of reorganization sets forth the terms of the Debtor's financial reorganization. Since no trustee has been appointed, only the Debtor may file a plan during the

first 120 days after the Conversion Date in this Chapter 11 case. After the "exclusivity period" has expired, a creditor or any other party-in-interest may file a plan, unless the debtor files a plan within the exclusivity period. If a debtor files a plan within the exclusivity period, then, the Debtor is given 60 additional days during which the debtor may solicit acceptances of its plan. The solicitation period may be extended or reduced by the court upon a showing of "cause."

### D.    Disclosure Statement

An acceptance of a plan may not be solicited after the commencement of a chapter 11 case from the holders of a Claim unless, at the time of or before such solicitation, there is transmitted to such holder of the plan and a written disclosure statement approved, after notice and a hearing, by the court confirming "adequate information." Adequate information means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical, reasonable investor, typical of holders of claims or interests of the relevant class to make an informed judgment about the Plan.

### E.    Voting

A Class of Claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of such class held by creditors, other than various excluded entities. A Class of Interests has accepted a plan if the plan has been accepted by Holders of such Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such class held by Holders of such Interest, other than various excluded entities. A class that is not "impaired" under a plan, and each Holder of a Claim or Interest of such class, are conclusively presumed to have accepted the plan. A class is deemed not to have accepted a plan if such plan provides that the Claims or Interests of such class do not entitle the Holders of such Claims or Interests to receive or retain any property under the plan on account of such Claims or Interests.

### F.    Impairment

A Class of Claims or Interests is "impaired" if the legal, equitable, or contractual rights attaching to the Claims or Interests of that class are modified. Modification for purpose of determining impairment, however, does not include curing defaults and reinstating maturity.

### G.    Confirmation Standards

#### 1.    General

The proponent of the plan of reorganization must meet all applicable requirements of Section 1129(a) of the Bankruptcy Code (except Section 1129(a)(8) if the proponent proposes to seek confirmation of the plan under the provisions of Section 1129(b) of the Bankruptcy Code). These requirements include, among other things, that: (i) the plan comply with applicable provisions of Title 11, United States Code and other applicable law; (ii) the plan be proposed in good faith; and (iii) at least one impaired Class of creditors has voted to accept the plan.

2.    **Cramdown**

The Bankruptcy Court may confirm a plan of reorganization even though fewer than all the classes of impaired Claims and Interests have accepted the plan.  If a plan of reorganization is to be confirmed despite the rejection of a class if impaired Claims or Interests, then the proponent of the plan must show, among other things, that the plan of reorganization does not discriminate unfairly and that the plan is fair and equitable with respect to each impaired class of Claims or Interests that has not accepted the plan of reorganization.

## III – BACKGROUND INFORMATION

### A.    General Information About the Debtor

The Debtor is an individual who is married and has 2 minor children.  The Debtor and his family live in a single-family home located at 15118 Pendio Drive, Montverde, Florida 34756.  The Debtor is an entrepreneur who has dedicated over a decade to developing products and services to help combat the obesity crisis in the United States.

Currently, the Debtor owns and operates Must Cure Obesity Co., a Florida corporation.  In conjunction with other entities and individuals, the Debtor is working on the development of a mobile app.  Through Must Cure Obesity Co., the Debtor is paid an annual salary of $180,000.00, plus a car allowance.

The Debtor's wife owns and operates her own business.  She earns a salary of approximately $78,000.00.

### B.    Events Leading to Chapter 11 Filing

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code subsequent to the entry of a final judgment against him, and some of his related entities, in a case filed by the Federal Trade Commission.  Once the Debtor and his wife realized an increase and income, they sought conversion to Chapter 11 in order to pay back their creditors.

### C.    Bankruptcy Proceedings

Since the Petition Date, the Debtor has continued to operate its business as debtor-in-possession under Sections 1101(a) and 1108 of the Bankruptcy Code.  Pursuant to various provisions of the Bankruptcy Code, the Debtor has sought and obtained several orders from the Bankruptcy Court intended to facilitate the ongoing operations of the Debtor.  Those orders authorized the Debtor to, among other things: (i) retain counsel; and (ii) retain an accountant.  The Debtor has also been diligently working with its creditors in an effort to reach an agreement on consensual plan terms.

## IV. – PLAN OF REORGANIZATION

**THE DISCUSSION OF THE PLAN SET FORTH BELOW IS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN AND ITS EXHIBITS, THE TERMS OF WHICH ARE CONTROLLING.  HOLDERS OF CLAIMS AND EQUITY INTERESTS AND OTHER INTERESTED PARTIES ARE URGED TO READ THE PLAN IN ITS**

**ENTIRETY SO THAT THEY MAY MAKE AN INFORMED JUDGMENT CONCERNING THE PLAN.**

A.    **Overview**

In summary, the Plan contemplates the emergence of a Reorganized Debtor through the continued operations of the Debtor's businesses.  All Claims against the Reorganized Debtor shall be classified and treatment pursuant to the terms of the Plan.  As discussed more fully below, the Plan provides for four (4) classes of secured claims, one (1) class of unsecured claims, and one (1) class of equity interests.  This Plan also provides for the payment of administrative and priority tax claims.

Overall, the Plan provides that holders of Allowed Administrative Claims will be paid in full on the Effective Date.

B.    **Classification and Treatment of Claims and Interests**

1.    **Administrative Claims**

a.    Nonordinary Course Administrative Claims.

Any person, including any professional who has rendered services to Debtor during the course of the Bankruptcy Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Reorganized Debtor shall bar such a claimant from seeking recovery on such Claim.

Each Holder of a Nonordinary Course Administrative Claim or Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such Holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date of the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court.  As provided for in Article VII of the Plan, the Debtor's cash-on-hand as of the Effective Date shall be first used to pay Nonordinary Course Administrative Claims.  However, nothing in this provision of the Plan shall preclude the Debtor from paying any Holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim Holder consents to different payment terms.

b.      Ordinary Course Administrative Claims.

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto.  An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

2.      **Priority Tax Claims**

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax[1] Claim against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with Section 1129(a)(9)(c) of the Bankruptcy Code, which will be paid based on a five (5) year amortization and maturity with payments made monthly.  Holders of Allowed Secured Tax Claims shall receive interest at the statutory rate.  Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes an Allowed Claim.

3.      **Secured Claims**

a.      **Class 1 - PSR**

Class 1 consists of the Allowed Secured Claim of PSR.  PSR has filed Proof of Claim Number 5, alleging a secured claim in the amount of $1,332,509.75. This Claim is secured by a first-priority mortgage lien on the Homestead Property.    PSR  shall  be secured by a lien on the Homestead Property to the same validity and priority as existed as of the Petition Date.  Pursuant to the note and mortgage in favor of PSR, which is secured by the Homestead Property, the monthly contractual payment to PSR is in the amount of $6,830.00.  The Debtor is current on his monthly contractual payments to PSR.  The Debtor shall continue to perform under the loan documents with PSR and shall continue to make the monthly contractual payments to PSR pursuant to the note and mortgaged held by PSR. Class 1 is Unimpaired.

b.      **Class 2 – Bella Collina**

Class 2 consists of the Holder of the Disputed Claim of Bella Collina.  This Disputed Class 2 Secured Claim is counted for financial projection purposes only, in the amount of $141,324.31, without conceding that Bella Collina has any allowed claim, and subject to any and all of the Debtor's rights under Sections 105, 362, 502, 506, 510, 544, 547, 550, 551 and 552 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and applicable non-bankruptcy law.  The Debtor has filed an Objection to Claim No. 6 of Bella Collina (the "Bella Collina Objection") (Doc. No. 228).  If the Bella Collina Objection is overruled, then in full satisfaction of the allowed secured claim, Bella Collina shall be secured by a lien on the Homestead Property to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 120 months at a five percent (5.00%) fixed rate of interest.  The first payment will be due on the thirtieth day after the Effective Date and shall continue on the same day of each month thereafter.  The monthly payments of principal and interest to Bella Collina will be in the amount of $1,498.96.  The Debtor

---

[1] Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. § 507(a)(8) shall be treated as a Class 5 General Unsecured Claim.

shall have the absolute right to pre-pay some or all of the allowed secured claim of Bella Collina prior to the maturity date under the Plan with no penalties, fees or interest.        If        the Bankruptcy Court determines that Bella Collina has an allowed secured claim for an amount less than the full value stated in their Proof of Claim, said amount shall be paid on the same terms stated above.  Class 2 is Impaired.

c.    **Class 3 – MB Financial**

Class 3 consists of the Allowed Secured Claim of MB Financial. This Claim is secured by first priority lien on a 2018 Mercedes-Benz GLS550, VIN: 4JGDF7DE7JB003154.  The Allowed Class 3 Secured Claim is in the amount of $34,740.82.  MB Financial filed Proof of Claim Number 8, alleging a secured claim in the amount of $34,740.82 arising out of a pre-petition loan to Debtor for the purchase of a 2018 Mercedes-Benz GLS550, bearing Vehicle Identification Number 4JGDF7DE7JB003154.  In full satisfaction of MB Financial's Allowed Secured Claim, MB Financial shall be secured by a lien on the 2018 Mercedes-Benz GLS550 to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 60 months at a seven and one-half percent (7.50%) fixed rate of interest. The first payment will be due on the thirtieth day after the Effective Date and shall continue on the same day of each month thereafter. The monthly payments of principal and interest to MB Financial will be in the amount of $696.13.  The Debtor shall have the absolute right to pre-pay some or all of the Allowed Secured Claim of MB Financial prior to the maturity date under the Plan with no penalties, fees or interest. Upon payment in full of the Allowed Secured Claims of MB Financial, MB Financial shall release their lien on the 2018 Mercedes-Benz GLS550, bearing Vehicle Identification Number 4JGDF7DE7JB003154, and shall cause the original title to be issued to the Debtor or Reorganized Debtor.  Class 3 is Impaired

d.    **Class 4 – MB Financial**

Class 4 consists of the Allowed Secured Claim of MB Financial. This Claim is secured by first priority lien on a 2018 Mercedes-Benz S560, VIN: WDDUG8DB3JA367158.  The Allowed Class 4 Secured Claim is in the amount of $75,455.27. MB Financial filed Proof of Claim Number 9, alleging a secured claim in the amount of $74,455.27 arising out of a pre-petition loan to Debtor for the purchase of a 2018 Mercedes-Benz S560, bearing Vehicle Identification Number WDDUG8DB3JA367158.  In full satisfaction of MB Financial's Allowed Secured Claim, MB Financial shall be secured by a lien on the 2018 Mercedes-Benz S560 to the same validity and priority as existed as of the Petition Date and shall be paid through monthly payments of principal and interest, amortized over a period of 60 months at a seven and one-half percent (7.50%) fixed rate of interest. The first payment will be due on the thirtieth day after the Effective Date and shall continue on the same day of each month thereafter. The monthly payments of principal and interest to MB Financial will be in the amount of $1,511.97.  The Debtor shall have the absolute right to pre-pay some or all of the Allowed Secured Claim of MB Financial prior to the maturity date under the Plan with no penalties, fees or interest. Upon payment in full of the Allowed Secured Claims of MB Financial, MB Financial shall release their lien on the 2018 Mercedes-Benz S560, bearing Vehicle Identification Number WDDUG8DB3JA367158, and shall cause the original title to be issued to the Debtor or Reorganized Debtor.  Class 4 is Impaired

4.      **Unsecured Claims**

a.      **Class 5 – General Unsecured Claims**

Class 5 consists of the Allowed General Unsecured Claims against the Debtor.  The Debtor estimates that the total amount of Allowed Unsecured Claims against the Debtor will be $25,298,337.15.  In full satisfaction of the Class 5 Allowed Unsecured Claims, the total sum of $500,000.00 shall be paid to the Holders of Class 5 Allowed Unsecured Claims on a *Pro Rata* basis.  Payments shall be made in 40 equal quarterly installments over a period of one hundred twenty (120) months.  Each quarterly payment will be $12,500.00 which shall be distributed on a *Pro Rata* basis to the Holders of Class 5 Allowed Unsecured Claims.  The first payment shall be due on the sixtieth day following the Effective Date and will continue every three months thereafter until the total of $500,000.00 is paid in full.  Class 5 is Impaired.

5.      **Equity Interests**

a.      **Class 6 – Equity Interests**

Class 6 consists of all legal and equitable interests of the Debtor in all non-exempt Assets.  Class 6 is Unimpaired.

7.      **Summary of Classes of Claims and Interests**

| Class | Description | Amount Claimed | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| N/A | Administrative Claims | $100,000.00 | $100,000.00 | 100% | Unclassified and not entitled to vote. |
| N/A | Priority Tax Claim | $82,964.57 | $82,964.57 | 100% | Unimpaired and not entitled to vote. |
| 1 | Allowed Secured Claim of PSR | $1,332,509.75 | $1,332,509.75 | 100% | Unimpaired and not entitled to vote. |
| 2 | Disputed Claim of Bella Collina | $141,324.31 | $141,324.31[2] | 100% | Impaired |
| 3 | Allowed Secured Claim of MB Financial | $34,740.82 | $34,740.82 | 100% | Impaired |
| 4 | Allowed Secured Claim of MB Financial | $75,455.27 | $75,455.27 | 100% | Impaired |

---

[2] The Disputed Claim of Bella Collina is only an estimated claim for the purposes of the Plan and Disclosure Statement. The Debtor has filed an Objection to Claim No. 6 of Bella Collina, which must be resolved in order to obtain the actual allowed amount.

10

| 5 | Allowed General Unsecured Claims | $25,298,337.15 | $25,298,337.15 | 2.00% | Impaired |
| 6 | Equity Interests | Unknown | Unknown | The Debtor shall retain all legal and equitable interests in exempt and non-exempt property | Unimpaired and not entitled to vote. |

### C.    Means of Implementation

#### 1.    Business Operations and Cash Flow

The Plan contemplates that the Debtor will continue to operate the Debtor's businesses.  The Debtor also anticipates that his wife will make continued contributions to the Debtor's household income.  The Debtor believes cash flow from the continued operation of his businesses, plus his wife's contributions, will be sufficient to meet his household expenses and all Plan Payments.

#### 2.    Funds Generated During Chapter 11

Funds generated by the Debtor, including contributions by the Debtor's wife to household income, during this Chapter 11 Case will be used for household expenses and Plan Payments to all Holders of Allowed Claims in Classes 1 through 6.  If the Debtor sells any non-exempt Assets within sixty (60) months from the Effective Date, all net proceeds shall be used to make Plan Payments.  It is in the Debtor's sole and absolute discretion to which Plan Payments such net proceeds shall apply.

#### 3.    Section 1146 Exemption

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

#### 4.    Employment of Professionals Post-Confirmation

After the Effective Date, the Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.

**D.**    **Re-vesting of Assets**

The remaining property of the estate of the Debtor shall vest in the Reorganized Debtor on the Effective Date, except as otherwise provided in the Plan.  As of the Effective Date, all property of the Debtor or Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

**E.**    **Limitations of Liability**

The Debtor and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this Plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document relating to, arising out of, or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence.

**I.**    **Other Provisions**

1.    **Executory Contracts and Unexpired Leases**

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred.  Such Claim shall be served upon the Debtor.  In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code.  Such claims shall be deemed to be Class 5 General Unsecured Claims.  The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or by law) existing as of the Petition Date to any current or former officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to Section 365 of the Bankruptcy Code.

2.    **Provisions Governing Distribution**

a.    Cash Payments

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

b.    Delivery of Distributions

Distributions and deliveries to Holders of Allowed Claims and Interests shall be made at the addresses set forth on the Proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no Proof of Claim or Interest is filed, or if the Debtor or Reorganized Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor are notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

c.    Time Bar to Cash Payments

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

d.    Transfer of Claim

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any requests made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

3.    **Procedures for Resolving and Treating Contested Claims**

a.    Objection Deadline

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interests no later than ninety (90) days after the Confirmation Date.

b.    Prosecution of Objections

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III above.

c.    No Distribution Pending Allowances

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

d.    Escrow of Allocated Distributions

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise. If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

e.    Distributions After Allowance

Payments and distributions form escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim becomes an Allowed Claim shall be distributed, together with dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

f.    Distributions After Disallowance

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interests to which the Disallowed Claim or Interest belongs.

4.    **Securities Laws**

Pursuant to Section 1125(e) of the Bankruptcy Code, the transmittal of the Plan solicitation packages (including the Disclosure Statement and the Plan), the Debtor's solicitation of acceptances of the Plan, and the Reorganized Debtor, and any other persons'

participation in such activities are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale or purchase of securities.

5.    **Federal Income Tax Consequences**

a.    General

The tax consequences of the Plan to the Debtor and to the Holders of Claims and Equity Interests (the "Holders") are discussed below.  The discussion of the federal income tax consequences of the Plan to the Debtor and Holders under the United States Internal Revenue Code is provided for informational purposes only.  While this discussion addresses certain material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties.  Moreover, the tax consequences to a Holder may be affected by matters not discussed below (including, but not limited to, special rules applicable to certain types of persons, such as persons holding non-vested voting stock or otherwise subject to special rules, nonresident aliens, life insurance companies and tax exempt organizations) and by such Holders' particular tax situations.  In addition, this discussion does not address any state, local or foreign tax considerations that may be applicable to particular Holders.

b.    Cancellation of Indebtedness Income

Generally, cancellation of indebtedness triggers ordinary income to a debtor equal to the adjusted price (as determined for federal income tax purposes) of the indebtedness canceled.  If a debt is discharged in a Chapter 11 bankruptcy case, however, the Debtor does not recognize cancellation of indebtedness as income.  Instead, certain tax attributes otherwise available to the Debtor is reduced by the amount of the indebtedness canceled.  Tax attributes subject to reduction include: (i) net operating losses (NOL) and NOL carry forwards; (ii) most credit carry forwards; (iii) capital losses and carry forwards; (iv) the tax basis of the Debtor's depreciable and non-depreciable assets; and (v) foreign tax credit carry forwards.

Under Sections 108(b) and 1017 of the Internal Revenue Code, attributes are reduced in the following orders: first, net operating loss carryover; second, general business credit carryovers; third, capital loss carryovers; and fourth, tax basis.  In lieu of reducing net operating loss and carryovers, the taxpayer can elect to reduce tax basis first.  Such an election shall not apply to an amount greater than the aggregate adjusted bases of depreciable property held by the taxpayer as of the beginning of the taxable year following the taxable year in which the discharge occurs.

Therefore, any cancellation of indebtedness income realized by the Debtor would require a reduction in its NOL's or other tax attributes.  Because attribute reduction is calculated only after the tax for the year of discharge is determined, the realization of substantial amount of cancellation of indebtedness income as a result of implementation of the Plan, should not diminish the NOL's and NOL carry forwards otherwise available to offset other income recognized in the year in which the Plan is consummated.

The Debtor does not believe that the principal purpose of the Plan is the avoidance of federal income tax within the meaning of Section 269 of the Internal Revenue Code.

        c.      <u>Importance of Obtaining Professional Tax Assistance</u>

This discussion is intended only as a summary of certain federal income tax consequences of the Plan and is not a substitute for careful tax planning with a professional. The tax consequences are in many cases uncertain and may vary depending on a Holder's individual circumstances. Accordingly, Holders are urged to consult with their tax advisors about the federal, state, local and foreign tax consequences of the Plan.

NO RULING HAS BEEN SOUGHT OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY THE DEBTOR WITH RESPECT THERETO. NO REPRESENTATION OR ASSURANCE IS BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN. CERTAIN TYPES OF CLAIMANTS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSED IN THIS SECTION. THERE ALSO MAY BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO EACH HOLDER OF A CLAIM OR EQUITY INTEREST WHICH ARE NOT ADDRESSED HEREIN. EACH HOLDER OF A CLAIM OR EQUITY INTEREST AFFECTED BY THE PLAN MUST CONSULT AND RELY UPON SUCH HOLDER'S OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO SUCH HOLDER'S CLAIM OR EQUITY INTEREST. THIS INFORMATION MAY NOT BE USED OR QUOTED IN WHOLE OR IN PART IN CONNECTION WITH THE OFFERING FOR SALE OF SECURITIES.

## <u>V – CONFIRMATION</u>

**A.**    **<u>Confirmation Hearing</u>**

Section 1128 of the Bankruptcy Code requires the Court, after notice, to hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an <u>announcement</u> to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to the Confirmation Hearing:

<u>Counsel for the Debtor and Reorganized Debtor</u>:

Aldo G. Bartolone, Jr., Esq.
Bartolone Law PLLC
1030 N. Orange Ave., Suite 300
Orlando, Florida 32801

Debtor and Reorganized Debtor:

Don Karl Juravin
15118 Pendio Drive
Montverde, Florida 34756

United States Trustee:

Office of the United States Trustee
400 W. Washington Street
Suite 1100
Orlando, Florida 32801

**B.**      **Financial Information Relevant to Confirmation**

The Debtor does not, as a matter of course, make long-range external forecasts or projections of anticipated financial position or result of operation.

Attached as an Exhibit "A" to the original of the Disclosure Statement filed with the Court, and incorporated herein, is a copy of the Debtor's Chapter 7 liquidation analysis (the "Liquidation Analysis") establishing that the Creditors of the Debtor will fair materially poorer in the event the Debtor is forced into Chapter 7 as comparted to the Plan.

**C.**      **Confirmation Standards**

For a plan of reorganization to be confirmed the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code.  Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interests of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met.  The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1.      Best Interests Test

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each holder of an Allowed Claim or Interest of such Class either:  (a) has accepted the Plan; or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was, on the Effective Date, liquidated under Chapter 7 of the Code.  The Debtor believes that the Liquidation Analysis establishes satisfaction of this test.

To determine what holders of Claims and Equity Interests would receive if the Debtor was liquidated, the Bankruptcy Court must determine how the assets and properties of the Debtor would be liquidated and distributed in the context of a Chapter 7 liquidation case.

The Debtor's costs of liquidation under Chapter 7 would include the fees payable to a trustee in bankruptcy and to any additional attorneys and other professionals engaged by such trustee and any unpaid expenses incurred by the Debtor during the Chapter 11 Case, including compensation of attorneys and accountants. The additional costs and expenses incurred by a trustee in a Chapter 7 liquidation could be substantial and would decrease the possibility that Unsecured Creditors and holders of Equity Interests would receive meaningful distributions. The foregoing types of Claims arising from Chapter 7 administration and such other Claims as may arise in Chapter 7 or result from the pending Chapter 11 Case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay the Claims of Unsecured Creditors. Liquidation in Chapter 7 might substantially delay the date at which Creditors would receive any Payment.

The Debtors have carefully considered the probable effects of liquidation under Chapter 7 on the ultimate proceeds available for distribution to Creditors and holders of Equity Interests, including the following:

        a.      the possible costs and expenses of the Chapter 7 trustee or trustees;

        b.      the possible adverse effect on recoveries by Creditors under Chapter 7 due to reduced sale prices for the Debtors' assets caused by the forced Chapter 7 liquidation.

        c.      the possible substantial increase in Claims, which would rank prior to or on parity with those of Unsecured Creditors.

2.    <u>Financial Feasibility</u>

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless the liquidation is proposed in the Plan. Based upon the Debtor's financial projections, the Debtor believes that the operations of the Debtor will generate sufficient cash flow to make all Plan Payments as noted herein. Based upon the financial projections, the Debtor asserts that the Plan is feasible and Confirmation is not likely to be followed by further financial reorganization.

3.    <u>Acceptance by Impaired Classes</u>

The Bankruptcy Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-third (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-third (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan.  Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not impaired under a Plan is deemed to have accepted such Plan; solicitation of acceptances with respect to such Class is not required.  A Class is Impaired unless:  (i) the legal, equitable, and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date the holder of the Claim or Interest receives on account of such claim or interest, Cash equal to the Allowed Amount of such Claim or, with respect to any Interest, any fixed liquidation preference to which the holder is entitled.

4.     Confirmation Without Acceptance by all Impaired Classes (Cramdown)

The Code contains provisions that enable the Court to confirm the Plan, even though all Impaired Classes have not accepted the Plan, provided that the Plan has been accepted by at least one Impaired Class of Claims.  Section 1129(b)(1) of the Code states:

> "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly and it is fair and equitable with respect to each Class of Claims that is Impaired under and has not accepted the Plan.

**THE DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

## VI – ALTERNATIVES TO THE PLAN

The Debtor has evaluated numerous alternatives to the Plan, including: (a) the sale of the Debtor as a going concern, either as a whole or on a breakup basis; and (b) the liquidation of the Debtor.  After studying these alternatives, the Debtor has concluded that the Plan is the best alternative and will maximize recoveries by holders of Claims and Interests, assuming confirmation of the Plan.  The following discussion provides a summary of the Debtor's analysis leading to the

conclusion that a sale or liquidation will not provide the highest value to the holders of claims and interests.

A. **Sale on a Breakup Basis**

The Debtor believes that a sale at this time would be unconscionable, considering the Debtor has the ability to fully repay all creditors. The Plan, in contrast, enables creditors to participate fully in the going-concern value to be achieved through the implementation of the Debtor's business plan.

B. **Liquidation**

The Debtor has analyzed whether a liquidation of the assets of the Debtor would be in the best interests of the creditors. An analysis of the recovery that would likely result from liquidation under Chapter 7 of the Bankruptcy Code is set forth as Exhibit A to this Disclosure Statement. The Debtor believes liquidation would result in substantial diminution in the value to be realized by creditors because of (i) the failure to utilize the expertise of current management; (ii) additional administrative expenses involved in the appointment of the trustee and professionals to assist the trustee; (iii) additional expenses and Claims, some of which would be entitled to priority in payments, which would arise by reason of the liquidation and from rejection of leases and other executory contracts in connection with the termination of the Debtor's operations; (iv) the substantial time which would lapse before creditors would receive any distribution with respect to their Claims; (v) a failure to maximize the value of any assets that would be liquidated; and (vi) the likelihood that the value received would not even equal the amount of Allowed Claims. Therefore, the Debtor believes that the Plan provides a substantially greater return to holders of claims and interests than would liquidation.

C. **Alternatives if Plan Not Confirmed**

If the Plan is not confirmed, then the Debtor, or any other party in interest in the Chapter 11 Case, could attempt to formulate and propose a different plan or plans of reorganization. Such plans might involve either: (i) a reorganization and continuation of the Debtor's business; (ii) a sale of the Debtor's non-exempt Assets; (iii) an orderly liquidation of the Debtor's assets; or (iv) any combination thereof.

## ARTICLE VII – CONCLUSION

THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS DESIRABLE AND IN THE BEST INTERESTS OF CREDITORS AND INTEREST HOLDERS. The Plan provides for an equitable and early distribution of all Classes of the Debtor's creditors and reserves value, subject to certain restrictions, for equity security holders. Any alternative to confirmation of the Plan, such as liquidation under Chapter 7 of the Bankruptcy Code or attempts by another party in interest to file a plan, would result in significant delays, litigation, and cost. More importantly, the Plan proposes a distribution to unsecured creditors substantially greater than such creditors would receive in the absence of this Plan. The Debtor believes that a plan filed by another party in interest could only be confirmed over the objection of one or more impaired Classes and would generate costly and time-consuming litigation. Any delays in the confirmation of this Plan would jeopardize the viability of the Debtor as a going concern, and therefore diminish the high probability of a distribution in full to unsecured creditors to mere possibility. As described in "Acceptance and

Confirmation of the Plan – Best Interests of Creditors and Equity Security Holders – Liquidation Analysis," the Debtor believes that its creditors will receive greater and earlier recoveries under the Plan than those which could otherwise be achieved. **FOR THESE REASONS, THE DEBTOR URGES YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN**.

       Respectfully submitted this 31st day of January, 2020.

                                       */s/ Aldo G. Bartolone, Jr.*

                                       ALDO G. BARTOLONE, JR.
                                       Florida Bar No. 173134
                                       BARTOLONE LAW, PLLC
                                       1030 N. Orange Ave., Suite 300
                                       Orlando, Florida 32801
                                       Telephone: 407-294-4440
                                       Facsimile: 407-287-5544
                                       E-mail: aldo@bartolonelaw.com
                                       Attorney for Debtor

**EXHIBIT "A"**

**Don Karl Juravin**
**Case No. 6:18-bk-6821-KJ**

**LIQUIDATION ANALYSIS**

| | Asset | Estimated Liquidation Value as of Estimated Effective Date 2/1/2020 |
|---|---|---|
| 1. | Cash | $25,000.00 |
| 2. | Non-Exempt Equity in: Personal Property | $183,956.77 |

**TOTAL LIQUIDATION VALUE**          **$208,956.77**

Secured Debt          $1,473,834.06

Priority Claims          $114,123.37

Chapter 7 Trustee Compensation:          $9,202.95

Compensation for Trustee's Counsel:          $128,854.54

Compensation for Trustee's Accountants:          $48,312.55

**TOTAL SECURED, PRIORITY & ADMIN**          **$1,774,327.47**

**AVAILABLE FOR GENERAL UNSECURED**          **$0**
**CREDITORS**