**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:

Don Karl Juravin,    CASE NO.: 6: 18-bk-06821-KSJ
                    CHAPTER 11
    Debtor

_____/

**FTC'S OBJECTIONS TO DISCLOSURE STATEMENT**
**AND CONFIRMATION OF CHAPTER 11 PLAN**

Pursuant to 11 U.S.C. §§ 1125 and 1129 and Bankruptcy Rules 3017(a) and 3020(b), creditor Federal Trade Commission ("FTC") objects to approval of Debtor Don Karl Juravin's Amended Disclosure Statement and confirmation of his Amended Chapter 11 Plan. ECF Nos. 257-58. The FTC holds a $24.8 million allowed general unsecured claim comprising over 95% of that impaired class under the Plan, Class 5. The FTC has voted to reject the Plan, which will also presumably make Class 5 a dissenting impaired class for purposes of the § 1129(a)(7) and (8) confirmation requirements. The FTC joins in the objections made by creditor Bella Collina Property Owner's Association as to those confirmation requirements.

The Disclosure Statement should not be approved because the Plan is unconfirmable on its face. It purports to give Juravin a discharge of all preconfirmation debts upon confirmation without exception. This flies in the face of the § 1141 provisions specifying that an individual debtor cannot discharge any debt excepted from discharge under § 523, and gets no discharge at all unless and until he completes all payments under the plan or meets an alternative hardship test. 11 U.S.C. §§ 1141(d)(2), (d)(5). Moreover, the Disclosure Statement fails to provide adequate information about Juravin's means for implementation of Plan payments, which he proposes to make over 10 years from the cash flow of a flailing start-up business that has yet to

1

sell any products. He fails to provide any factual or financial analysis of his projected cash flow from business operations, household expenses, and projected disposable income (as defined in § 1129(a)(15)). That information is crucial for the FTC and other creditors to make an informed judgment as to whether or not the Plan is feasible and meets the minimum distribution requirements for individual Chapter 11 debtor plans. 11 U.S.C. §§ 1129(a)(11), (15).

The Plan cannot be confirmed because it fails to meet the requirements of § 1129(a)(1), (2), (11), and (15). The FTC requests that the Court deny approval of the Disclosure Statement and confirmation of the Plan, and urges the Court to reconvert this case to a Chapter 7 in the best interest of creditors and the estate.

## I. BACKGROUND

1. **FTC Action Leading to Juravin's Bankruptcy Case.** The FTC is the federal agency that protects consumers from deceptive or unfair trade practices by enforcing the FTC Act. 15 U.S.C. §§ 41-58.

2. The FTC has a final judgment against Juravin in *FTC v. Roca Labs. Inc.*, No. 8: 15-cv-2231-T-35TBM (M.D. Fla.) ("FTC Action"), for falsely advertising weight loss products and other deceptive trade practices. From 2009 through 2015, Juravin caused over $25 million in consumer injury. Final Judgment, DCt ECF No. 253 (Jan. 4, 2019); FTC Proof of Claim, Claim 3-1 Part 3 (Mar. 22, 2019).

3. Juravin was an owner, officer, or representative of his corporate codefendants in the FTC Action, and exercised authority and control over their false advertising and sale of dietary supplements to consumers throughout the United States.

4. The FTC filed its action against Juravin in September 2015. Shortly thereafter, the FTC obtained a stipulated preliminary injunction against Juravin and his co-defendants, including an

asset preservation injunction placing certain constraints on Juravin's use of personal and business assets. *See FTC v Roca Labs,* 2017 WL 11002077 *1 (M.D. Fla. Apr. 13, 2017) (Mag. Order denying Juravin motion to vacate preliminary injunction).

5. **Juravin's Repeated Mismanagement of Restricted and Frozen Assets in Violation of District Court Orders.** In August 2016, the FTC filed an emergency motion to modify the preliminary injunction to fully freeze Juravin's personal and business assets. The motion was based on evidence that Juravin had violated the preliminary injunction by: (a) transferring hundreds of thousands of dollars to a sham entity over which he had control; (b) directing one of his subordinates, Ms. Jenna Antico, to create fictitious invoices to hide assets; attempting to fraudulently transfer a vehicle to her for safe keeping; and trying to get her to sign a fraudulent $1 million promissory note. Juravin did not refute this evidence. *Id.* at *4 n. 4. He stipulated to a more stringent preliminary injunction with a full asset freeze. He later attempted to vacate that order, which the District Court flatly rejected. *Id.*

6. However, that did not stop Juravin. In 2017, without seeking prior court approval, he sold frozen assets –two vehicles that he personally owned and/or used, including a 2014 Mercedes Benz SL 550 roadster– and planned to use the approximately $35,000 in net sale proceeds to buy a new and more expensive luxury vehicle for nearly $90,000, a 2018 Mercedes GLS 550 SUV. He then moved for District Court approval of his actions after the fact. In addition, Juravin had another $16,000 credit on his account with the Mercedes dealer that he had failed to disclose in violation of the District Court's orders. *See FTC v. Roca Labs,* 2018 WL 1988873 *2-3 (M.D. Fla. Mar. 1, 2018).

7. The District Court (Judge Scriven) found that Juravin had violated the asset freeze order, denied his motion to approve his violative actions, and issued an order to show cause why he

should not be held in civil contempt and sanctioned. *Id.* at *3-5. In response, Juravin filed a sworn statement admitting his order violations, and showing that he belatedly cured his contempt by transferring the sale proceeds to and maintaining the sales credit with the custody of third parties for safekeeping, subject to the asset freeze. DCt ECF No. 207 (Mar. 15, 2018).

8. **FTC Action Judgment as to Liability Against Juravin.** On September 14, 2018, the District Court granted summary judgment for FTC against Juravin and his codefendants as to liability, including Must Cure Obesity Co. ("MCO") and Juravin Inc. ("JI"). Summary Judgment Order, DCt ECF No. 234, Claim 3-1 Part 4.

9. The District Court found that Juravin and his codefendants, *inter alia*: (a) made false and unsubstantiated weight-loss claims about their products as a "gastric bypass alternative;" (b) falsely claimed that use of their products was scientifically proven to have a 90% success rate in forcing users to eat half their usual food intake and cause substantial weight loss; (c) failed to disclose that they paid or offered other financial incentives to their own employees for appearing in testimonial videos and posting positive comments on blogs and social media about their products; and (d) failed to disclose that they controlled a supposedly independent and objective information website used to promote their products.

10. The District Court held Juravin jointly and severally liable with his corporate codefendants for the deceptive conduct because they operated as a common enterprise under his ownership and control, and he knew about, participated in, and had the authority to control it. Summary Judgment Order at 38-40. Further, the District Court found that from 2009-2015, Juravin personally received $7 million from his web of corporations, liberally layered or transferred funds back and forth among all of them, and often paid his personal expenses from corporate accounts. *Id*. at 39.

11. **Juravin Files Chapter 7 Petition.** On October 31, 2018, Juravin filed a petition for relief under Chapter 7 commencing this Bankruptcy Case. At that time, Juravin claimed that he and his spouse Anna Juravin had gross monthly wages of $24,000 and $5,416.66 respectively, and take-home monthly income of $21,830 and $3,810.62 respectively, for a combined monthly income of $25,640.62. Chapter 7 Schedule I, ECF No. 1 at 31-32 (Oct. 31, 2018).

12. **Juravin's Ongoing Expenses for His $2 Million Luxury Home.** As of the petition filing date, he also claimed total monthly expenses of $38,297.34 for his household of four, including $6,830 for his home mortgage. Juravin lives in a luxury 5 bedroom, 7 bathroom, 4,871 square foot home in a Central Florida golf community, with an estimated market value exceeding $2 million. Declaration of FTC Investigator Adam Rottner, Attachment 1.

13. **Juravin's Ongoing Expenses for His Two Mercedes Vehicles.** Juravin does not include in his income or expenses the "monthly car allowance" he pays himself, apparently from one or the other of his defunct companies, MCO and JI. Juravin owns two luxury automobiles with outstanding loans, a 2018 Mercedes S560V sedan (co-owned with JI), and a 2018 Mercedes 550 SUV (co-owned with JI). The monthly payments are $1,036.55 and $1,610.28 respectively, a total perk of $2,646.83 per month for his pair of Mercedes. Mercedes Benz Proofs of Claim, Claim 8-1 and 9-1 (Nov.4, 2019).

14. **FTC Action Final Judgment for Injunctive and Monetary Relief.** On November 6, 2018, the District Court issued an order for $25,246,000 in monetary relief against Juravin for the harm he caused to consumers. DCt ECF No. 241, Claim 3-1 Part 5.

15. On January 4, 2019, the District Court entered the Final Judgment against Juravin in that amount, and a permanent injunction.

16. The FTC recovered $425,236.72 in frozen assets of certain of Juravin's corporate codefendants in partial satisfaction of the Judgment. *See* Final Judgment at 18-20, Section IX.B (ordering turnover of certain frozen assets to FTC). Thus, on March 22, 2019, the FTC filed a general unsecured claim in the Bankruptcy Case for the balance of the Judgment, $24,820,763.28.

17. **Chapter 7 Trustee Recovers $150,000 in Juravin Assets Frozen by District Court in FTC Action.** In Juravin's Chapter 7 case, with the full cooperation of the FTC and very little from Juravin, Chapter 7 Trustee Dennis Kennedy ultimately recovered approximately $150,000 in assets frozen in the FTC Action and titled in Juravin's name. *See* Motion for Turnover of Property of Estate, ECF No. 191 (Oct. 15, 2019). As of the date this Bankruptcy Case was converted to a Chapter 11, the 341 examination had not yet concluded because Juravin had not produced key documents requested by the Chapter 7 Trustee.

18. **Court Converts Bankruptcy Case to Chapter 11 on Juravin's Motion.** On September 16, 2019, the Court (Judge Jackson) granted Juravin's motion to convert his case from Chapter 7 case to a Chapter 11. ECF No. 174. In his Motion to Convert Case, Juravin claimed that he so moved because he had "realized increased household income, resulting in greater disposable income." ECF No. 172 at 1 (Sep. 13, 2019).

19. **Post-Conversion 40% Decline in Juravin's Monthly Income.** On September 30, 2019, Juravin filed an amended Schedule I in his Chapter 11 case. Contrary to what he claimed in his conversion motion, his monthly take home income *decreased* by over 40% between his September 2018 petition filing date and September 2019 Chapter 11 conversion date, from $21,830 to $12,397.55. Chapter 7 Schedule I, ECF No. 1 at 31-32 (Oct. 31, 2018); Chapter 11 Amended Schedule I, ECF No. 186 at 11-12 (Sep. 30, 2019). His combined monthly income

with his spouse, Ana Juravin, also decreased by over 30%, from $25,640.62 pre-conversion to $17,732.55 post-conversion. *Id.*

20. **Juravin Refuses to Disclose Source of Funds for His Monthly Income and 12-Month Pre-Payment of His Mortgage.** In the Chapter 11 case, the initial 341 meeting was held on October 21, 2019, and continued on December 9, 2019, when it was concluded. At his 341 meeting, Juravin represented that he is employed as a marketing expert for a startup entity owned by his spouse, and that he is developing a personal electronic device application that would provide weight loss coaching services to users, but has no finished product to sell yet. However, he refused to answer any questions or provide information about the source of funds used to pay his salary and his spouse's for their business venture.

21. In Juravin's Amended Schedule J, line item 2.4 for monthly mortgage payments –which should amount to $6,830– is blank. Chapter 11 Amended Schedules, ECF No. 186 at 11 (Sep. 30, 2019). At his 341 examination, Juravin stated that his spouse had prepaid their mortgage for a year, a sum of $81,960. However, he refused to answer any questions about the source of those funds as well.

22. **Personal Property and Avoidance Actions that Juravin Fails to Address in His Disclosure Statement and Plan**. On October 25, 2019, Dennis Kennedy, who served as Chapter 7 Trustee in that phase of the Bankruptcy Case, filed a Fee Application. ECF No. 194. In his Application, Kennedy states that the forensic accounting firm he retained created reports about potential fraudulent transfers to third parties, potential preference targets as well as significant funds transferred overseas that he could seek to be turned over. *Id*. at 1-3, ¶¶ 5-6. He also recounts that he identified non-exempt assets and attempted to negotiate a buyback arrangement with Juravin's attorney and/or make arrangements for the surrender of the non-exempt assets for

sale at auction. *See* Trustee Motion to Approve Sale of Property, ECF No. 167 (Aug. 23, 2019). Juravin fails to address the value of that property of the estate or avoidance actions that could be pursued for the benefit of creditors in his Plan and Disclosure Statement, actions in which he would likely have a conflict of interest.

23. **Monthly Operating Reports (MORs).** In his MORs, Juravin has also been reporting financial information about his two defunct business entities, MCO and JI. However, as he admitted in his Case Management Summary, neither of those entities are actually conducting any business. ECF No. 181 at 1 (Sep. 29, 2019).

24. In fact, JI –Juravin, Incorporated– has been administratively dissolved since September 27, 2019. Rottner Dec., Att. 2.

25. **MCO Chapter 11 Bankruptcy Case.** Further, on January 31, 2020, Juravin filed a Chapter 11 petition for MCO, which he has not disclosed in his own Bankruptcy Case. *In re Must Cure Obesity,Co.,* Case No. 8:20-bk-00924-CED (Bankr. M.D. Fla.). The MCO bankruptcy case was dismissed after an initial status hearing at which neither Juravin nor MCO's counsel appeared, for failure to pay the filing fee, file a statement of corporate ownership, and file a case management summary. *Id.,* Order Dismissing Case, MCO Bk Case ECF No. 13 (Mar. 2, 2020).

26. Before the MCO bankruptcy case was dismissed, American Express filed a proof of claim for over $150,000 in unpaid charges on a corporate card in both MCO's and Juravin's name, including a single $134,000 charge incurred on December 26, 2019 for a payment to "Natural Vitamins" of Opa Locka, FL. MCO Bk Case Claim 1 (Feb. 19, 2020). Natural Vitamins Laboratory Corp. of Opa Locka is the dietary supplement manufacturer that Juravin and his business entities used when they were selling dietary supplements, whose principal is

Karan Arora. In Juravin's Bankruptcy Case, Arora has filed a $200,000 unsecured claim for "goods sold" and a $500,001 unsecured claim for a promissory note. Claim 7-1 (May 29, 2019); Claim 15-1 (Jan. 3. 2020).

27. **Juravin's Non-Profit Entity and Its Weight Loss Services Web Pages.** In December 2018, Juravin created a non-profit entity named Holy Land Ministry, Inc. ("HLM"). Juravin identifies himself as the "Head" of HLM. Rottner Dec., Att. 3 (HLM corporate registration, articles, and annual report). HLM now has a website designed to market weight loss coaching services. *Id*., Att. 4-5. In addition, Juravin rebranded his pre-existing "Lost 100" Facebook group page, on which he also offers weight loss coaching services, as a "NONPROFIT Service of Holy Land Ministry" (emphasis in original). *Id.*, Att. 6.

28. Juravin filed his Amended Chapter 11 Plan and Disclosure Statement in this case on January 31. ECF Nos. 257, 258.

## II. Objections to Approval of Disclosure Statement and Confirmation of Plan

### A. The Disclosure Statement Should Not Be Approved

The Disclosure Statement should not be approved because the Plan it proposes is not confirmable on its face, and it lacks "adequate information" within the meaning of § 1125 sufficient for creditors to make an informed judgment about the Plan.

The Plan is patently unconfirmable because it conflicts with the Chapter 11 discharge provisions of the Bankruptcy Code. The Plan proposes to discharge Juravin, an individual Chapter 11 debtor, from all preconfirmation debts upon the effective date, defined as 30 days after an order confirming the Plan is entered. Article I of Plan at 8 (defining Effective Date), Article XI.B of Plan at 22 (discharge). Confirmation of a plan does not discharge an individual Chapter 11 debtor from any debt excepted from discharge under § 523, including the exception

FTC seeks for its deceptive advertising judgment against Juravin. § 1141(d)(2). Moreover, pursuant to § 1141(d)(5)(A), an individual Chapter 11 debtor does not get any discharge unless and until he completes all payments under the plan, or meets the alternative grounds for granting a discharge under § 1141(d)(5)(B) and (C).

Further, the Disclosure Statement does not contain adequate information from which creditors can make an informed judgment as to whether the plan is feasible and meets the minimum distribution for individual Chapter 11 debtor plans with dissenting creditors. 11 U.S.C. §§ 1129(a)(11), (15). To adequately inform creditors, the Disclosure Statement should, but does not, analyze and provide sufficient underlying information about how Juravin intends to implement the Plan over the entire 10-year period of payments to creditors, which he proposes to fund from the combined household cash flow of himself and his spouse. He should have, but failed to provide adequate information about: (1) the external sources of cash flow for their development state or start-up enterprise (2) if and when they project that their start-up will actually launch the actual sale of any product; (3) the projected revenues; (3) Juravin's "projected disposable income" for the duration of Plan payments, as defined in § 1129(a)(15)(B); and (4) Juravin's intended meaning of "household expenses" as used throughout the Plan. The Disclosure Statement is devoid of sufficient information about these critical issues. Without it, Juravin simply has no basis for showing the plan is feasible and meets the applicable minimum distribution requirement.

### III. The Plan Cannot Be Confirmed Because It Fails to Meet the Applicable Requirements of § 1129(a)

The Plan cannot be confirmed because it fails to meet at least four of the applicable requirements for confirmation under § 1129(a).

First, as demonstrated above, Section IX.B of the Plan on its face, the discharge provision, directly conflicts with § 1141(d). It purports to give Juravin a blanket discharge of all preconfirmation debts upon confirmation of the Plan, without exception for debts excepted from discharge under § 523 as required by § 1141(d)(2). Moreover, it conflicts with § 1141(d)(5), which provides that an individual Chapter 11 debtor gets no discharge at all unless and until they complete all payments under a confirmed plan or meet an alternative hardship test. Thus, the Plan does not meet the requirements of that core provision of Title 11 as required by § 1129(a)(1).

Second, as shown above, the proponent of the Plan, Juravin, proposed a plan that was unconfirmable and failed to provide adequate information to creditors as required by § 1125. He failed to include sufficient analysis and underlying information necessary to determine whether the Plan is feasible or not, and whether it meets the minimum distribution test for the Chapter 11 plan of an individual debtor, or not. Thus, he has failed to meet § 1129(a)(2), which requires the proponent of a plan to comply with an applicable provision of Title 11, § 1125.

Third, Juravin has failed to demonstrate that the Plan is economically feasible as required by § 1129(a)(11). To determine whether a plan is feasible, bankruptcy courts will generally "consider factors such as the adequacy of the debtor's capital structure, the earning power of the business, economic conditions, the ability of management, and any other related matters" relevant under the particular circumstances of the case which may affect the debtor's ability to satisfy the terms of the proposed plan. *In re Two Streets, Inc.*, 597 B.R. 309, 317 (Bankr. S.D. Miss. 2019). The plan proponent must establish that there will be sufficient cash flow to fund the plan and maintain operations according to the plan. The plan proponent should provide the bankruptcy court with detailed financial projections and be able to fully substantiate them. The

Eleventh Circuit has further explained that for a plan to satisfy the feasibility test, a court must determine that the plan is not likely to "be followed by a Chapter 7 liquidation, a Chapter 11 liquidation, or a Chapter 11 classic reorganization." *United Mine Works of Am. Combined Benefit Fund v. Toffel (In re Walter Energy, Inc.)*, 911 F.3d 1121, 1155 (11th Cir. 2018).

Here, Juravin proposes a Plan with payments to creditors incurring the greatest losses stretched out over 10 years. He promises to make the payments from the future cash flow of a fledgling start-up entity that has yet to sell any products, after payment of his undefined and unlimited "household expenses." However, he provides no financial projections or sufficient underlying information sufficient to meet the feasibility standard. To the contrary, the facts show that he has a long history of incurring lavish personal expenses while engaging in deceptive advertising leading to business failure, and gross mismanagement of his business and personal financial affairs.

Moreover, the plan is not feasible because the FTC is likely to prevail in its action to except its $24.8 million judgment against him from discharge under the fraud exception, § 523(a)(2)(A). He has conceded that the prior District Court findings preclusively establish all elements of the exception other than intent, and the FTC believes that it is likely to prevail on that issue on summary judgment or at trial if necessary. Upon termination of the automatic stay, further collection of the judgment is likely to lead to another bankruptcy case for Juravin. The Plan cannot be confirmed because it does not meet the feasibility requirement under § 1129(a)(11).

Fourth, the Plan cannot be confirmed because it does not meet the applicable minimum distribution requirement for the Chapter 11 plan of an individual debtor under § 1129(a)(15). The FTC is the holder of a $24.8 million allowed unsecured claim, and has voted to reject the plan. Its claim is part of Class 5, all general unsecured claims, which are projected to receive

only a 2% distribution over 10 years. That is far less than the amount of its claim, especially considering the discounted present value of those payments. Therefore, the minimum distribution requirement for the value of property to be distributed under the Plan applies. 11 U.S.C. § 1129(a)(15)(A), (B). Under that Code section, Juravin must show that the value of all property distributed under the plan is not less than his "projected disposable income," as defined under Chapter 13 plan confirmation requirements, § 1325(b)(2), for the 10-year duration of payments under his Plan. Juravin has provided no analysis, underlying information, or calculations of his projected disposable income. In calculating disposable income, he can only deduct amounts "reasonably necessary" for his maintenance or support and that of his dependents, within the meaning of § 1325(b)(2). Juravin has failed to make any such showing. The requirement that the Plan meet the § 1129(a)(15) minimum distribution test has not been met. Accordingly, the Plan cannot be confirmed.

IV.    Conclusion

For the foregoing reasons, the FTC respectfully request that the Court deny approval of the Disclosure Statement and confirmation of the Plan.

Dated: March 4, 2020                          Respectfully submitted,

 /s/ Michael P. Mora
Michael P. Mora (Ill. Bar No. 6199875)
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, D.C. 20580
Telephone: (202) 326-3373
E-Mail: mmora@ftc.gov
***Attorney for Plaintiff Federal Trade Commission***

## CERTIFICATE OF SERVICE

I certify that on March 4, 2020, I served the foregoing document on the following persons as indicated below.

/s/ Michael P. Mora

Via ECF Notice:

Aldo G Bartolone, Jr on behalf of Debtor Don Karl Juravin, aldo@bartolonelaw.com,

David M Landis on behalf of Creditor DCS Real Estate Investments, LLC
dlandis@mateerharbert.com, akutchak@mateerharbert.com

William C Matthews on behalf of Creditor Bella Collina Property Owner's Association, Inc.
wmatthews@shutts.com, rhicks@shutts.com;mcrosbie@shutts.com;rsouza@shutts.com

William C Matthews on behalf of Creditor DCS Real Estate Investments, LLC
wmatthews@shutts.com, rhicks@shutts.com;mcrosbie@shutts.com;rsouza@shutts.com

Marc J Randazza on behalf of Creditor Consumer Opinion Corp.
mjr@randazza.com, ecf-6898@ecf.pacerpro.com;ecf@randazza.com

Marc J Randazza on behalf of Creditor Opinion Corp., mjr@randazza.com,

Lauren M Reynolds on behalf of Trustee Dennis D Kennedy
lreynolds@whww.com, Lwillett@whww.com;LReynolds@ecf.courtdrive.com

Bradley M Saxton on behalf of Accountant Yip Associates, bsaxton@whww.com,

Bradley M Saxton on behalf of Interested Party Dennis D. Kennedy, bsaxton@whww.com,

Robyn Marie Severs on behalf of Creditor Bella Collina Property Owner's Association, Inc.
rsevers@beckerlawyers.com, cofoservicemail@beckerlawyers.com

Miriam G Suarez on behalf of U.S. Trustee United States Trustee - ORL7/13,
Miriam.G.Suarez@usdoj.gov

Via regular mail:

Don Karl Juravin, Debtor, 15118 Pendio Drive, Montverde, FL 34756