UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:  Case No. 6:18-bk-06821-CCJ
  Chapter 7
Don Karl Juravin

        Debtor.
_____/

# BUYER's RESPONSE TO DEBTOR'S MOTION FOR CLARIFICATION AND/OR TO AMEND ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SALE OF ASSETS AND MEMORANDUM OF LAW

Wilmington Financial Services, LLC ("Buyer") responds to debtor's Motion for Clarification and/or to Amend Order Granting Chapter 7 Trustee's Motion to Approve Sale of Assets Subject to Overbid and for Approval of Overbid Procedures (D.E. 382) and states as follows:

1. Debtor seeks clarification and/or to amend based on two contentions. First, the fact the Motion to Approve Sale of Assets, includes First Global Health Corporation (FGHC) as an asset of the debtor's estate to be sold even though that company was acquired by Juravin after he had filed his petition on October 31, 2018.

2. Buyer acknowledges that FGHC was acquired and reinstated by Debtor post-petition and before this action was converted from Chapter 7 to Chapter 11 and therefore that entity should not be included in the sale. Nonetheless Buyer is desirous of ratifying and consummating its purchase in all other respects.

3. Second, Debtor is attempting to avoid the sale of his interest in social media accounts. Notably, Debtor is not seeking to avoid the sale of his interest in websites and blogs, which are identified in the same clause of the sale order.

In re: Juravin Debtor                                                    Case No: 6:18-bk-06821-CCJ
Wilmington's Response to Motion for Clarification

        4.       Debtor is essentially arguing that the social media accounts are not property that can be sold. He points to the terms of service for Facebook, Instagram, and Twitter. Debtor should not be successful in this argument.

        5.       Caselaw Supports the Sale of Social Media Assets. Although there is little caselaw on the issue of whether social media accounts are bankruptcy assets, there does not appear to be any that supports Debtor's argument. In In re CTLI, LLC, 528 B.R. 359, 373-77 (Bankr. S.D. Tex. 2015), the bankruptcy court deemed them to be part of a business's "goodwill" and subject to transfer. Social media assets were also part of the sale order in In re Borders Grp., Inc., No. 11-10614 (MG), 2011 Bankr. LEXIS 4606, at *38 (Bankr. S.D.N.Y. Sep. 27, 2011), albeit with the caveat "to the extent owned and transferable".

        6.       There are other cases that pose analogs. In Eagle v. Morgan, No. 11-4303, 2013 U.S. Dist. LEXIS 34220, at *23-24 (E.D. Pa. Mar. 12, 2013), the plaintiff was awarded damages when her employer refused to give her back control of her LinkedIn account upon termination of employment based upon several theories, including the tort of "misappropriation of publicity", where the court implicitly recognized that the account had commercial value. However, that same court, in denying the claim for conversion, recognized that a social media "account is not tangible chattel, but rather an intangible right to access a specific page on a computer[.]" Id. at * 28.

        7.       Similarly, in Righthaven v. Hoehn, Case No. 2:11-cv-00050 (D. Nev. Mar. 13, 2012), the prevailing defendant successfully obtained an order transferring plaintiff's putative interest in certain copyrights to a receiver. Though Righthaven argued that it had no copyright that could be transferred, the court transferred whatever theoretical interest Righthaven had.

        8.       Therefore, like in the Borders case, the Bankruptcy Court has the authority to order the sale of Debtor's interest in the social media accounts, whether on Facebook, Instagram, Twitter, or elsewhere.

        9.       Debtor's evidence does not support his motion. Debtor has proffered the terms of use of Facebook, Instagram, and Twitter as exhibits. Twitter, for example, is a "microblogging website", which is a form of blogging itself. State v. Sample, 468 Md. 560, 564 n.1, 228 A.3d 171

In re: Juravin Debtor  Case No: 6:18-bk-06821-CCJ
Wilmington's Response to Motion for Clarification

(2020). Yet, he does not oppose the sale of his blogs. His motion is inherently contradictory and as he does not contest the sale of blogs, there is no similar reason to contest the sale of a microblog.

10. Moreover, there is nothing, from an asset perspective, that distinguishes a website or blog, which he does not contest can be sold, from a social media account or, in the case of Twitter, a microblog. A website or blog is merely information a user provides to a host company that lets a user store on its computer network and share in a format readable on a web browser or other application pursuant to a contractual relationship between the user and the host.

11. Facebook, Instagram, and Twitter work in similar fashion—users provide the host companies with information which is stored and distributed by the host's computer network system, pursuant to the applicable contract for services.

12. Intangible contractual rights to services can be sold. See, e.g., Creative Telcoms. v. Breeden, 120 F. Supp. 2d 1225, 1239 n.17 (D. Haw. 1999) (finding employment contract was an intangible asset sold under a sales agreement). Similarly, a user's interest in a social media account can be viewed as a type of leasehold interest, and leasehold interests can be sold in bankruptcy by a trustee. See, e.g., McIntyre Bldg. Co. v. McIntyre Bldg. Co. (McIntyre Bldg. Co.), No. 10-30558-WRS, 2011 Bankr. LEXIS 1384, at *37 (Bankr. M.D. Ala. Apr. 14, 2011).

13. Whatever interest a user has in the contractual relationship with the webserver or blogging provider can be transferred and there is no reason social media or microblogging should be treated differently.

14. Finally, at a minimum, even if the rights to use the accounts cannot be transferred, the content on the accounts belongs to Debtor, as he admits at paragraph 8 of his motion. He owns that and licenses it to the providers. That content itself has value that can be transferred, much like the copyright interests transferred in Righthaven. A purchaser for value can choose to compile them into a book or adapt them into a derivative work and, in so doing, may choose to then wish to exercise control over the content as it is currently displayed. In order for the purchaser to exercise control, Juravin must be permanently divested of it.

15. Facebook, for example, in its terms, recognizes that a user "own[s] the intellectual property rights … in any such content that [a user] create[s] and share[s] on Facebook". (Doc. No.

In re: Juravin Debtor  
Wilmington's Response to Motion for Clarification

Case No: 6:18-bk-06821-CCJ

382 at 10). The terms repeatedly use the phrase "your account", indicating it is something that belongs to the user. The terms recognize that the rights and obligations of a user are transferable, albeit with consent of Facebook.

16. Instagram, in its terms, as a Facebook product, similarly refers to "your account". Like Facebook, it recognizes the user's ownership interest in the content the user provides. And, as with Facebook, the rights and obligations of a user can be transferred, if consent is given.

17. Twitter also recognizes a user's ownership of the content they provide. Twitter's terms have an entire section entitled "Your Account", indicating something belong to the user. Twitter's terms do not say an account cannot be transferred. In fact, well-known accounts like @POTUS and @FLOTUS have been transferred.

18. In conclusion, Juravin has an interest in these accounts that can be sold by the Trustee. Though, perhaps, the purchaser may have limitations in their ability to use the accounts upon purchase, that is a factor that may affect the market price of the assets, not whether they can be sold in a manner that permanently divests Debtor's right and ability to access or use the content and the accounts.

Wherefore Wilmington Financial Services, LLC requests the Debtor's Motion should be granted in part as to the inclusion of First Global Health Corporation and denied as to the sale of the social media accounts.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 14th *day of August, 2020*, a true copy of the foregoing has been sent via:

*Electronic Transmission to:*

United States Trustee, c/o Dennis D. Kennedy, Esquire, Post Office Box 541848, Merritt Island, FL 32954

In re: Juravin Debtor            Case No: 6:18-bk-06821-CCJ
Wilmington's Response to Motion for Clarification

Aldo G. Bartolone, Jr., Esq., Bartolone Law, PLLC, 1030 N. Orange Ave., Suite 300, Orlando, FL 32801

Bradley M. Saxton, Esq., Winderweedle, Haines, Ward & Woodman, P.A., 329 Park Avenue North, 2nd Floor, Winter Park, FL 32789

William C. Matthews, Esq., Shutts & Bowen LLP, 300 South Orange Avenue, Suite 1600, Orlando, FL 32801

Amber Robinson, Esquire, Florida Rights Law Firm, 665 Central Avenue, Suite 264, St. Petersburg, FL 33701

Ralph Strzalkowski, Esquire, Florida Rights Law Firm, 665 Central Avenue, Suite 264, St. Petersburg, FL 33701

**United States Mail to:**

Don Karl Juravin, 15118 Pendio Drive, Montverde, FL 34756

> /s/David M. Landis
> DAVID M. LANDIS
> Florida Bar Number 193094
> Mateer & Harbert, P.A.
> 225 East Robinson Street, Suite 600
> Post Office Box 2854
> Orlando, Florida 32802-2854
> Telephone: (407) 425-9044
> Facsimile: (407) 423-2016
> dlandis@mateerharbert.com
> Attorneys for Creditor

4834-2754-9896, v. 1