UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:

DON KARL JURAVIN,

    Debtor.
_____/

DON KARL JURAVIN,
Case No. 6:18-bk-06821-KSJ

MUST CURE OBESITY, CO.
Case No. 6:20-bk-01801-KSJ

    Applicable Debtors.
_____/

Chapter 7

Case No. 6:18-bk-06821-KSJ

Case No. 6:20-bk-01801-KSJ

*Jointly Administered with*
Case No. 6:18-bk-06821-KSJ

**TRUSTEE'S RESPONSE /OBJECTION TO DEBTOR'S NOTICE OF COMPLIANCE [Doc. 484] AND UNOPPOSED REQUEST TO REMOTELY CONDUCT THE 04/28/2021 STATUS CONFERENCE DUE TO DEBTOR'S INCARCERATION**

Dennis D. Kennedy, Chapter 7 Trustee (*Trustee*) for the Estate of Don Karl Juravin (Case No. 6:18-bk-06821-KSJ) and the Estate of Must Cure Obesity, Co. (Case No. 6:20-bk-01801-KSJ), 1) Responds/Objects to Debtor's Notice of Compliance [Doc. 484] with the Court's requirements to purge the contempt finding detailed in its March 30, 2021 Order [Doc.463] granting Trustee's expedited Motion [Doc. 459] to compel the Debtor, DON KARL JURAVIN (Juravin), personally and on behalf of debtor entity Must Cure Obesity, Co. (MCO) to comply with the March 09, 2021 Order [Doc. 449] and for Sanctions; and 2) Requests that the in-person status conference scheduled for April 28, 2021 at 1100am be changed to a remote video proceeding due to the Debtor's incarceration in the Lake County Jail; stating:

1. The Debtor lost his [consolidated] appeal of the Fifth Circuit Court [Lake County] order finding him in criminal contempt of court[1]; on April 16, 2021, Debtor surrendered himself to the Lake County Jail where is currently serving the balance of his 30-day sentence.[2]

2. Consequently, the Trustee requests that the Court change the status conference scheduled for in-person appearances by the immediate parties on April 28, 2021 at 1100am to one occurring remotely.

3. The undersigned conferred with opposing counsel who acknowledged that Debtor is not scheduled to be released until May 15, 2021, that Debtor will not be participating in the hearing scheduled for April 28, 2021, and there is no objection to the hearing being conducted remotely.

4. <u>Debtor's Notice of Compliance [NOC]</u> - The information presented in Debtor's NOC was reviewed by Trustee. The Trustee concludes that the Debtor makes false representations in the NOC.

5. First, Debtor attempts to paint a false picture showing that Trustee, by special counsel, is purposefully making Debtor's ability to comply more onerous than it should be. Debtor falsely asserts that his request for an inventory of Debtor's previous production was refused when in fact <u>no such request was made</u> therefore nothing was refused.

---

[1] Case no.: 2017 CA 000667, Fla. 5th Jud. Cir. Ct., Lake County. Mr. Juravin posted bond and pursued an unsuccessful appeal [*Juravin v. DCS et al,* Fla. 5th DCA consolidated case nos. 5D19-3560 5D19-3689, March 19, 2021].

[2] https://www.lcso.org/inmates/mugshot_booking_detail_middle_print.php?bookingnumber=21002170
Booking #: 21002170, Inmate #: 14085.

6. Debtor's counsel failed advise that he could not keep a scheduled conference call on Friday, March 26, 2021 with Trustee's special counsel[3] to discuss the Debtor's purge obligation. After inquiry by special counsel, Debtor's counsel asked to reschedule to the following Monday. The next week came and went without any word from Debtor's counsel. On Monday April 5, 2021 special counsel emailed Mr. Bartolone, who asked to confer on April 6, 2021 advising of his surgery on April 7, 2021.

7. The conference call occurred April 6, 2021, at 12:04 PM [4]. Counsels discussed the fact that a significant amount of bank records had been produced, and records for the accounts identified on the affidavit prepared by Trustee's primary counsel were produced as well. The desire to avoid duplication was shared by each.

8. <u>No Inventory was requested</u> – First, if Debtor's counsel had asked for an inventory of previous production beyond what was reflected in the affidavit, it could not have been verbally answered during the call. A written response would have been required. Second, it stands to reason that the fictional refused request would have been included as a basis for Debtor's emergency motion to extend the deadline given the Court's orders and the consequences of noncompliance. It was not. Instead, Debtor waited until filing the NOC to include this red herring.

9. There were subsequent communications between counsels intended to narrow the scope of the subpoenas identified in Debtor's NOC. The following is an April 16, 2021 email communication. Debtor's counsel rejected the suggested method for avoiding duplication.

---

[3] Trustee's Special Counsel references attorney James Ryan; Trustee's Primary Counsel references attorney Brad Saxton.

[4] The undersigned acknowledges error in paragraph 7 of the Trustee's Response/Objection [Doc. 469] to the Emergency Motion. The phone call began approximately 2-1/2 hours *before* Debtor's Emergency Motion was filed. It lasted less than 24 minutes.

>Mr. Ryan:  Hi Aldo, I am assuming you will be directing these new subpoenas to institutions with accounts not identified on the affidavit that Brad prepared long ago….
>
>Mr. Bartolone:  The subpoenas are directed to all of the accounts listed on the affidavit, but for all accounts at those institutions, not just the accounts listed in the affidavit.  The scope is broader, in that I am seeking loan applications, credit card applications, promissory notes, etc., which will help show the debtor's financial condition in the 6 year pre-petition as well as the entities.  There are no new banks on the list.

10. On April 19, 2021, special counsel met with CPA Herskowitz at his office in St. Petersburg, FL for approximately 3.8 hours, reviewing and receiving his production responses. That same day, Debtor's Notice of Compliance was filed, and counsel Bartolone delivered a Drop Box link containing 37 files.

11. The Trustee has reviewed Debtor's most recently produced materials, responses, and has considered the subpoenas Debtor indicates as issued, and the Trustee finds that the Debtor has not complied with the Court's March 9, 2021 Order [Doc. 449].

12. <u>The remaining deficiencies are</u>:

a. All personal tax returns for the years 2012, 2013, 2014 and 2015;

>**No Personal tax return for 2013 has been produced. The Notice of Compliance (NOC) states that Mr. Hershkowitz is under an independent obligation to produce those records, and that Debtor directed his CPA to provide them.**
>
>**Monday, April 19, 2021, special counsel, met with Mr. Hershkowitz. This was 2-1/2 days after the Debtor's incarceration. Mr. Hershkowitz asserted that his obligation did not reach documents dated before October 31, 2016, and he did not state that he received any request or directive from the Debtor to go beyond the obligations established by the Order. He produced some emails between the Debtor and himself, none of which reflect any direction to cooperate or to produce any documents.**

**To the contrary, the only emails from the Debtor to Mr. Herskowitz on this topic are from March 2, 2021.   At 8:32 PM the Debtor wrote, "*You should not have spoken to him (attorney Ryan).  He's a snake*," and at 8:33 PM he wrote, "*Let him get a court order*."**

b.  For any private business entity that Juravin owned in whole or in part as of October 31, 2018 (Related Companies), all tax returns for the years 2012 through 2018;

**The following Tax Returns are missing as to each entity**:

- ROCA Labs, Inc., 2012, 2013, 2014, 2015, 2016, 2017, 2018.

  **Although Mr. Herskowitz vaguely acknowledged that Debtor exercised control over this entity, he noted Debtor was not legally the owner and, therefore, declined the opportunity to produce any tax returns for ROCA Labs, Inc.**

- ROCA Labs Nutraceutical USA Inc., 2016, 2017, 2018 (Debtor reinstated this company in 2014).

  **Although Mr. Herskowitz had a zero-balance invoice dated December 31, 2019 for this entity he asserts that he did not prepare its tax returns and that he did not have records for ROCA Labs Nutraceutical USA Inc.  Debtor is aware of this fact.**

- Juravin Inc., 2013, 2014, 2016, 2017, 2018 (Debtor reinstated this company in 2013).

  **Mr. Hershkowitz had some or all of these records, but intentionally limited his production to items dated October, 31 2016 or later.**

g.  All documents reflecting any income, monies, services, property, or items of value, whether taxable or not, received by Juravin or MCO within the two years prior to October 31, 2018;

**No documents produced by Debtor on April 19, 2021 are identified as responsive to this request.  Instead, Debtor refers to documents to be produced from Mr. Hershkowitz and from financial institutions.  Trustee believes electronically stored material within Debtor's phones,**

      **computers and cloud storage account(s) contain information that is responsive and readily available.**

i. All documents related to any monies owed or monies loaned to or by Juravin, excluding the mortgage and note on the Pendio Drive home, and excluding the UCC financing statement to Karan Arora;

      **Despite Debtor's representation of a directive to Mr. Hershkowitz, Mr. Hershkowitz acknowledged the existence of documents responsive to this request but declined the opportunity to produce them on the basis that they predate the Order applicable to him. Specifically, Mr. Herskowitz opened Debtor's <u>Google Drive account</u> containing numerous files, then discussed the existence of installment sales documents Debtor used for <u>selling intellectual property to various entities</u>.**

j. Juravin's note with Andrew Hill;

      **Debtor asserts that he has no such record and that he has issued a subpoena to Mr. Hill. This assertion is tenuous at best.**

k. The list of items and amounts for which Juravin allegedly agreed to reimburse his wife, Anna Juravin.

      **Debtor's assertion that no such list exists may be factually correct, but it fails to deliver the information the Court ordered the Debtor to produce.**

l. All documents relating to potential claims that Juravin or any of his Related Companies may have.

      **In response, Debtor identifies a new action not previously disclosed on his schedules but fails to produce a single document in support of that claim— or any other claim previously identified.**

      **Although Juravin attorney April Goodwin has produced numerous pleadings from some of the litigation, including pleadings for the newly disclosed claim, she has not produced a single document that would support any of the claims.**

m. All documents related to the interests of Juravin or MCO in any corporations, companies, joint ventures, partnerships, trusts or any other investment including but not limited to articles of incorporation, operating agreements, shareholder

agreements, share or membership interest certificates, and trust agreements for the Related Companies;

> **Debtor's response is "None."  It is unclear whether this means no such documents ever existed, or that he does not have custody or control of any such documents.**

n. All documents related to the financial condition of Juravin or his Related Companies that were provided to any other person or entity during the six (6) years prior to October 31, 2018;

> **Debtor's response about a directive to Mr. Hershkowitz is inconsistent with special counsel's experience at the April 19, 2021 meeting with the CPA.**

o. Bank statements and credit card statements requested from Juravin but not previously produced.

> **The response is not complete.  This is a result of the gap between what Mr. Hershkowitz was obligated to produce and the Debtor's production obligation, the discrepancy arising from the Debtor's alleged directive to Mr. Hershkowitz, and the discrepancy about who really owned ROCA Labs, Inc.**

12. Mr. Hershkowitz indicated, contrary to the Debtor's representation in NOC paragraph 3, there are records related to the installment sales of "various trademarks" and the "Gastric By-Pass Alternative Formula." Because these date before October 31, 2016, he did not produce them.

13. Mr. Hershkowitz and attorney April Goodwin each acknowledge that Juravin regularly kept business records in at least one cloud account, and both were able to access the accounts and view the records they had permission to view.  It is clear that some and maybe most of these records belong to the Sold Entities.  It is clear that the Debtor was able and obligated to turn those records over but has failed and refused to produce them.

14. Specifically, Mr. Juravin was ordered to turn over all remaining Sold Assets, including:

> Mr. Juravin shall turnover all Sold Assets to the Trustee no later than 5:00 PM on March 19, 2021. This shall include all property owned by any entity that was sold, including but not limited to account names, passwords, and all information required to allow access to or control of all accounts in which documents, records or electronic communications of the Sold Entities are stored; account names, passwords and all information required to allow access to or control of all blogs and social media accounts that were sold; copies of insurance policies for the two (2) vehicles that were sold; all furniture, fixtures or equipment belonging to the Sold Entities as of July 2, 2020

(Doc. 449 at p.3, decretal paragraph 2).

15. Despite Debtor's recent testimony that he transferred control of internet accounts to his wife and daughter all while this case was pending, and without seeking or receiving court approval, Debtor's most recent production ignores those items.

16. Debtor continues asserting that delivery of the information to control Facebook and Twitter accounts constitutes full compliance. This is false. If those accounts belonged to the Debtor when the Petition was filed, they belonged to the bankruptcy estate when the sale of the accounts was approved.

17. Debtor has also failed to turn over his computing equipment. During his March 24, 2021 testimony Mr. Juravin was questioned about his need for computer(s) far more sophisticated than the single, dated Chromebook he delivered. He then backtracked asserting there was another item he forgot to produce. Now, Juravin claims all equipment was turned over. *See*: NOC paragraph 5. The Debtor's testimony and the NOC are inconsistent.

18. Debtor's failure to file the MCO 1019 report is addressed in NOC paragraph 7. The justification offered does not excuse the Debtor's obligation to comply with the Order requiring the report to be filed.

19. Mr. Hershkowitz reiterated that he lost access to most of his emails when he switched from a sequel server to Microsoft 365. Nonetheless, it is clear from the few emails

produced that his communications with the Debtor predominantly pertain to the Debtor's businesses. By contrast, the technical issues experienced at Mr. Hershkowitz's office have no affect on the Debtor's copies of the same emails, and Debtor has never made any assertion otherwise.

WHEREFORE, Trustee requests that the Court change the method for appearing at the 04/28/2021 status conference, and any other relief necessary.

Dated: April 26, 2021        Respectfully submitted,

/s/ *James D. Ryan*
**James D. Ryan, Esq.**
Florida Bar No. 0976751
jdr@ryanlawgroup.net
lauren@ryanlawgroup.net
**Ryan Law Group, PLLC**
636 U.S. Highway One, Suite 110
North Palm Beach, FL 33408
Main: (561) 881-4447   Fax: (561) 881-4461
*Special Counsel to Dennis D. Kennedy, Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **April 26, 2021**, a true copy of the foregoing Response/Objection has been served via CM/ECF to all registered users and to: **Office of the United States Trustee**, George C. Young Federal Bldg., 400 W. Washington Street, Suite 1100, Orlando, FL 32801; **Aldo G. Bartolone, Jr., Esq.**, Bartolone Law, PLLC, 1030 North Orange Avenue, Suite 300, Orlando, FL 32801.

/s/*James D. Ryan*
James D. Ryan, Esq.