# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| IN RE: DON KARL JURAVIN | Case No. 6:18-bk-08621-LVV |
| Debtor | |
| DON KARL JURAVIN | Case No. 6:18-bk-08621-LVV |
| MUST CURE OBESITY, CO. | Case No. 6:20-bk-01801-LVV |
| Applicable Debtors | |

## MEMORANDUM IN OPPOSITION TO MOTION TO APPROVE SETTLEMENT WITH PSR DEVELOPERS LLLP

Don Karl Juravin and Anna Juravin, both Debtors before this Court under separately filed cases, by and through their attorney, Henry Portner, in Opposition to the Motion to Approve Settlement with PRS Developers, LLLP ("PSR") says:

1. The proposed settlement purports to settle the case by adding the settlement amount to the principal amount due under Debtors residential home mortgage.

2. The increase amount of principal to be due of Two Hundred Thousand ($200,000,00) will directly impair the ability of Anna Juravin, as Debtor in her recently filed Chapter 13 case to submit an acceptable Plan. The purposed settlement is not only not fair and equitable, as it imposes significantly increased financial obligations upon this Debtor, but it would be most detrimental, if not fatal to the successful administration of her estate.

3. The purposed settlement attempts to pass through the settlement amounts of alleged preferences or other claims against PRS which have not been proven to be the legal responsibility of either of the responding debtors.

4. The purposed settlement violates the terms of the Mortgage and Note which attempts to add $200,000 to a principal amount that was already determined and fixed by agreement of the mortgagors and mortgagee. The now unilateral attempt to amend the amount due without amendment or allonge violates the very sanctity of the agreement between the parties. Its an attempted loan modification not only without the Debtors approval or consent, but in direct derogation of their potential financial security in seeking bankruptcy protection.

5. The purported settlement effectively ignores inherent rights which the Debtors have as the obligors under a residential mortgage under multiple federal lending laws including

    a. the Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("Regulation X");

    b. Section 105(a) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1604(a), and the regulations promulgated thereunder at Regulation Z, 12 C.F.R. part 1026 ("Regulation Z");

    c. Section 3(b) of the Homeowners Protection Act of 1998, 12 U.S.C. § 4902(b) (the "HPA").

    d. CFPA is a Federal consumer financial law. 12 U.S.C. § 5481(14). Under Sections 1031 and 1036 of the CFPA, it is unlawful for any covered person to

      commit or engage in unfair, deceptive, or abusive acts or practices. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

    e. RESPA, TILA, and HPA are Federal consumer financial laws. 12 U.S.C. § 5481(14). Under Section 1036 of the CFPA, it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C § 5536(a)(1)(A). Violations of the RESPA, TILA, and HPA are therefore violations of Section 1036 of the CFPA. 12 U.S.C § 5536(a)(1)(A).

6. The purposed settlement effectively ignores *all* of the foregoing federal statutes enacted to protect the homeowner from heavy handiness by lenders. This purposed settlement by attempting to re-set the loan principal and increase it by $200,000 bypasses the promulgated statutes entirely.

7. There is ongoing litigation in the Florida state court between the Debtors and PSR. The purported settlement directly interferes with the litigation in the case, the defenses and counterclaim which the Debtors have raised against PSR, materially changes the redemption amount potentially due in foreclosure, and the accepted doctrine of this federal court not to interfere with state court proceedings, under either Federal Abstention principals or the Rooker-Feldman doctrine.

8. The approval or rejection of the settlement agreement is within the sound discretion of this Honorable Court. Violating the sanctity of contract, enumerable Federal consumer lending statutes and regulations, and the well accepted principal of Federal Abstention would hardly sound as being fair and equitable.

9. As stated, it would materially interfere with the effective administration and proposed Plan of Arrangement in Anna Juravin's newly filed Chapter 13 case. And, further, it imposes financial liability on Don Juravin, who has obtained a discharge in bankruptcy. The imposition of the additional $200,000 to his residential loan effectively bypasses any adversarial claims now pending before this court, and forces upon him a *pre-petition* claim without trial or evidentiary hearing whatsoever. That arises to a denial of due process and is fundamentally unfair and unreasonable.

10. Additional objections the Debtors raise include:
    a. Most obvious, neither of the Debtors were given the opportunity to participate in this settlement yet are materially and directly being effected thereby;
    b. PSR and its owner Rick Scharich were well aware of the bankruptcy of Don Juravin. Therefore they accepted monies with the known risk of the pending bankruptcy and risks inherent thereto;
    c. It is believed and therefore averred that the office of the Trustee or their counsel served and/or conferred with PSR in the past and may have an inherent conflict undisclosed to date in the resolution of this matter (See Exhibit "A" hereto);
    d. The Agreement would supersede the authority of the state foreclosure court;
    e. Even the amount of the settlement of $200,000 is in dispute as the most recent advance was $150,000 so the $200,000 is an arbitrary number without evidentiary substance.

11. ORAL ARGUMENT IS RESPECTFULLY REQUESTED.

Wherefore, Debtors pray that this Honorable Court deny the settlement agreement for the reasons set forth in this Memorandum.

Dated: June 30, 2022        s/Henry N. Portner
                                                Henry N. Portner, Attorneys for the Debtors
                                                Email:  portnerlaw@gmail.com
                                                Florida ID: 0883050
                                                Telephone:  561 400-0027

## RE: Juravin Bankruptcy

You forwarded this message on Sat 2/6/2021 11:08 AM
You forwarded this message on Sat 2/6/2021 11:08 AM

PS

Paul Simonson
Mon 11/19/2018 4:09 PM

To:

- You;
- Rick Scharich;
- Randall Greene

Works for me.

Best regards,

Paul E. Simonson, C.P.A.
Chief Financial Officer

**SCHAR HOLDINGS**
217 Peruvian Avenue, Suite 2
Palm Beach, FL  33480
Direct:  (561) 805-6516
Mobile:  (561) 308-3054
Fax:  (561) 805-6517
Email:  psimonson@scharholdings.com
Skype:  simonsonpaul

**From:** Rick Scharich <rick@rlsdevelopers.com>
**Sent:** Monday, November 19, 2018 4:09 PM
**To:** Paul Simonson <psimonson@scharholdings.com>; Randall Greene <rgreene@rgdevelopments.com>; Rick A <rcalawyer@msn.com>
**Subject:** Re: Juravin Bankruptcy

Would 4:30 work?

Best Regards,

Rick L. Scharich

Phone: (616)262-1851

Email: rick@rlsdevelopers.com

This email is intended for the named recipient(s) only. If you are not the intended recipient, you may not, in whole or in part, disclose, copy, distribute, review, or use this email and/or attachment associated with it.

---

**From:** Paul Simonson <psimonson@scharholdings.com>
**Sent:** Monday, November 19, 2018 4:07 PM
**To:** Randall Greene; Rick A; Rick Scharich
**Subject:** FW: Juravin Bankruptcy

Guys,

Can we please get on a call together?

Thanks.


**Paul E. Simonson, C.P.A.**
Chief Financial Officer

**SCHAR HOLDINGS**
217 Peruvian Avenue, Suite 2
Palm Beach, FL  33480
Direct:  (561) 805-6516
Mobile:  (561) 308-3054
Fax:  (561) 805-6517
Email:  psimonson@scharholdings.com
Skype:  simonsonpaul

**From:** James Ryan <jdr@ryanlawgroup.net>
**Sent:** Monday, November 19, 2018 3:07 PM
**To:** Paul Simonson <psimonson@scharholdings.com>
**Cc:** 'mikeryan32645@yahoo.com' <mikeryan32645@yahoo.com>; Randall Greene <rgreene@rgdevelopments.com> (rgreene@rgdevelopments.com) <rgreene@rgdevelopments.com>
**Subject:** Juravin Bankruptcy

Hi Paul, I followed up on our conversation and the budget if we take action is as follows:
- Appraiser to establish correct value of the residence. $5,000.
- BR attorney services. $20,000 - $30,000. Juravin's attorney has a reputation for being difficult.
- Proposed offer to buy multiple Juravin assets from the trustee $30,000.
  Total $55,000 to $70,000. The extra five is for the unknown.

If we do nothing the lien for club charges likely gets discharged as an under secured obligation and Scharich will likely lose the ability to succeed on a foreclosure claim. Juravin becomes hunkered down in BC and continues his shakedown. If we go on the offensive many of his businesses can be acquired cheaply. Although they have no real value, being able to shut down his company litigation and control

his company web sites and social media accounts would be helpful to subduing his attacks on BC. I also suspect much of what he claims is exempt will not be.

The house should be determined to be worth significantly more than the amount he claimed and, if so, the POA lien would not be discharged. Some of his assets found to be not exempt such as vehicles will have some value to offset the expense. Most importantly, it will be shown he does not have sufficient income to ratify the mortgage obligation and / or the bankruptcy will be dismissed. Either way Scharich will then be able to succeed in the foreclosure effort and oust Juravin from the community. Also, if this happens the attorney fee and the appraiser fee can be the basis for additional lien rights on the house. Under this scenario the sale of a vehicle or two (only one has no lien) could recoup part of what is spent to buy his businesses. The services could possibly be recovered in the form of a lien on the house. The first mortgage is about $1,360,000. I expect the house to sell for more than that even at a foreclosure sale. FWIW, Randall believes that house is worth more than $2,000,000 today.

Please let me know if you have more questions.

Regards,

James D. Ryan, Esq.
Florida Bar Board Certified in Business Litigation
jdr@ryanlawgroup.net  mobile: 561.889.1001
**Ryan Law Group, PLLC**
636 US Highway One, Suite 110
North Palm Beach Florida
Main: 561.881.4447  Fax: 561.889.4461
www.ryanlawgroup.net