UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:6:18-bk-06821-LVV
CASE NO.:6:20-bk-01801-LVV
Jointly Administered with
Case No.:6:18-bk-06821-LVV

IN RE:

DON KARL JURAVIN,

                    Debtor.
_____

BELLA COLLINA PROPERTY          ADV. NO.:6:21-ap-00103-LVV
OWNERS ASSOCIATION, INC.,       Consolidated with
                                ADV. NO.:6:21-ap-00141-LVV
              Plaintiff,        ADV. NO.:6:21-ap-00142-LVV
                                ADV. NO.:6:22-ap-00016-LVV
v.                              ADV. NO.:6:22-ap-00019-LVV
                                ADV. NO.:6:22-ap-00020-LVV
DON KARL JURAVIN,

              Defendant.
_____

FEBRUARY 26, 2024

TRANSCRIPT OF TRIAL PROCEEDINGS

BEFORE THE HONORABLE LORI V. VAUGHAN
UNITED STATES BANKRUPTCY JUDGE

GEORGE C. YOUNG FEDERAL BUILDING
400 WEST WASHINGTON STREET
ORLANDO, FLORIDA

Proceedings recorded by electronic sound recording
Transcript provided by ACCREDITED COURT REPORTERS
acreporters@embarqmail.com
(407) 443-9289

2

A P P E A R A N C E S:

JAMES D. RYAN, ESQUIRE
Ryan Law Group, PLLC
636 U.S. Highway One
Suite 110
North Palm Beach, Florida
     Appearing on behalf of Chapter 7 Trustee
     Dennis D. Kennedy

JAMES A. TIMKO, ESQUIRE
Dean, Mead, Egerton, Bloodworth,
Capouano & Bozarth, P.A.
420 South Orange Avenue
Suite 700
Orlando, Florida
     Appearing on behalf of Plaintiff Bella
     Collina Property Owners Association, Inc.
     Adversary 21-103

ANNA JURAVIN, PRO SE
15118 Pendio Drive
Montverde, Florida
     Appearing as Defendant Pro Se

DENNIS D. KENNEDY, TRUSTEE - via Zoom
P.O. Box 541848
Merritt Island, Florida
     Appearing as Chapter 7 Panel Trustee

3

1                          I N D E X
2
3   PROCEEDINGS BEFORE JUDGE VAUGHAN:                4
4
5   1) Trial Proceedings
6
7
8   TESTIMONY TAKEN OF CHARLES BALOT:
9
10  Direct Examination by Mr. Ryan                   48
11
12
13  CERTIFICATE OF REPORTER:                        133
14
15  WORD INDEX:                                     134
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47

4

1          ORLANDO, FLORIDA, FEBRUARY 26, 2024, 10:02:52 A.M.

2                         P R O C E E D I N G S

3               COURTROOM DEPUTY: All rise.

4               The United States Bankruptcy Court for the

5      Middle District of Florida is now in session.  The

6      Honorable Lori V. Vaughan presiding.  May God save the

7      United States and this Honorable Court.

8               THE COURT: You may be seated.

9               COURTROOM DEPUTY: Court calls Bankruptcy Case

10     18-6821, consolidated with 20-1801, and the related

11     Adversary Proceeding at 21-103 in the Juravin matters.

12              Interested parties, please come forward and

13     enter your appearances.

14              THE COURT: Let me take appearances please.

15              MR. RYAN: James Ryan on behalf of the Trustee.

16              THE COURT: Okay.

17              MR. TIMKO: James Timko on behalf of the Bella

18     Collina Property Owners Association.

19              THE COURT: All right.  Thank you.

20              MS. JURAVIN: Anna Juravin, Defendant in the

21     adversary proceeding.

22              THE COURT: All right.  Thank you.

23              Okay.  And I see Mr. Kennedy is on Zoom here.

24     Is he planning to observe the entire trial, Mr. Ryan?

25              MR. RYAN: I'm not sure.  It's going to depend

1    on how he holds up.

2              THE COURT: Okay.

3              MR. RYAN: But that's the intention.

4              THE COURT: All right.

5              Well, let's take care of a few housekeeping

6    matters.  Let me first address the elephant in the room.

7    Mrs. Juravin, where is Mr. Juravin?

8              MS. JURAVIN: Mr. Juravin is in urgent care.  He

9    has health issues.  His blood pressure is very high.

10   There was a concern of his getting stroke or heart

11   attack.  So --

12             THE COURT: When you say urgent care, is he in

13   the hospital?

14             MS. JURAVIN: No, it's not a hospital.  It's a

15   facility.  It's urgent care with all the equipment.  We

16   cannot afford going to the hospital.  It will cost us

17   3,000 a stay, not including the procedures that will be

18   performed.

19             THE COURT: Okay.  So he's not planning to

20   participate in the trial?

21             MS. JURAVIN: No.  He's -- he's not here.  He's

22   on drugs, and I don't think even if he comes he can --

23   he's no use.

24             THE COURT: Okay.  And is -- when you say this

25   urgent care facility, this is not an inpatient facility?

6

1          MS. JURAVIN: Your Honor, I'm not sure I

2    understand what's the difference.

3          THE COURT: Meaning does he reside there

4    overnight or is he staying home?

5          MS. JURAVIN: No.  He was prescribed to stay at

6    home.

7          THE COURT: Okay.  All right.  Well, no one's

8    filed any kind of motion to continue, nor do I have

9    anything in front of me to verify Mr. Juravin's

10   situation.  Mrs. Juravin, how do you want to proceed

11   today?

12         MS. JURAVIN: I brought the papers for -- I

13   don't have anything from today.  He's in urgent care

14   again today.  I have the documents from Thursday, which I

15   can present if the Judge would like to see.

16         THE COURT: If you want to show them to me.  I

17   mean, this is -- this is your show at this point, right?

18   He's left you here to defend this case on your own.  So

19   tell me what you want to do.

20         MS. JURAVIN: I would like to -- I didn't even

21   think that a continuance should be filed.  It's -- it's

22   probably my mistake that I didn't consider that.

23         I would like to continue.  I know that the

24   counsels are all set and are all ready.  But I don't

25   think it's -- it's not fair to me, but what can I do,

1    Your Honor?  What can I do?

2            THE COURT: Okay.  I'll look at your paperwork

3    if you want me to.

4            All right.  Ms. Johnson, if you will hand that

5    back to Mrs. Juravin.  Okay.

6            I have reviewed the medical records from the

7    urgent care clinic that Mrs. Juravin handed to me.  I'm

8    not -- to protect Mr. Juravin's privacy, I'm not

9    providing that to opposing counsel, but I am not

10   continuing today's trial.  If Mr. Juravin wishes to join

11   us, he's more than welcome to, but we are going to go

12   ahead and proceed today.  Okay.

13           Other housekeeping matters.  As far as our

14   schedule this week, I don't know how much time we're

15   going to end up needing.  The Court did issue very

16   specific instructions about how we would proceed and

17   hopefully the parties are aware of those.  The Court has

18   its own calendar restrictions such that today and on

19   Wednesday we are going to conclude at 3:45.  When we get

20   towards the end of today, we'll talk about what time

21   we'll start up the following morning to make sure we

22   maximize our time here.  But just make note of those in

23   your calendar that today and Wednesday we have to end a

24   little bit early.

25           I know there's some objections to exhibits that

1   have been raised, and since Mr. Juravin is not here and,

2   Mrs. Juravin, I have to make you aware, you're not here

3   to defend your husband, this is your own case.  You're

4   here representing yourself.  So because you're not an

5   attorney, you cannot represent Mr. Juravin.

6            So as far as the exhibits go, how do you want

7   to proceed, Mr. Ryan, Mr. Timko?

8            MR. TIMKO: Well, with respect to Mr. Juravin's

9   objections to our exhibits, and that's actually a very

10  good -- good question, how we would deal with those going

11  forward.

12           THE COURT: Did he just object to the one or

13  were there multiple objections?

14           MR. TIMKO: He did -- he did object to several

15  exhibits.

16           THE COURT: That's right.  I saw that, yeah.

17           MR. TIMKO: Not all of them frankly were legal

18  objections.  Some were based on relevance.  With respect

19  to those, I assume we can deal with them when we're

20  dealing with the -- that particular witness.

21           Mr. Ryan has a lot more of the exhibits in

22  dealing with his case and also dealing with the Trustee.

23  So he can speak more to those.

24           There were some questions as to like

25  authenticity, hearsay, and attorney-client privilege.

1    With respect to the attorney -- and Mr. Ryan can address

2    these in more detail if necessary.  But with respect to

3    the attorney-client privilege documents, these were all

4    documents that were recovered during the ESI recovery,

5    and Mr. Juravin, my understanding of the order, was he

6    was given a chance to review and file a privilege log or

7    do any of that, and they didn't take any steps to do

8    that.

9            With respect to authenticity, some of that had

10   to do with -- I mean, all the documents that we have were

11   either recovered in discovery or his ESI.

12           THE COURT: Well, we're going to have to deal

13   with the -- I think probably the best way to deal with

14   this, Mr. Timko, is just to address them as they come up.

15   Right.  Mr. Juravin's not here to object, but I think

16   probably best for the record that we just admit each

17   exhibit as it's introduced and I can address any

18   authenticity issues at that point.

19           MR. TIMKO: Okay.  With respect to authenticity

20   for time sake --

21           THE COURT: Um-hum.

22           MR. TIMKO: -- it may be easier to just address

23   those as a group now.  That's, I mean, that's up to you,

24   because a lot of them are in the same, same grouping.  So

25   I just --

1          THE COURT: Well, which ones are we talking

2    about?

3          MR. TIMKO: Do you have the --

4          MR. RYAN: Yeah.

5          MR. TIMKO: Actually, Mr. Ryan is probably

6    better off at addressing some of these issues.

7          THE COURT: Because, I mean, it seems to me,

8    when it comes to authenticity, I need a witness to show

9    me that they're authentic.  So that's usually why we will

10   handle those at trial unless there's, you know --

11         MR. TIMKO: Well, I --

12         THE COURT: -- stipulation or no objection.

13         MR. TIMKO: Well, I think with respect to the --

14   any object -- most of the documents are not objected to.

15   So those are all waived and in.

16         Again, with respect to relevancy, we can deal

17   with those as they come up.  Sorry, I'm just going

18   through his objections real quick just to see if we even

19   need to -- what we really even need to address.

20         There's the attorney -- so he has some

21   attorney-client privilege, which is the issue that I

22   raised earlier, and I'm looking specifically at 66, 67,

23   69 through 70, 74, 76, 77, 79.  It doesn't look like he's

24   actually raised -- oh, the only -- the only -- I thought

25   there was more.  I'm sorry, Your Honor, I misspoke.  The

1    only authentication issues are with respect to Mr.

2    Balot's testimony and he's here to testify today, so that

3    can get addressed.  And the report, the spreadsheet with

4    respect to the money with NVLC, which they'll be here

5    tomorrow to testify.

6         So I think we can let in all the remainder.

7    Deal with the relevancy issues as they come up with the

8    particular witness.  And then with respect to the

9    attorney -- any attorney-client privilege issues, I'll

10   let Mr. Ryan handle that because he was involved in that

11   procedure, I was not.

12        THE COURT: Okay.  Hold on just a second here.

13   I'm just looking for the objection that Mr. Juravin

14   filed.  I see the motion in limine, which I think was

15   just addressed to the one exhibit.

16        MR. RYAN: Document 412.

17        THE COURT: Well, yeah, it's not showing up

18   here.  Okay.  I'll look over here.  Oh, you know what it

19   is, it's not --

20        MR. TIMKO: I believe that was the findings by

21   Mr. Balot, that he raised that issue, and Mr. Balot's

22   here again today.

23        THE COURT: Right.  Oh, here it is.  Okay.  So

24   Mrs. Juravin is also a party on this objection.  So

25   that's what I wanted to check.

1        MR. TIMKO: Right.

2        THE COURT: So we can't simply ignore them.

3    Okay.  So relevance we'll keep, we'll address as the time

4    comes.

5        Ms. Johnson, do I have just the exhibit list?

6    Can you print me one out?  My computer's no longer

7    attached to the printer it seems like.  Thank you.  Is

8    that your copy?

9        COURTROOM DEPUTY: No.  I have more.

10       THE COURT: Okay.  Thank you.  All right.  This

11   makes it easier for me.

12       All right.  So without objection, do you want

13   to walk me through the ones you contend there are no

14   objections and then?

15       MR. TIMKO: Sure, Your Honor.

16       THE COURT: Yeah.

17       MR. TIMKO: I can do that.  Well, Number 1 has

18   no objection.

19       THE COURT: Um-hum, okay.

20       MR. TIMKO: So any objections would be waived

21   under your order.  So that should be admitted.  I'll let

22   Mr. Ryan address 2 and 3.

23       MR. RYAN: This is a motion, it's of record, and

24   it's already been ruled on.  It's just included in the

25   exhibit list, so that when you have to go back and read

13

1   written closing arguments everything is in one place for

2   you to see.  So --

3           THE COURT: Right.

4           MR. RYAN: -- I don't think there's any question

5   that it's both --

6           THE COURT: Okay.  These are just pleadings.

7           MR. RYAN: -- authenticate and relevant.

8           THE COURT: Yes.  Exhibits 2 and 3, Mrs.

9   Juravin, do you continue to object to those?  These are

10  just pleadings.

11          MS. JURAVIN: No, I don't.

12          THE COURT: Okay.  All right.  So 1, 2 and 3 are

13  admitted.  Okay.

14          MR. TIMKO: Okay, 4 and 5 are not objected to.

15          MR. RYAN: Yeah.

16          THE COURT: Okay.

17          MR. TIMKO: So those should be in.

18          MR. RYAN: So Exhibit 6 is a document that was

19  produced from Mr. Juravin's ESI account that was

20  recovered.

21          THE COURT: Yeah.  We're going to deal with that

22  when the witness is on the stand.

23          MR. RYAN: Okay.

24          THE COURT: All the tech stuff.  Because I

25  haven't looked at it and so I do think I need someone to

1   authenticate it for me.

2           MR. RYAN: Okay.

3           THE COURT: So that will be basically 6 through

4   10; is that right?

5           MR. TIMKO: Right.

6           THE COURT: All right.

7           MR. TIMKO: And then with -- oh, I'm sorry.  Can

8   you help us with 7?

9           MR. RYAN: Yeah.  So 7 we're going to have that

10  same issue with --

11          MR. TIMKO: Yeah, 6 through 10 we'll deal with.

12          MR. RYAN: Yeah.  And 10 is the report, so we're

13  going to deal with that when we get Mr. Balot on the

14  stand.  Okay.

15          So if we continue forward --

16          MR. TIMKO: So 20 -- hold on.  20 through 34

17  have no objections.  Oh, I'm sorry.  11 through 34 have

18  no objections.

19          THE COURT: Okay.

20          MR. RYAN: And 35 through 37, we have the

21  relevancy objections.

22          THE COURT: Okay.

23          MR. TIMKO: So we can --

24          THE COURT: We'll take those up as the documents

25  are admitted.  Just make sure you make a note to --

1          MR. TIMKO: Okay.  Same with --

2          THE COURT: -- admit those.

3          MR. TIMKO: Same with 39 and 40.

4          THE COURT: Okay.  So went through 34.  And then

5  which ones are we talking about, 35?

6          MR. TIMKO: 35 through -- 35 through 37 and 39

7  and 40 have relevancy objections.  38 would be in.

8          THE COURT: Okay.  Okay.

9          MR. RYAN: 41 is in.  No -- no objection.

10          THE COURT: Okay.

11          MR. RYAN: 42 through 46, relevance.

12          THE COURT: Okay.

13          MR. RYAN: 47, no objection.  That's in.

14          THE COURT: Okay.

15          MR. RYAN: NVLC, 48 we're going to have a

16  witness for.  49 is in, without objection.

17          MR. TIMKO: It looks like 49 through 56 are in.

18          MR. RYAN: Yeah.

19          THE COURT: Okay.

20          MR. RYAN: 57 through 62 --

21          THE COURT: Hold on.  Let me stop you for just a

22  second.  I've got 50, 51, 52 and then 51.  So that really

23  should be 53, right?

24          MR. RYAN: It is.  Yes.

25          THE COURT: Okay.  All right.  Sorry.  So, and

1    then 54 through where is not objected to?

2              MR. TIMKO: 54 through 58.

3              THE COURT: Okay.

4              MR. RYAN: Actually through 62.

5              THE COURT: 62, okay.

6              MR. RYAN: 63 is a relevance objection.

7              64 is the attorney-client privilege.  So we can

8    provide a little bit more detail about that.

9              When the ESI order was entered, it gave Online

10   Security a protocol that it was supposed to use with

11   regards to the data recovered from Mr. Juravin's devices

12   and cloud accounts, and it required them to copy all the

13   data from those various devices and accounts and make

14   them their own file called a mirror file in the order.

15   And then they're supposed to run a search with specified

16   terms, and once they had the material that was responsive

17   to the search, they were to give Mr. Juravin's attorney

18   the opportunity to review and object the material, and

19   they did that.

20             They put the material into a -- let's see, I

21   can't remember if it was Hightail or Dropbox or whatever,

22   but Mr. Bartolone specified how he wanted to receive

23   things and he received them.  He would get a week with

24   the first set of documents, and it was a rolling thing

25   because there were so many documents.  So each week he

1   had the opportunity to go through documents and pose

2   objections, and the reality was is that he never looked

3   and he called and discussed it, and he was not looking.

4   And they weren't not looking because of some mistake,

5   they just weren't going to spend the time and effort to

6   do it.  And so after the time for them to pose objections

7   lapsed, the material then got made available to the

8   Trustee.

9          The opportunity was there to review and protect

10  privileged documents and they didn't use it and that's a

11  clear waiver, and they've known about that since the time

12  it happened and these documents have been discussed

13  before and it's not until recently that they've raised

14  this objection.

15         MR. TIMKO: In addition, there's also

16  significant -- in Mr. Juravin's exhibits, which we

17  haven't dealt with yet, there's also significant

18  attorney-client privilege documents with his own

19  attorney.

20         THE COURT: I see that.

21         MR. TIMKO: And under the implied waiver theory,

22  I have a case for this, but you can't use the attorney-

23  client privilege as a sword and shield.  It's either --

24  you can't partially waive your communications and use it

25  as a sword and a shield.

18

1          We actually made copies of all -- well, I don't

2   have Ms. Juravin's exhibits but I did make copies of all

3   Mr. Juravin's exhibits, but if you just scroll through,

4   you'll see emails directly with his attorneys on various

5   issues throughout these exhibits.

6          MR. RYAN: And directly on this point, Mr.

7   Juravin included his communications with Mr. Bartolone

8   with regards to what cooperation he did or didn't have to

9   give to Online Security with regards to getting the

10  documents out of the cloud.

11         THE COURT: Okay.

12         MR. RYAN: And it shows the timeline and Mr.

13  Juravin put those records out here so...

14         THE COURT: Okay.  All right.  Mrs. Juravin, do

15  you want to address the objection on attorney-client

16  privilege grounds?

17         MS. JURAVIN: According -- according to the --

18  whatever I heard right now, I can't because I've used the

19  emails in my exhibit as well.

20         THE COURT: Okay.

21         MS. JURAVIN: So --

22         THE COURT: All right.

23         MS. JURAVIN: It's moot at this point.

24         THE COURT: I'm going to overrule then the

25  objection on the grounds of attorney-client privilege and

1    rule that the privilege was waived by failing to assert

2    it in accordance with this Court's orders and also

3    presenting exhibits, presenting -- Mr. Juravin submitting

4    his own exhibits, which contain attorney-client material

5    as well.  So, and that will address --

6              MR. TIMKO: 64.  We get to 65.

7              THE COURT: Okay.

8              MR. TIMKO: And that's in as well.

9              MR. RYAN: It also addresses attorney -- Exhibit

10   66.

11             THE COURT: 66.

12             MR. RYAN: 67.  There is no objection to 68.

13             THE COURT: Okay.

14             MR. RYAN: 69 is the attorney-client privilege.

15   So that's affected by the ruling.

16             70, attorney-client privilege is the only

17   objection.

18             THE COURT: Okay.

19             MR. RYAN: 71, it says that the description is

20   misleading because it deals with the transfer of the name

21   Juravin Incorporated from JINK to the -- from the

22   original Juravin, Incorporated.

23             MR. TIMKO: Yeah, they objected to the

24   description, not the document itself.

25             THE COURT: Okay.  Well, the description is not

1    the evidentiary portion of it.  It's just something to

2    help us locate it.  The document is what it is, and it

3    either proves or disproves or has no bearing at all on

4    the issue of whether there was a transfer.  So just

5    because you use that phrase, that's not really a basis

6    for objection.  So I'll let that 71, I'll admit that.

7              MR. TIMKO: 72 is a relevancy objection.

8              THE COURT: Okay.  We'll reserve that.

9              MR. TIMKO: 73 is in.

10             MR. RYAN: 74 is the attorney-client privilege

11   again.

12             THE COURT: Okay.

13             MR. TIMKO: 70 -- I'm sorry, just so we're

14   keeping -- 75 should be in.

15             THE COURT: Okay.

16             MR. RYAN: 76 is attorney-client privilege, but

17   it also says it is irrelevant and speculation.

18             THE COURT: Okay.  So we'll -- we resolved the

19   attorney-client privilege issue, we'll reserve on the

20   relevancy.

21             MR. RYAN: Okay.

22             THE COURT: I don't know -- yeah.

23             MR. RYAN: 77 is only attorney-client privilege.

24   So we can resolve that.

25             THE COURT: Okay.

1          MR. RYAN: 78, the only objection is relevance,

2    and I guess we can deal with that.

3          THE COURT: Yes, we'll deal with it as it comes

4    up.

5          MR. RYAN: 79 is privilege and relevance.  So we

6    can deal with the relevance when it comes up.

7          THE COURT: Okay.

8          MR. RYAN: There's a reference at the end of 79

9    to some previous exhibits.  So however we dealt with

10   those.  I don't think we need to go backwards.

11         THE COURT: Okay.  All right.

12         MR. RYAN: 80 has no objection.

13         THE COURT: Okay.  With regards to 81, it says,

14   See objections listed above, but there are no objections

15   to the other bank records.  So this is just another

16   bank --

17         THE COURT: Yeah, just a repeat of whatever

18   exhibits --

19         MR. RYAN: Right.

20         THE COURT: -- we have.  Right, we don't need to

21   repeat those.

22         MR. RYAN: Right.

23         THE COURT: Okay.  And then relevance.

24         MR. RYAN: So then we have the damaged vehicle

25   evidence and the only objections are relevance.

22

1          THE COURT: Okay.

2          MR. RYAN: And we can deal with those.

3          THE COURT: Okay.  So that addresses Plaintiffs'

4    joint exhibits.

5          As far as Mrs. Juravin's exhibits, I did see

6    they reached the docket this morning.  Maybe they were

7    sent in on Friday.  Mrs. Juravin?

8          MS. JURAVIN: Yes, they were sent late on

9    Friday.

10          THE COURT: Okay.

11          MS. JURAVIN: And most of my exhibits are

12    actually pleadings from the docket.

13          THE COURT: Okay.  Do you have copies, Mr. Timko

14    and Mr. Ryan?

15          MR. TIMKO: So I believe Anna Juravin's

16    documents deal with the Trustee's issues, not my --

17          THE COURT: Right.

18          MR. TIMKO: -- part of this, this case.  But --

19          THE COURT: Right.  Your case is not against

20    her.

21          MR. TIMKO: Yeah.  Well, we -- what we did

22    receive is that we received emails.  Well, actually did I

23    even receive?  Yeah, we received emails late in the day

24    on Friday with -- with her exhibits, but you can -- you

25    can address.

1          MR. RYAN: Yeah.  So with regards to Mrs.

2    Juravin's exhibits, we didn't get anything until Friday

3    afternoon, and it was voluminous and it's, you know,

4    court dockets and things, you know.  Most of it was -- I

5    couldn't make heads or tails how it has anything to do

6    with the case, but certainly we didn't get an opportunity

7    to review it and look at it closely and to go through

8    each one and discern what we would let in and what we

9    would have to object to.  But just by being deprived of

10   that opportunity to -- to review all those documents at

11   the last minute, I think that they shouldn't be allowed

12   in.

13          THE COURT: All right.  Mrs. Juravin.

14          MS. JURAVIN: I -- because of those issues with

15   Don have and -- and other relating circumstances, I just

16   couldn't -- I wasn't able to get them in on time.

17          THE COURT: Are they the same as your husband's

18   exhibits?

19          MS. JURAVIN: No.  He created his own and I

20   submitted mine.  Maybe there is some overlapping.

21          MR. TIMKO: There's also some overlapping issues

22   that I'm aware of between both sets of exhibits.

23          MR. RYAN: Right.

24          MR. TIMKO: So can I address that issue so we

25   can kind of -- because it might help you to --

24

1          THE COURT: Yeah, go ahead.

2          MR. TIMKO: -- make your decision.

3          So we were able to file objections to Mr.

4    Juravin's exhibits.  Now with -- they didn't break up the

5    exhibit by exhibit.  They did broad categories.  So --

6          THE COURT: Right.  I noticed that.  It was

7    difficult.

8          MR. TIMKO: -- it'll be like 500 pages.  Like

9    there's -- and I haven't studied Mr. -- I mean, I briefly

10   looked at them but they're similar in this respect.  So

11   they didn't break them down by -- by exhibit, like, you

12   know, Exhibit 74, Exhibit 75.  They just said, you know,

13   Juravin and it would be like 500 pages or whatever it

14   was.  So there's really no -- I don't even know how to

15   handle these exhibits in trial.

16         Now we did object to Mr. Juravin's exhibits.

17   They were all filed late under the scheduling order.

18   Your Honor was very specific that the exhibit exchange

19   should happen seven days before the -- before the trial.

20   Now in fairness to Mr. Juravin --

21         THE COURT: The holiday complicated things.

22         MR. TIMKO: Right, right.  So --

23         THE COURT: Normally they would have been due on

24   Monday.

25         MR. TIMKO: -- I was going -- I was going to

25

1   raise that first.

2          THE COURT: Yeah.  I was not going to hold that

3   against him.

4          MR. TIMKO: Right.  But he did file several on

5   the 20th, which would be after that date, but -- well, as

6   far as I know, he did not file an Exhibit 1 or 2.  He

7   filed Exhibit 5 after our objection deadline or showed up

8   on the docket.  I don't know.  There was some confusion

9   there.  So we didn't list an objection to that one, but

10  we object.

11         The way the exhibits are mixed, there's --

12  well, there's actually a specific issue you should also

13  be aware of.  The UMGI business records is primarily

14  consumer health questionnaires, with all their -- their

15  health records and some of them actually -- well, it's a

16  questionnaire where they say, you know, my, you know,

17  their body mass index and all their --

18         THE COURT: Right.

19         MR. TIMKO: -- preexisting conditions, all those

20  issues, and while it may not necessarily have their name

21  specifically on there, there's email addresses where you

22  can tell who the person is.  You may want to seal those

23  or take them off the docket or something just to protect

24  those people's confidentiality.

25         THE COURT: Which exhibit is that?

26

1          MR. TIMKO: That is Exhibit 3, UMGI Business.

2    That's Docket Number 400 to 400-6.

3          The rest of the exhibits, you know, they

4    include hearsay, there's relevance issues, there's

5    authenticity issues, but there's no way to go through

6    each document and submit that specific objection.  Some

7    of the documents honestly are helpful to us.

8          THE COURT: Well, I guess that's the question.

9          MR. TIMKO: Yeah.

10         THE COURT: With Mr. Juravin's documents and Mr.

11   Juravin is not here, do you wish to allow any of those

12   into evidence or are we -- are you -- because I think

13   your objection was to all of them, correct?

14         MR. TIMKO: Our objection was to all of them and

15   then we were going to try to talk to Mr. Juravin before

16   the trial and try to figure out what and talk to you and

17   try to figure out the best way to deal with it.  And I

18   even brought copies of all of these exhibits in case we

19   wanted to go -- to go through them.

20         There is one specific -- well, I think the bank

21   records -- so there were bank records that we requested

22   that we may or may not have received or the Trustee may

23   or may not have received through discovery.  So the bank

24   records we would like in, and we can identify.  I mean,

25   I guess we can do a supplemental filing and say these

27

1   bank records we don't object to.

2          There's a specific Declaration in one of the

3   exhibits.  I have it in my binder.  I can specify that

4   one now if you'd like, that I would be happy to have in.

5   I think that covers it.  Is there anything else?

6          MR. RYAN: I have to find the specific page,

7   but I think the communication between Mr. Bartolone and

8   Mr. Juravin about the disagreement between them over

9   whether or not, you know, getting the Google Gmail

10  account was sufficient and why do I have to give them the

11  documents, too.

12         THE COURT: Okay.  So let me ask you this.  Are

13  you intending to use any of those documents with your

14  witnesses today?

15         MR. TIMKO: Not -- I am not planning on using

16  any of them today.  I was planning on using one of them

17  on Wednesday if Mr. Juravin's here.

18         THE COURT: Okay.  Mr. Ryan.

19         MR. RYAN: Probably not.  I think that, you

20  know, Mr. Balot's testimony will be enough.  But if there

21  was ever doubt, I would probably just refer to it in the

22  written closing argument.

23         THE COURT: Okay.  What I suggest then is you

24  take the time either after trial today, probably for the

25  best, because if Mr. Juravin's not going to participate,

1    I don't -- I don't know how quickly this might go, to go

2    through and see what you would stipulate to and if it's,

3    you know, as an example, Exhibit 5, pages blank through

4    blank, then let's do that.

5           MR. RYAN: Right.

6           THE COURT: I realize they may not be

7    consecutively numbered and so that's going to be a

8    challenge, but see what you can come up with as a list

9    and then we can go through it.

10          As for Mrs. Juravin's exhibits, they were filed

11   substantially late.  I was going to give you the benefit

12   of the doubt.  If they are exhibits that the Plaintiffs

13   have because they have Mr. Juravin's exhibits, then I was

14   going to give you a pass, but we're not able to identify

15   that today.

16          What I will do is, to the extent your exhibits

17   are simply pleadings from this case and --

18          MS. JURAVIN: Exhibit 10 and Exhibit 11, those

19   are Trustee's productions.  Those are Trustee's

20   documents.

21          THE COURT: All right.  So 1 it says is a docket

22   report.  I don't have a problem with that if it's the

23   docket from this case.  I haven't gone back and looked at

24   every single exhibit here, because I can take judicial

25   notice of that.

1          MR. TIMKO: Yeah.  I don't think we -- just to

2     make your life easier, Your Honor --

3          THE COURT: Um-hum.

4          MR. TIMKO: -- and I don't think speak -- Mr.

5     Ryan can confirm whether or not, but as far as the -- oh,

6     actually these are all Anna's exhibits.  I'm sorry.  I'm

7     not involved in this.

8          THE COURT: These are all Mrs. Juravin's

9     exhibits.

10          MR. TIMKO: My bad.

11          THE COURT: Yeah, that's okay.  It's a little --

12     this case is a little complicated that way.

13          So that will be the docket.  Now, the only

14     caveat here is I haven't actually looked at these in

15     detail, but if they are what they purport to be on the

16     witness -- on the exhibit list, I have no problem with

17     them.

18          Number 1, the docket report; Number 2, copies

19     of the Complaints in 21-ap-142 and 22-ap-19, and the

20     pleadings regarding the settlements that were entered

21     into with PSR and Natural Vitamins, I have no problem

22     admitting those.  That's all part of Exhibit Number 2.

23          Exhibit Number 3, the Original Complaint or

24     the Complaints filed in 21-ap-103, I'll admit those.

25          Exhibit Number 4, Mrs. Juravin's motion for

1    summary judgment, I'll admit that.

2            Number 5, I don't know what the Certificate of

3    Compliance is, Mrs. Juravin.  Is it the actual documents

4    that were produced?

5            MS. JURAVIN: Yes.  That was the subpoena.  That

6    was the first time that I was subpoenaed by the creditor

7    DCS in the main bankruptcy case in 2019, and that is the

8    subpoena and then the compliance and then the documents I

9    provided to them.

10           THE COURT: Okay.  I'm not going to allow that

11   because, one, just the -- if you want to reference in

12   your testimony what you did in response, you know, and

13   the circumstances, that's fine.  But the documents

14   themselves, just because they were produced, doesn't make

15   them admissible; and because the deadline was missed,

16   Plaintiffs don't have a copy of those documents for

17   today, I'm not going to allow Exhibit Number 5.

18           Exhibit Number 6 says that it's the Trustee and

19   Bella Collina's motions for summary judgment and related

20   documents.  I take it those related documents are the

21   documents that they submitted in support of summary

22   judgment; is that correct?  You say related.

23           MS. JURAVIN: Exhibit 6, Your Honor, could you

24   repeat that?

25           THE COURT: It says it's the motions for summary

1    judgment that the Plaintiffs filed.

2            MS. JURAVIN: Yes.  Those are the BCPOA summary

3    judgments.

4            THE COURT: Okay.  And it says, and related

5    documents.  What are the related documents?

6            MS. JURAVIN: They filed, I think, a couple of

7    supplements.

8            THE COURT: Okay.  Because those are pleadings,

9    I will admit those.  Exhibit Number 6.

10            Exhibit Number 7, Plaintiffs Emergency Motion

11    for Order to Compel and for Sanctions, the order granting

12    it, the motion to limit deposition hours.  I'll admit all

13    that, Exhibit Number 7.

14            Exhibit Number 8 just says MCO Warehouse.  I

15    took a quick look at it.  It looks like some bills of

16    lading, et cetera.  I'm not admitting those.

17            Number 9, ex parte motions, Docs. 439, 441,

18    including Exhibit 490, and then miscellaneous.  I don't

19    know what miscellaneous is.  To the extent we can revisit

20    this, Mrs. Juravin, if you need to, you feel like there's

21    some benefit to having the specific pleadings in

22    evidence.  I can take those into evidence, and I will

23    take judicial notice of all my pleadings --

24            MR. RYAN: Okay.

25            THE COURT: -- to the extent anyone wants to

1    reference those.  All the pleadings on the docket in the

2    bankruptcy case.  But there are other things involved in

3    there, so I'm not going to admit Exhibit Number 9.

4                Exhibit Number 10, Trustee's production to the

5    Defendant's discovery request.  I'm not admitting that.

6                Exhibit Number 11, Trustee's exhibits used at

7    the deposition of the Natural Vitamins representative,

8    I'm not admitting that.  There's no basis, and because

9    those weren't provided as required by my order, I'm not

10   admitting those today.

11               Okay.  Ms. Johnson, were you able to get all

12   that?  Okay.  All right.

13               So we dealt with those exhibits.  As far as

14   since Mr. Juravin's not here, I'll hear from you tomorrow

15   on what you want to stipulate to within those.

16               MR. RYAN: Okay.

17               THE COURT: But other than that, they're not

18   going to be admitted.  Okay?

19               MR. RYAN: Okay.

20               THE COURT: Because he's not prosecuting.  If he

21   shows up tomorrow, maybe I'll change my mind.  But for

22   today's purposes, we're not going to use those.

23               All right.  Other housekeeping issues before we

24   get into evidence.

25               MR. TIMKO: The only -- I mean, there's a few

1    pending motions.  I believe there's a Daubert motion in

2    limine motion that's pending.

3            THE COURT: Yes.  And it deals with Mr. Balot's

4    qualifications as an expert.  The issues that arose

5    during his deposition.  My intent, I did set that

6    intentionally for today.  My intention is to address

7    those once I hear from Mr. Balot what his qualifications

8    are, and we can address those as they come up.

9            I think that one of the other issues that was

10   raised, too, is whether the report that was provided was

11   sufficient to meet the requirements of Rule 26(a)(2),

12   right?

13           MR. RYAN: Correct.

14           THE COURT: If you want to address that now, you

15   can.  Otherwise, I think we just take all that up when

16   you put Mr. Balot on the stand.

17           MR. RYAN: I think we can take it all up.  I

18   mean, one of the things was it didn't have an ink

19   signature, but it did have his name on it so.  But I

20   think we can do it all then.

21           And then, there was the -- the other motion

22   that you set for this morning was whether or not he was

23   going to be able to use these depositions that were not

24   transcribed by the court reporter that took the

25   testimony.  And the problem that I have with them is that

34

1    when you read them you can see there are places where

2    it's the court reporter that's speaking and it's that's

3    not how it's identified on the transcript.  And then

4    there are other places where they just stopped

5    transcribing and they, you know, put a timestamp on.  I

6    guess they couldn't figure it out.  So we've got an

7    incomplete.

8              THE COURT: Yeah, and it may be moot to really

9    deal with that because that -- it's a little convoluted

10   what goes to what, right?  But as I understand it, Mr.

11   Balot's testimony goes to the issue of the motions.

12             MR. RYAN: Correct.

13             THE COURT: The motion to sanction Mr. Juravin,

14   which is not Mrs. Juravin, right?

15             MR. RYAN: Right.

16             THE COURT: And Mr. Juravin's not here.

17             MR. RYAN: Right.

18             THE COURT: And so I doubt anyone's going to try

19   to use that transcript.  If they do, then I'll address

20   it.  But, yes, I am concerned, and I was hoping to hear

21   from Mr. Juravin today, one of the reasons I reserved it

22   was to find out exactly what happened and who transcribed

23   this and in what fashion.  I was -- I was --

24             MR. RYAN: And --

25             THE COURT: -- remarkably confused by -- by that

1    transcript.

2            MR. RYAN: Yeah.  And it wasn't just Mr. Balot.

3    That's the first one he did.  But eventually he did the

4    same thing with regards to the testimony given by Mr.

5    Greene and I thought one other person, Mr. Kelleher.

6            MR. TIMKO: Mr. Kelleher wasn't deposed.

7            MR. RYAN: Okay.

8            THE COURT: Okay.

9            MR. RYAN: So Mr. Greene.

10           THE COURT: And the only reason I guess I didn't

11   talk about those, because I don't think I've seen that

12   transcript, so but we'll address that as it comes up.

13           MR. RYAN: Yeah.  That's what I was thinking.  I

14   just wanted to mention it because you scheduled it.

15           MR. TIMKO: I think it was attached to one of

16   his --

17           THE COURT: Was it attached?  Okay.

18           MR. TIMKO: I think it was attached to one of

19   the -- which motion, I don't know, but it was attached to

20   one of the motions.  I do recall seeing it.

21           THE COURT: Yeah.  Okay.  All right.

22           Mrs. Juravin, any other housekeeping issues you

23   want to raise today before we get started?

24           MS. JURAVIN: No, Your Honor.

25           THE COURT: Okay.  And just because I didn't

1   mention it before, there wasn't a -- I said we're going

2   to proceed with trial after reviewing the documents that

3   Mrs. Juravin presented to me.  I do want to just put it

4   on the record, even though there was -- wasn't really a

5   request for a continuance, kind of sort of, so the

6   Eleventh Circuit does provide that this Court has broad

7   discretion in deciding whether to continue cases,

8   continue trials, and some of the factors that we consider

9   is whether the parties had plenty of time to prepare for

10  trial, the prejudice, the prejudice to not only the party

11  seeking the continuance but to the other parties that are

12  prepared and whether the continuance would resolve some

13  of the problems that are arising.

14          As the parties know, these cases have been

15  pending for -- some of them for more than two years.

16  This is the second, if not the third time I've tried to

17  conduct a trial on these matters.  Last time was, I

18  think, scheduled for November.  We came here in October

19  and at Mr. Juravin's request, due to some circumstances

20  outside this courtroom, the Court granted that

21  continuance, which gave the parties another three months

22  to prepare, and the fact that Mr. Juravin contended he

23  wasn't prepared for trial really was of his own doing.

24  He had sufficient time to prepare for trial.

25          The issues that have been raised to me today

1  regarding Mr. Juravin's health condition don't convince

2  me that he's unable to be here for trial today.  So we'll

3  just leave that at that.  Okay.  With that, Mr. Timko, do

4  you have something else?

5          MR. TIMKO: I just -- only because this might

6  save time for witnesses and court time and our clients'

7  money, I do see value in going ahead today, although Mr.

8  Kennedy does have some health issues.  There's a case,

9  the Eleventh Circuit has held that the failure to appear

10 at a duly scheduled trial after months of preparation by

11 the parties and by the trial court is a serious enough

12 offense for which the entry of a default is appropriate.

13 And I'm just throwing this out there just for the reasons

14 that I said before.

15          A thought is that, you know, we've already

16 submitted two motions for summary judgment, we already

17 had the depositions of, at least on our side, of

18 everybody except for Mr. Kennedy and Mr. Greene.  We

19 would be happy to submit declarations and draft, I guess,

20 a proposed order or judgment or whatever you want to call

21 it along with all the citations to the record to save

22 time on the trial.  If you enter the default, then it

23 would be up to Mr. Juravin to file a motion for

24 reconsideration under Rule 55(c).  And then if he did

25 that and lost, then he could appeal.  I don't know if

38

1    that helps with the procedural issues.  I don't know if

2    that clarifies things for you, but it would save us all a

3    lot of time.  Well, I have the right to closing either

4    way.  So it would save a lot of time --

5                THE COURT: Right, right.

6                MR. TIMKO: -- and money and effort.

7                I understand with respect to the sanctions

8    motion, which is not my motion, why, and Mr. Balot came

9    here from California --

10                THE COURT: Right.

11                MR. TIMKO: -- so you may want to hear his

12    testimony, but I do know that Mr. Kennedy is having --

13    he's having a hard time.  So having a declaration from

14    him may be -- I mean, as a Chapter 7 Trustee he's been

15    doing this for, I don't know, 20, 30 years -- may be

16    helpful.

17                Mr. Greene's testimony is relatively short and,

18    I mean, really he was the BCPO -- I'll tell you exactly

19    what he's going to testify to.  He was the BCPOA

20    president at the time that the NVLC money was discovered,

21    and he's going to basically provide the same testimony

22    that was already by Mr. Kelleher in connection with our

23    motion for summary judgment, and he also helped pick up

24    some cars that were purchased from the estate and

25    destroyed.  When they went to pick them up, the cars were

39

1    destroyed.  So he would testify that he saw the cars

2    before they were sold and they looked great, and after

3    they were sold, they were literally destroyed.

4         The other person would be Anna Juravin, who we

5    already have our deposition of, and it would be basically

6    covering the same things that were already addressed in

7    the deposition, and she's already taken a Fifth on two of

8    the major questions in that issue, and there's case law

9    saying you can't take the Fifth at a depo and then change

10   your trial testimony.

11        So I want to make sure that you're comfortable.

12   I know you brought up credibility in those issues in the

13   past, so I want to make sure that you're comfortable of

14   what we're doing.  But I also -- I don't know how much

15   we're really adding without Mr. Juravin here.  So that's

16   -- and my last witness was going to be Mr. Juravin.  And

17   due to the fact that in his last motion he says, you

18   know, he's scared of being incarcerated and those things,

19   and how unresponsive he was on deposition, my guess is he

20   genuinely doesn't want to testify.

21        Actually, along those roads, can I share one

22   more thing with you?

23        THE COURT: Well, I want to -- so let's explore

24   this for a second.

25        MR. TIMKO: Yeah.

1          THE COURT: I fully expect that Mr. Juravin will

2    appeal whatever my ruling is, provided I rule in his

3    favor -- or, I mean, I don't rule in his favor --

4          MR. TIMKO: Right.

5          THE COURT: -- that he will appeal.  Obviously,

6    if I ruled in his favor, there wouldn't be anything to

7    appeal, although that hasn't stopped him before.  We're

8    here.

9          MR. TIMKO: Um-hum.

10         THE COURT: It seems to me we could go pretty

11   quickly.  My preference would be to have you just go

12   ahead and put on evidence.  Because the other -- one of

13   the other issues that I noted in going back and looking

14   at the summary judgment pleadings, which I didn't

15   address, is that I don't think they addressed the

16   affirmative defenses that he did raise.  Whether you

17   think they're affirmative defenses or not, they at least

18   have to -- we have to go through them.  For instance, one

19   of them is the idea that the HOA or POA didn't properly

20   approve or authorize filing the Complaint.  Now you may

21   argue that that's not, that doesn't equate to lack of

22   standing, but it is on there as affirmative defense and

23   no one's addressed it yet.  And so the Court would have

24   to address that before I could rule.  So those are just

25   the types of things that came up as I was looking this

41

1  over.

2         What, who, how are you planning to proceed

3  today?  Which witnesses were going to go first?  Mr.

4  Timko's witnesses?

5         MR. TIMKO: It was going to -- it was going to

6  be Mr. Balot who's --

7         THE COURT: Okay.

8         MR. TIMKO: -- who's here.

9         THE COURT: Yes.

10        MR. TIMKO: And Mr. Kennedy.  And then tomorrow

11  it was going to be the gentlemen from NVLC, Mr. Arora and

12  Mr. Medina, and then we were going to follow up with

13  probably Mrs. Juravin, and then it would be Mr. Greene

14  and Mr. Juravin.

15        And, you know, with respect to the affirmative

16  defenses, you're right, we didn't address many of them,

17  but they didn't -- I mean, the burden is on the Juravins

18  to raise those.  So they didn't pursue them.

19        THE COURT: Agree, but in summary judgment you

20  have to address them.

21        MR. TIMKO: I might disagree with you on the

22  case law, but I'll get -- I'll come back on that one

23  because now I'm curious.

24        THE COURT: Yeah.  I think generally speaking

25  you're supposed to address them, but okay.

42

1       So what you're proposing then, Mr. Timko, is

2   that I allow you to present direct testimony that's not

3   already preserved via deposition by way of declarations.

4       MR. TIMKO: Correct.  And take -- and take Mr.

5   Balot's testimony today since he's here, and that's all.

6       THE COURT: Well, I'm just referring to your

7   case.

8       MR. TIMKO: Right.  No, no, I know.  But it also

9   ties into our case as well --

10      THE COURT: Okay.  Okay.

11      MR. TIMKO: -- because of the sanctions.  And,

12  you know, one of the things about showing fraud in a --

13  whether a party had fraudulent intent is to show how they

14  acted during the bankruptcy case, the surrounding

15  circumstances, totality of circumstances.  And certainly

16  destruction of documents does show his intent to -- his

17  intent towards the bankruptcy case, the trial, and how to

18  conduct himself.  So it does tie into that.  But, yeah,

19  that, that was my thought process.  And we can -- we can

20  still call everybody.  But like, for example, Mr. Medina

21  and Karan Arora are coming up from West Palm Beach

22  tomorrow --

23      MR. RYAN: Dade County.

24      MR. TIMKO: Oh, Dade County?

25      MR. RYAN: Yes.

43

1            MR. TIMKO: Oh, I thought it was West Palm

2    Beach.  Okay.  So Dade County, a little further.

3            Mr. Greene has other business things that he

4    needs to do.  So I've been texting him back and forth

5    trying to figure out what the best time for him to show

6    is.  You know, if Mr. Juravin's not going to show here

7    now --

8            THE COURT: Well, here's the -- here's the

9    difficulty, is as to your case, Mr. Timko, against Mr.

10   Juravin, he is the only Defendant and he is not here.  So

11   you're right, I probably could just --

12           MR. TIMKO: Right.

13           THE COURT: -- move forward on default against

14   him with a default judgment.

15           As to the other cases, all four of them I think

16   we have, Mrs. Juravin is a Defendant in those cases, and

17   we need to move forward with allowing her to defend

18   herself.  Some of this also presumes that I am going to

19   issue a sanctions order based on the ESI.  I don't know

20   what I'm going to do on that at this point.  So I need to

21   hear that evidence.  So I think that procedurally for all

22   of us it's best just to go ahead and go forward.

23           MR. TIMKO: Okay.

24           MR. RYAN: I'd just like to also add one thing.

25           THE COURT: Yes.

44

1          MR. RYAN: I think that the Trustee is entitled

2     to defaults as against Juravin Incorporated, JINC and

3     UMGI.  They're all parties to these cases.  They have not

4     appeared since their attorney withdrew.  They've not

5     participated in anything since their attorney withdrew.

6     They're not represented today.

7          THE COURT: They're not represented today.  And

8     I think you're right, it's just we need to proceed as

9     against Mrs. Juravin, and I don't know how much of a

10    difference that makes in your presentation.

11         MR. RYAN: Not much.  Just, at the end of the

12    day, the evidence with regards to her is going to have to

13    be heard, and I just wanted to clear up the housekeeping.

14         THE COURT: Yeah.  Understood.  It's a messy

15    situation, and I admit perhaps if we weren't consolidated

16    it might be a little bit easier to pull pieces apart.

17    But we are -- we're here, we did that to try and promote

18    judicial economy, and so we're kind of stuck with it

19    today.

20         If you can figure out, especially after today's

21    courtroom -- court, if you figure out a way to make it go

22    faster, I'm all for that.  But I think we do need to go

23    ahead and proceed.  Okay?

24         MR. RYAN: Okay.  Would it be possible to take

25    five minutes between --

1          THE COURT: You want to regroup?

2          MR. RYAN: -- between now and when we actually

3   put Mr. Balot on the stand so that we can talk about if

4   there are some adjustments we should be making and how we

5   proceed?

6          THE COURT: Yes.

7          MR. RYAN: Okay.

8          THE COURT: And that is right now, right?

9          MR. RYAN: Yes.

10          THE COURT: He's going to be your first witness?

11          MR. RYAN: Yes.

12          THE COURT: Okay.  Then let's take a break. It's

13   11:00 o'clock.  Let's take about five or ten minutes.

14   Okay.  Let me know when you're ready.

15          MR. RYAN: Thank you, Judge.

16          THE COURT: All right.  Thank you.

17          MR. TIMKO: Thank you, Your Honor.

18          COURTROOM DEPUTY: All rise.

19          (Thereupon, a brief recess was taken, after

20   which the following proceedings were had.)

21          COURTROOM DEPUTY: All rise.  Court is back in

22   session.

23          THE COURT: You may be seated.

24          MR. RYAN: Plaintiff calls Charlie Balot to the

25   stand.

1      THE COURT: All right.  Mr. Balot, come on up to

2  the witness stand.  You will stand behind the box there,

3  and Ms. Johnson will swear you in.

4      COURTROOM DEPUTY: Please raise your right hand.

5      Do you solemnly swear or affirm that the

6  testimony you are about to give is the truth, the whole

7  truth, and nothing but the truth so help you God?

8      THE WITNESS: I do.

9      COURTROOM DEPUTY: Please state your name and

10  address for the record.

11      THE WITNESS: Charles Balot, 9032 West 25th

12  Street, Los Angeles, California, 90034.

13      THE COURT: All right.  Have a seat.  And just

14  make sure when you're testifying that you speak into the

15  microphone so it's on our recording.

16      THE WITNESS: Yes, Your Honor.

17      THE COURT: Okay.

18      MR. RYAN: I have exhibits.

19      THE COURT: Yes.  You may approach the witness.

20      THE WITNESS: Thank you.

21      THE COURT: Okay.  What is making that noise?

22      MR. TIMKO: Oh, I think your computer --

23      MR. RYAN: I was wondering --

24      MR. TIMKO: -- your computer is making a beep

25  for some reason.

1          THE COURT: Ah, okay.

2          MS. JURAVIN: Mr. Ryan, are those exhibits

3    included in the big folder that you're going to refer to

4    now?

5          THE COURT: Hold on just a second.  Let him see

6    if he can figure that out.

7          MR. TIMKO: May I assist Ms. Juravin real quick?

8          THE COURT: Yes.

9          (Thereupon, a brief pause in proceedings)

10          THE COURT: Is your computer giving you an error

11    message, Mr. Ryan?

12          MR. RYAN: I'm not getting any message.  I'm

13    just hearing the dinging.

14          MR. TIMKO: It's connecting.  That's the sound

15    it makes when it connects and unconnects.

16          THE COURT: Yeah.

17          MR. TIMKO: So it may be --

18          THE COURT: So it's connecting and

19    disconnecting.

20          MR. TIMKO: So it may be -- here.  Jim Timko IT

21    department.

22          THE COURT: All right.  That sounds better.

23          MR. RYAN: Let's hit restart as well.

24          THE COURT: Okay.  We're ready?

25          MR. RYAN: I think -- I think so.

1          THE COURT: Are we having more technical issues

2    or is something else going on?

3          MR. RYAN: Yeah.  Not with the WiFi.  Just

4    finding the -- getting back to where I was.  Got it.

5          So there's only three exhibits that I'll need

6    to use this for, and it's because the ability to move

7    around through the paper document is much more difficult

8    than the electronic version.

9          THE COURT: All right.

10         MR. RYAN: It's so long.  And that doesn't start

11   until Exhibit 7.  So I'll start without it.

12         THE COURT: Okay.

13         MR. RYAN: Okay.

14         THE COURT: All right.  Please proceed.

15         MR. RYAN: Okay.

16   THEREUPON:

17                   CHARLES BALOT

18   having been previously duly sworn, was examined and

19   testified as follows:

20                 DIRECT EXAMINATION

21   BY MR. RYAN:

22     Q    Mr. Balot, would you please tell the Court a

23   little bit about your educational and professional

24   experience?  What do you do for a living?

25     A    I run a company called Online Security that

1    provides electronic discovery services both from a

2    technical and consulting perspective, particularly to law

3    firms and lawyers and C-level executives.

4         Q    Okay.  And how long have you been doing that?

5         A    This iteration of our company was created in

6    1997.  Prior to that, we were a database programming

7    company.

8         Q    Okay.  And just putting a number to it, how

9    many years --

10        A    That would --

11        Q    -- how many years total?

12        A    -- be 27 years.

13        Q    Okay.  And did you have to get any specialized

14   training to enable you to be able to do what you do?

15        A    My training, at least in this portion of my

16   business, has been over the 27 years that I've been

17   involved in it, running the company and being a hands-on

18   practitioner.

19        Q    Okay.  And is Online Security a big company or

20   a small company?

21        A    No, presently we're just a company of three

22   people.

23        Q    Okay.  And do you supervise the other

24   employees?

25        A    Yes, I do.

50

1      Q     Do you supervise all their work?

2      A     Yes.

3      Q     Okay.  And do you oversee and answer questions

4   from them about their particular work?

5      A     Yes, when they're posed to me.

6      Q     Okay.  And have you had an opportunity to

7   provide professional testimony in court before?

8      A     Yes, I have in the past.

9      Q     Okay.  And you've testified with regards to

10   recovering electronically stored information?

11      A     Yes, I have.

12      Q     Okay.  And have you had an opportunity to read

13   and review the order that was issued with regards to the

14   work you were supposed to do with regards to the Juravin

15   devices and accounts?

16      A     Yes, I did.

17      Q     Okay.  And was that an important aspect of you

18   being able to do your work?

19      A     We read and review those types of orders

20   constantly in the work that we do, and it's a must that

21   we review it so that we have a roadmap to follow in terms

22   of what we do in a case, yes.

23      Q     Okay.  And did that case require you to review

24   devices that were provided to you from Mr. Juravin's

25   home?

1        A    As I read it, yes.

2        Q    Okay.  And were you also required to review

3    what I'll just refer to as cloud accounts where

4    information was stored outside the devices?

5        A    Yes.  That was part of the order as well.

6        Q    Okay.  And did you have a particular person at

7    Online Security that did all the particular keyboarding

8    and whatnot?

9        A    Yes, I did.

10       Q    Okay.  And who was that?

11       A    That would be Richard Gralnik.

12       Q    Okay.  And when Richard Gralnik was doing the

13   technical work of connecting peripherals and searching

14   and whatnot, were you overseeing every aspect of what he

15   was doing?

16       A    Yes, I would, on a daily basis.

17       Q    Okay.  And did you participate in preparing the

18   inventory of the devices that you took in?

19       A    The inventory was prepared by both me and Mr.

20   Gralnik.

21       Q    Okay.  And did you review every single device

22   that came in and that was listed on that inventory?

23       A    In terms of the physical evidence, yes.

24       Q    Yeah.  Okay.  And with regards to, in

25   particular, the Google Cloud account, did you participate

52

1    in determining how that Google Cloud account would be

2    searched?

3         A    Well, that account was going to be searched, as

4    far as I can recollect, based on what the order called

5    for, based on keywords and keyword phrases.

6         Q    Okay.  So in order to do that search, you

7    compare the information that's typed into your system to

8    the information that's required by the ESI order?

9         A    That is correct.

10        Q    Okay.  And does Mr. Gralnik have to come to

11   you when he finishes inputting the search terms so he can

12   determine what exactly your company is going to look for

13   in the Juravin data?

14        A    Well, he and I both work together inputting

15   those search terms together.

16        Q    Okay.  So you have personal knowledge of the

17   information that was used to search the Juravin database?

18        A    Yes, I do.

19        Q    Okay.  And when you -- when the company did get

20   access to the Google Drive account, did you personally

21   look and see what was in that Google Drive account?

22        A    There were points, yes, where I reviewed what

23   was in that account.

24        Q    Okay.  And one of the things that's at issue

25   today is something called a Google Activity Log.

53

1          Did you look at the online version that Google

2    maintained with regards to the activity in the Juravin

3    Google Drive account?

4          A    Not every day, but there were points where I

5    did review that, yes.

6          Q    Okay.  And with regards to making, you know, an

7    exhibit that would demonstrate what was -- what Google

8    was reporting as the activity at that time, is that a

9    process that you have to run, or is it just a matter of

10   transferring a copy from the cloud account down to a hard

11   device?

12         A    I would call it transferring the data and then

13   putting it into a format that's readable.

14         Q    Okay.  And so once you download or transfer

15   that information to something that's outside of Mr.

16   Juravin's cloud account, were you able to tell whether or

17   not the transferred file that you had was the same as

18   what Google was reporting as activity in the Juravin

19   cloud account?

20         A    Yes.

21         Q    Okay.  Before this case started, did you have

22   any prior relationship with the Trustee, any of his

23   counsel, or any party to this case?

24         A    No, I did not.

25         Q    Okay.  In the process of working on the Juravin

54

1    devices and cloud accounts, did you have an opportunity

2    to communicate with either Mr. Juravin or his attorney,

3    Mr. Bartolone?

4         A    I never directly contacted either one.  No.

5         Q    Okay.  But did you communicate with them?

6         A    No, I did not.

7         Q    Okay.  Did you monitor the communications that

8    were had with them?

9         A    Yes, I did.

10        Q    Okay.  Are you aware of whether or not your

11   company had difficulty getting access to the Google Drive

12   account?

13        A    Yes.  Mr. Gralnik expressed frustration to me

14   on multiple occasions in terms of being able to access

15   the cloud accounts.

16        Q    And did you review any emails between Mr.

17   Juravin and Mr. Gralnik with regards to that problem?

18        A    Yes.  Part of the process within our company is

19   that I am CC'd on all communications on cases.  So I was

20   reviewing that.

21        Q    Okay.  So as far as the actual work, you

22   supervise it.  With regards to the communications, you

23   monitor it.

24        A    Correct, sir.

25        Q    Okay.  I'd like to draw your attention to

1  what's marked as Exhibit 1 in the book.  Do you recognize

2  that document?

3       A    Yes, I do.

4       Q    Okay.  And is that the ESI order that we were

5  talking about earlier that gave you your instructions on

6  how to handle the Juravin devices and cloud accounts?

7       A    Yes, it is.

8       Q    Okay.  And do you know whether or not the work

9  you did on the Juravin devices and cloud accounts was

10  conformed to the information that you were required to do

11  or the directions you were given by this order?

12       A    To the best of our ability, yes.

13       Q    Okay.  Once you ran a search of the Google --

14  I'm sorry -- the Juravin devices and cloud accounts, what

15  do you -- what did Online Security do with the responsive

16  material?

17       A    Responsive material is then taken and put into

18  an online cloud repository, which would allow outside

19  parties to be able to review it.

20       Q    Okay.  And do you know whether or not Mr.

21  Juravin's attorney, Mr. Bartolone, was given access to

22  those accounts before the Trustee was given access to

23  those accounts?

24       A    To the best of my recollection, yes.

25       Q    Okay.  And when you say an online account, is

1    that referred to as a GoldFynch account?

2        A    Yes.  That is the system that we use for that

3    purpose.

4        Q    Okay.  So, ultimately, did all of the material

5    that was responsive from the Juravin devices and accounts

6    end up being placed in a GoldFynch repository for the

7    Trustee to use?

8        A    Yes, it was.

9        Q    Okay.  Did any information that wasn't in that

10   responsive search end up being put into that GoldFynch

11   account for the Trustee's review?

12       A    Not that I can recall.

13       Q    Okay.  So if it was in the GoldFynch account,

14   it's material that Online Security recovered from Mr.

15   Juravin's devices and cloud accounts and had the words

16   and phrases and symbols that you used to search his data?

17       A    Yes.

18       Q    Okay.  I'd like you to look at Exhibit Number

19   2, please.  And attached to it -- let me see, one, two,

20   three -- I guess there's a nine-page motion and then

21   attached to it is a Declaration by Mr. Gralnik.

22       A    Yes.

23       Q    Are you familiar with that Declaration?

24       A    Yes, I am.

25       Q    Okay.  Were you familiar with it at or about

57

1    the time Mr. Gralnik wrote it?

2        A    Yes, I am.  Was, I should say.

3        Q    Did that Declaration accurately reflect your

4    understanding of the problems that were occurring with

5    regards to getting access to Mr. Juravin's Google cloud

6    account?

7        A    I think it was very descriptive of the issues.

8        Q    Okay.  Would you please turn to Tab Exhibit 6.

9        A    I'm there.

10       Q    Okay.  Can you tell me whether or not you

11   recognize those documents?

12       A    Yes, I do.

13       Q    Okay.  And where did you get these documents?

14       A    I believe these came from one of the cloud

15   accounts of Mr. Juravin.

16       Q    Okay.  And is this a document that was

17   responsive to your search and ended up in the GoldFynch

18   account?

19       A    Yes, it was.

20       Q    Okay.  And what does this document say that it

21   is?

22       A    From what I can tell, it's evidence of a

23   transfer of funds.

24       Q    Okay.  Okay.  Now, if we could -- let me just

25   see.

58

1          Before I get to putting Exhibit 7 on the screen

2    so we can go through it more quickly, did you -- you

3    already said you reviewed the transferred Google Activity

4    Log, correct?

5          A    Yes.

6          Q    Okay.  And did you -- well, better question.

7               What does an activity log do?

8          A    Well, it depends on what it's tracking.  But in

9    the case of the Google account, what it tracks is access

10   to the account, who's making the access to the account,

11   and other things such as are there edits being done or

12   how long somebody is actually on the account.

13         Q    Okay.  And does it tell you what they did when

14   they were on the account?

15         A    Well, it's not going to tell you if they edited

16   something as an example, no, it will not.  But it will

17   say that an access was made, and it also will depict if

18   something's been deleted.

19         Q    Okay.  Well, are you saying that it doesn't

20   tell you what the edits were?

21         A    That's correct.

22         Q    But it will make a notation whether or not

23   somebody viewed a file, edited a file, trashed a file,

24   or deleted a file?

25         A    That is correct.

1      Q    Okay.  So those are -- those are the four

2  activities that you could learn from reviewing the

3  activity log?

4      A    That, and there's others as well, which I don't

5  recall right now.

6      Q    Okay.  And with regards to deleted files,

7  isn't it accurate that the activity log reflects that on

8  June 22nd, 2021, more than 80,000 files were deleted?

9      A    That's what we viewed within the realm of that

10  activity log, yes.

11      Q    Okay.  And did it also reflect files that were

12  trashed or edited?

13      A    I don't recall.

14      Q    Okay.  We'll go through it in a second.

15          Did Online Security do anything to try to see

16  if those deleted files existed elsewhere in other Juravin

17  cloud accounts or devices?

18      A    Yes, based on the searches that we performed.

19      Q    Okay.  So, and that's basically running a

20  search for files with the same name?

21      A    That would be correct.

22      Q    Okay.  And were you able to locate any of the

23  deleted files elsewhere in the Juravin devices or

24  accounts?

25      A    To the best of my recollection, I believe there

1  were a handful of those.  Yes.

2      Q    Okay.  And did Online Security prepare a report

3  as to what was found elsewhere?

4      A    Yes.

5      Q    Okay.  And if you found a document elsewhere,

6  would you be able to tell whether it was identical to the

7  one that had been deleted or edited in the cloud account,

8  or might it be a different version?

9      A    No, you wouldn't be able to tell that.

10      Q    Okay.  Did your search require you to look for

11  transfers?

12      A    I believe that was part of the process of our

13  searches, yes.

14      Q    Did your search require you to look for

15  accounts?

16      A    Yes.  We took the numeric value of accounts,

17  and that's one of the processes we always follow where

18  there's what's considered financial malfeasance in a

19  case, and we just run that as all zeros but in the

20  patterns of a bank account.

21      Q    Okay.  And you search also for the word

22  "account"?

23      A    Yes.

24      Q    And did your search require you to look for

25  trust documents?

61

1      A     To the best of my recollection, yes.

2      Q     Okay.

3            MR. RYAN: Can we pull up the electronic

4   version?

5            THE COURT: You have to bring it up on your

6   computer.  She's got it connected.  Right?  Should we be

7   seeing his screen right now?

8            COURTROOM DEPUTY: No, it's not --

9            MR. RYAN: You're not seeing it?

10           COURTROOM DEPUTY: No, it's --

11           MR. RYAN: Let me do it the old-fashioned way.

12           COURTROOM DEPUTY: It's whatever he fixed on it

13   for you earlier.  I'm not sure what our IT guy did.

14           THE COURT: Yes.  You may approach.

15           THE WITNESS: This is under 8, too?

16           MR. RYAN: Number 7.

17           THE WITNESS: Okay.

18           MR. RYAN: Okay.

19           MR. TIMKO: Do you need another copy?

20           MR. RYAN: Do we have another set of that?

21           THE COURT: Mr. Ryan, do you want us to get our

22   IT person up here to see if we can fix the screen part?

23           MR. RYAN: There's only about a dozen or so

24   questions and I think I can do it this way.

25           THE COURT: Okay.

1           MR. RYAN: I'm better with paper than I am with

2    technology.

3           THE COURT: Okay.

4           MR. RYAN: It's just so hard to navigate.

5           THE WITNESS: AI is better with technology but

6    that's not as.

7           THE COURT: So Mrs. Juravin has it?

8           MS. JURAVIN: Yes, I do.

9           THE COURT: The witness has it.  Do I have a

10   copy?

11          MR. TIMKO: Yes, Your Honor.

12          MS. JURAVIN: There was one folder here.  I

13   think Mr. Ryan supposed to --

14          THE COURT: Is that an extra one?

15          MS. JURAVIN: Mr. Ryan.

16          THE COURT: Mr. Ryan.

17          MR. RYAN: Yeah, I'm trying -- well, that's --

18          THE COURT: That's something else?

19          MR. RYAN: -- Number 8.

20          THE COURT: Okay.

21          MR. RYAN: You know, it gets into -- that's 7

22   here, 8's the next one.

23          THE COURT: I can pull it up on my screen if I

24   need to.  Not that I'm dying to have more paper.

25          MR. TIMKO: May I approach?

1          THE COURT: Yes.  Please do.  Thank you.

2          MR. RYAN: In some ways it will be easier using

3   the paper.

4          THE COURT: Okay.

5   BY MR. RYAN:

6      Q    So I need you to start from the back, Mr.

7   Balot.

8      A    Okay.  Can I rise and go get my glasses?  I'm

9   sorry, I forgot to bring them up here.

10         THE COURT: Oh, yes.  Go right ahead.

11         THE WITNESS: They're in my briefcase.

12         MR. TIMKO: Do you want me to bring your

13   briefcase over there?

14         THE WITNESS: That's good.  Thank you.

15         MR. TIMKO: You're welcome.

16         MS. JURAVIN: I think the Judge needs the next

17   folder --

18         MR. RYAN: Okay.

19         MS. JURAVIN: -- because the continuation --

20         THE COURT: Hold on.

21         MR. RYAN: I see what happened.

22         MS. JURAVIN: -- the continuation of Exhibit 7

23   is in the other folder.

24         THE COURT: Oh, there's more than -- oh, okay.

25   Got it.  Thank you.

1          MR. TIMKO: I thought it was easier than what it

2     was, Your Honor.

3          THE COURT: That's all right.

4          MR. RYAN: So actually I'm starting in the

5     second book.

6          THE COURT: Okay.

7          MR. RYAN: What I thought was 8 is really --

8          MR. TIMKO: Thank you, Mrs. Juravin.

9          THE WITNESS: Wrong book?

10          MR. RYAN: Yeah.

11          THE WITNESS: Okay.

12          MR. RYAN: Judge, I'm looking at the last piece

13     of paper before Exhibit 8.

14          THE COURT: Okay.  It says Page 1291 of 1291 at

15     the bottom or 601 of 601 at the top?

16          MR. RYAN: Yes.

17          THE COURT: Okay.

18          MR. RYAN: It was a lot bigger one, it was big

19     enough to read.  So I apologize but --

20          THE COURT: That's when glasses come in handy.

21          MR. RYAN: If you look at the electronic one,

22     at least you can blow it up.

23     BY MR. RYAN:

24       Q    So the very last line it has a number off to

25     the left, 99028.  What does that number represent, Mr.

1    Balot?  Bottom left corner.

2         A    Yeah, I see it.  That represents the item name

3    and the numeric value.

4         Q    Okay.  So that is the 99,028 files at the end

5    of this activity log?

6         A    That would be correct.

7         Q    Okay.  And if you look over to the right,

8    there's a column for date and it says June 22nd, '21.

9         A    Yes.

10        Q    And it has a time.

11        A    Yes.

12        Q    Do you see that?

13        A    Yes, I do.

14        Q    Okay.  How come there's nothing between May 5th

15    when the break order occurred and June 22nd when you were

16    finally able to see the activity log?

17        A    Because we didn't have access to it.

18        Q    Okay.  So if you had had access sooner, you

19    would have seen what was on there sooner?

20        A    That would be correct.

21        Q    Okay.  And is the activity log defined by the

22    time frame, or is it also the size of the activity log?

23             So if you have, for instance, 80,000 activities

24    in one day, that fills up the bytes, I guess it is, and

25    limits your ability to look backward?

66

1    A    Yes.

2    Q    okay.  So presumably, or I don't want to

3  presume anything, if there hadn't been 80,000 files

4  deleted on June 22nd, '21, would you have been able to

5  see further back in the past?

6    A    Yes.

7    Q    Okay.  So we don't have any way of knowing what

8  was deleted, trashed, or edited before June 22nd, '21?

9    A    That would be correct.

10   Q    Okay.  Well, one of the things that --

11        THE COURT: Mr. Ryan, Mr. Ryan, let me stop you

12 for a second.  Maybe you just jumped over something.

13 What does the date represent, because I didn't get that

14 testimony?

15        MR. RYAN: It -- okay.

16 BY MR. RYAN:

17   Q    Mr. Balot, is the date that that represents

18 the date that something happened in the Juravin Google

19 cloud account?

20   A    Yes, it.

21   Q    Okay.  And then over to the -- well, to the

22 left of that, there's column named User.

23   A    Yes.

24   Q    And that identifies the user that was accessing

25 that file at the time of that activity?

1       A     Whatever user is behind that name, yes.

2       Q     Okay.  And then over to the right, there's a

3    file or a column named Owner, and they all have Don at

4    Juravin.com.  Does that indicate who owned the account?

5       A     Well, that's who's registered as one of the

6    users, yes.

7       Q     Okay.  Then down, let's see, the third column

8    says Event Description.  Is that the activity that

9    occurred with regards to each of those files on that day?

10      A     According to that log, yes.

11      Q     Yes.  So that's what Google was saying the

12   activity was?

13      A     That is correct.

14      Q     Okay.  And then there's a column next to that

15   called File Ext.  What is that?

16      A     It's the File Extension.

17      Q     Okay.  And does that give you some information

18   that's helpful when you're analyzing data?

19      A     Yes, it will.

20      Q     How does it do that?

21      A     Well, as an example, JPG would refer to a

22   visual file.  MP4 would refer to a music file.  These are

23   just extensions you recognize after you've done the

24   amount of work in this industry that I've done for the

25   number of years I have.

68

1    Q    Okay.  And a JPG, J-P-G, just because it's a
2  visual file doesn't necessarily mean it's a photograph,
3  correct?
4    A    That would be correct.
5    Q    So it might be a picture of an email?
6    A    That would be correct.
7    Q    It might be a picture of a document?
8    A    Could be, yes.
9    Q    Could be a copy of a bank record?
10   A    Could be.
11   Q    Yeah.  Okay.  And then there's the second
12 column has -- it says Item name.  So are those the names
13 of the files that were accessed?
14   A    That would be correct.
15   Q    Okay.  And sometimes these names, they don't
16 seem to have any rhyme or reason, and I think we'll get
17 to some examples here pretty soon where they do have
18 names.
19        Do you have experience understanding how files
20 are named?
21   A    Well, in the event that we're looking at here,
22 there are patterns that after years of doing this you
23 start recognizing.
24   Q    Okay.  And when users do use a descriptive
25 name --

69

1    A    Um-um.

2    Q    -- does that typically give you an indication

3    of what content is in those files?

4    A    Possibly, yes.

5    Q    Okay.  So, for instance, if you looked at a

6    file and the name of it was Will Trust Account Juravin,

7    would you expect to see some information in there about a

8    Juravin trust account?

9    A    Yes, I would.

10   Q    Okay.  And a file of that type would be

11   something that you would have ended up recovering and

12   providing to the Trustee?

13   A    Well, based on the search criteria we were

14   given, yes.

15   Q    Okay.  So I want to jump around here a little

16   bit and look at some specific files.  Just give me one

17   moment.

18        Can you tell me what is the difference between

19   a trashed file and a deleted file?

20   A    Well, you know, different systems will use

21   those terms, and at least from my perspective, trash and

22   deleted are almost the same thing.

23        Google, obviously, they use trash as their term

24   for deletion, for argument sake, or gotten rid of.

25   Deleted, at least in other aspects of what we do, would

70

1    be a file that's been overwritten or taken away from the

2    computer.

3         Q    Okay.  And once you've got access to the

4    Juravin Google cloud account, is it possible for you to

5    go back and get the trashed and deleted items?

6         A    After 30 days, it is not.

7         Q    Okay.  So if you didn't get access to the

8    account until July -- I'm sorry -- August 23rd, 2021, you

9    would not have been able to get anything that had been

10   trashed or deleted on June 22nd?

11        A    That is correct.

12        Q    Okay.  And if anything were edited during this

13   period, even though it's not deleted or trashed, is there

14   anything you could have done on August 23rd, 2021, to see

15   what the file looked like before it had been deleted?

16        A    That would not be possible.

17        Q    Okay.  Thank you.

18             (Thereupon, a pause in the proceedings)

19             MR. RYAN: I apologize, Judge.  The redactions

20   are hitting the numbers also.

21   BY MR. RYAN:

22        Q    Okay.  You're going to have to switch notebooks

23   for a second.

24        A    Which one?  The red one?

25        Q    No.  We're still in the activity log.

1      A     Okay.

2      Q     The first part of Exhibit 7 is in the other

3  notebook.

4      A     At the beginning of 7?

5      Q     I want you to go to Page 40 of 1291.

6      A     Okay.  I'm there.

7      Q     Okay.  The page above it, my hole punch has

8  gone through the number, but I'm sure it's Page 39 of

9  1291.  I want you to look at Line 1732.

10     A     Okay.

11     Q     Okay.  Based on the name of that file, can you

12  deduce what activity occurred in that file on July 8th,

13  2021?

14     A     Looks like the account Don Juravin accessed

15  this file and the filer's name, Andrew hours reviewed,

16  and I would imagine, you know, knowing what I know about

17  business, this would be somebody by the name of Don

18  Juravin reviewing an employee's hours.

19     Q     Okay.  And does it show that that file was

20  deleted?

21     A     Yes, it does.

22     Q     Okay.  And based on the surrounding file names,

23  are you able to, or based on the file extension, are you

24  able to make any determination as to what kind of file

25  that was?

72

1        A     In certain cases, yes.

2        Q     Okay.  What about in this case?

3        A     Relating to which files?  Relating to which

4    file?

5        Q     Okay.  The one showing on 1732, Andrew hours

6    reviewed, December, January and February, dot W-E-B-M.

7        A     Right.

8        Q     What is webm?  What does that mean?

9        A     That's a file extension, and it's a file

10   extension, I think, not positive of this, that's created

11   by Google.

12       Q     Okay.  And is it a file extension for a Google

13   program that tracks time?

14       A     I'd have to look at the Google Drive account to

15   be able to tell that for sure.

16       Q     Okay.  I want you to go to Page 252 of 1291.

17       A     I'm there.

18       Q     Okay.  And there is a line number 17,739, about

19   a third of the way up from the bottom.  Do you see that?

20       A     Yes, I do.

21       Q     Okay.  And what is the name of that file?

22       A     UMGI Resolution of Money Paid to Don and Anna.

23       Q     Okay.  And if you look at that, if you go over

24   to the event, the only thing that happened to it was it

25   was viewed by Anna Juravin, correct?

73

1      A     According to this record, yes.

2      Q     Okay.  Let's see, 17.  Okay.  Further up that

3   page, there's a line 17717.

4      A     Yes.

5      Q     I'm sorry.  716.

6      A     Yes.

7      Q     Okay.  And what happened there -- well, what's

8   the name of that file?

9      A     UMGI Resolution of Money Paid to Don and Anna.

10     Q     Okay.  And this time, who does it appear is

11   viewing the file?

12     A     According to the record, it's Don at one dot

13   care.

14     Q     Okay.  Okay.  If you go up a few more lines,

15   you get UMGI Resolution.  I'm sorry.  Line 17713, it

16   seems like you have the same file name, right?

17     A     Yes, it does.

18     Q     Okay.  So would you assume that's the exact

19   same file, just another activity in that file?

20     A     My assumption would be yes, it is.

21     Q     Okay.  And what happened with it on that one,

22   and who did it?

23     A     According to this, it was the same Don at one

24   dot care.

25     Q     Okay.  So he's looking at it a second time.

74

1      A     According to this record, yes.

2      Q     Okay.  Now if you go up to 17, line 17707 --

3      A     Yes.

4      Q     -- through 17703 --

5      A     Yes.

6      Q     -- you see that same file again?

7      A     Yes, I do.

8      Q     More activity.

9      A     Correct.

10     Q     And this time, who's the user that's doing the

11 activity?

12     A     At this juncture, it's Anna at Juravin dot com.

13     Q     Okay.  And what event happened in that

14 activity?

15     A     According to this log, edits were being made to

16 the document.

17     Q     Okay.  So that document with regards to

18 transfers to Don and Anna Juravin was being viewed and

19 edited in rapid succession.

20     A     Yeah.  I can (sic) tell that it was a transfer.

21 I can tell that it was a resolution of money paid to Don

22 and Anna.

23     Q     Okay.  And that document was being edited?

24     A     That's correct.

25     Q     And viewed?

1        A     That is correct.

2        Q     Okay.  And once the document was changed, was

3    the Trustee able to see what it looked like before the

4    change?

5        A     Based on what we could recover, no.

6        Q     Okay.  And if there were other views and edits

7    made of that file, they would show up further up in the

8    activity log, right, after this date?

9        A     That's correct.

10       Q     So you got the oldest date in the back and the

11   newest date in the front?

12       A     Yeah.  You work from oldest to newest.

13       Q     Okay.  So I'd like you to jump all the way up

14   to Page 32 of 1291.

15       A     I have it.

16       Q     Okay.  And if you look at the line number 1337.

17       A     Yes.

18       Q     Okay.  UMGI Resolution of Money Paid to Don and

19   Anna, correct?

20       A     Yes.

21       Q     And that item was viewed again on July 15, 2021

22   by Anna Juravin dot com, correct?

23       A     That is correct.

24       Q     Okay.  And so if there were any number of times

25   that either Don or Anna Juravin went into this activity

76

1    log between those dates, there would be an entry with

2    that same file name?

3         A    If that's the file they were looking at,

4    correct.

5         Q    Okay.  So now if you could go to Page 504 of

6    1291.

7         A    Yes.

8         Q    Okay.  I want you to look at line number 37404.

9         A    I'm there.

10        Q    Okay.  And can you tell anything about that

11   document based on its file name?

12        A    Well, it's a screenshot, number one, and it's

13   a screenshot of what looks to be a wire transfer,

14   transfer wire JPG.

15        Q    Okay.  And who -- well, what event happened to

16   that document on that day or that file, I should say?

17        A    According to the log, it was deleted.

18        Q    Okay.  And what user deleted it?

19        A    Don at Juravin dot com.

20        Q    Okay.  And that occurred on June 22nd, 2021,

21   correct?

22        A    Correct.

23        Q    Okay.  And is this the same file that you were

24   able to recover and that we looked at earlier in Exhibit

25   6, or is this a different TransferWise document?

1    A    I can't answer that question.  I'd have to look

2  at it.

3    Q    Well, you have to look at what, the deleted --

4  okay.

5    A    Yeah, I'd like to go back to --

6    Q    Okay.  Go back to Exhibit 6 then.

7    A    Okay.  It's in the red book?

8    Q    Yes.

9    A    It's most likely that document.

10    Q    Well, how did you get a document that was

11  deleted on June 22nd?

12    A    I believe this would have come from one of the

13  computers, which we made a forensic image.

14    Q    Okay.  So let's go back now and look at --

15  sorry.  I want you to go to, in the second book, Page 841

16  of 1291.

17            MS. JURAVIN: Which, Mr. Ryan, which page?

18            THE COURT: 841?

19            MS. JURAVIN: Thank you.

20            MR. RYAN: Yes, 841.

21            MS. JURAVIN: I don't have 841.  My last page is

22  900 -- 691.

23            MR. RYAN: You're not speaking in a microphone.

24  I don't know what you just said.

25            MR. TIMKO: She says her last page is 691.

78

1          THE COURT: You're looking at the very bottom
2    number?
3          MS. JURAVIN: No, I'm looking at the page
4    number.
5          MR. RYAN: I'm going by these numbers.
6          MS. JURAVIN: Oh, these numbers, okay, on the
7    bottom.
8          MR. RYAN: Yeah.
9          MS. JURAVIN: Thank you.
10          MR. RYAN: Just so you know, when you don't use
11   the microphone, I don't hear you.
12          MS. JURAVIN: Oh, okay.
13          MR. RYAN: I hear noise but I can't respond.
14          MS. JURAVIN: Sure.
15          THE COURT: All right.  841, correct?
16          MR. RYAN: 841.
17          MS. JURAVIN: Thank you.
18   BY MR. RYAN:
19       Q    And we go up to line 63786.
20       A    I am there.
21       Q    You're there?
22       A    Yes.
23       Q    And there's another file with the exact same
24   name, correct?
25       A    Correct.

1    Q    And that point on June 22nd he wasn't deleting

2 it, he was trashing it, correct?

3    A    That is correct.

4    Q    Okay.  Why would somebody both trash and delete

5 the same file?

6    A    In the realm of Google Drive, what you have are

7 two different areas, trash and deletion.  Trash can be a

8 temporary area, where you put something to the side in a

9 trash can and you're waiting to take it outside and throw

10 it on the curb so the trash company can pick it up.

11    Q    Okay.  And deletion?

12    A    Deletion would be the full erasure of that

13 particular document.

14    Q    Okay.  So this particular document, Mr. Juravin

15 took two steps in the same day.  First he trashed it and

16 later he deleted it.

17    A    That would be correct.

18    Q    Okay.

19         I'm trying to streamline something here, so I

20 can't move as fast.  If you could go to Page 855 of 1291.

21    A    I am there.

22    Q    Okay.  And I want you to look at line number

23 64861.

24    A    Yes.

25    Q    Okay.  And what is the name of that file?

1      A    Screenshot, numeric value of the screenshot

2  itself, and WhatsApp dot J-P-G, JPG.

3      Q    Okay.  And so what is WhatsApp?

4      A    That is a communication system, instant

5  messaging in nature.

6      Q    Okay.  And what was the event description for

7  that file and when did it happen and who did it, or what

8  user?

9      A    It says it occurred on 6/22/21 and deletion,

10  and it was deleted.

11     Q    Okay.  And were communications something that

12  you were supposed to search for within the Juravin

13  devices and cloud accounts?

14     A    Whatever was within the storage of those

15  accounts, yes.

16     Q    Okay.  And if we went through line by line, are

17  you -- do you know without doing that that there are

18  numerous instances where messages, whether they be text

19  or WhatsApp or some other program, Gmail, whatever, that

20  have been deleted?

21     A    Yes.  If we went through every single line

22  item, yes.

23     Q    Okay.  Are you able to determine whether or not

24  the actions in deleting these files, or do you have an

25  opinion whether or not these deletions and trashing of

1    files on June 22nd was an intentional or accidental act?

2        A    Based on the pattern that I see here, it looks

3    intentional to me.

4        Q    Okay.  Based on what just briefly what we've

5    discussed, without getting into more microscopic detail,

6    are you able to form an opinion as to whether or not Mr.

7    Juravin deleted material that would have been responsive

8    to the search that you were ordered to do?

9        A    Well, with the name of certain files that

10   you've brought to my attention today, I would say yes.

11       Q    Okay.  And you're not able -- well, we talked

12   about a TransferWise document, right?

13       A    Yes.

14       Q    You're not able to tell us whether or not there

15   were other transfers using that app before June 22nd?

16       A    That would be correct.

17           MR. RYAN: Judge, I'd like to move Exhibit

18   Number 6, the TransferWise document into evidence.

19           THE COURT: Mrs. Juravin, do you object?

20           MS. JURAVIN: No, I don't.

21           THE COURT: All right.  I'll admit Plaintiffs'

22   Exhibit Number 6.

23           MR. RYAN: I'd like to move Plaintiffs' Exhibit

24   Number 7 into evidence.

25           THE COURT: All right.  Which one is that?  It's

1    so big here.  Okay.  So that's the large --

2              MR. RYAN: That is --

3              THE COURT: -- spreadsheet.

4              MR. RYAN: Correct.  It is something that the

5    Google Drive generated on its own.  It keeps an activity

6    log of what's going on in the account.

7              THE COURT: All right.  Ms. Juravin, do you

8    object?

9              MS. JURAVIN: Yes.

10             THE COURT: Okay.

11             MS. JURAVIN: I would like to know --

12             THE COURT: Come up to the podium.

13             MS. JURAVIN: I would like to know when this

14   exhibit was created.  There's no date on that exhibit.

15   When was it created?

16             MR. RYAN: Do you want --

17             THE COURT: I mean, did --

18             MR. RYAN: Well, it --

19             THE COURT: -- you ask the witness?

20             MR. RYAN: I'm sorry.  Are you being specific as

21   to the PDF version that's been filed with the Court?

22             MS. JURAVIN: So it can be an electronic --

23             MR. RYAN: Or the --

24             MS. JURAVIN: The electronic version, when was

25   it created?

1        MR. RYAN: Okay.

2   BY MR. RYAN:

3        Q    So, Mr. Balot, did you -- did Online Security

4   create this record in PDF format or in a spreadsheet

5   format?

6        A    In a spreadsheet format.

7        Q    Okay.  And does this -- well, when did you make

8   that spreadsheet format?

9        A    It probably was within weeks of reviewing the

10  account.  I couldn't give you the exact date.

11       Q    Okay.  Do you know, would it have been done at

12  or about the time that Online Security got administrative

13  rights to the account?

14       A    That would be correct.

15       Q    Okay.  Do you know if this PDF version that we

16  had filed with the Court accurately reflects the same

17  information that was on your spreadsheet version?

18       A    Yes, it does.

19       Q    Okay.

20       MS. JURAVIN: I don't think it's possible to,

21  by looking just at the exhibit with so many pages, just

22  to say that it reflects the same.

23       THE COURT: Well, come on up to the podium.

24       So your objection then, Mrs. Juravin, is on

25  authenticity?

84

1          MS. JURAVIN: Yes.

2          THE COURT: Okay.  And just elaborate a little

3   bit for me.

4          MS. JURAVIN: This paper exhibit was printed

5   from some source, right, from some online source, a

6   spreadsheet that Mr. Balot created?  I would like to know

7   when was it created, the PDF.

8          Mr. Balot, may I ask if --

9          THE COURT: Well, you can some questions but

10  tell me -- I'm going to let you cross examine him in a

11  minute.  What I'm trying to decide is if I'm going to

12  admit this exhibit, and you're raising questions of

13  authenticity.  So why is it that you're concerned that

14  this is not -- this is not what it purports to be?

15         MS. JURAVIN: Because it doesn't have any date,

16  and it's not signed by anyone.

17         THE COURT: Okay.  All right.

18         Mr. Ryan, I would like for you to get a little

19  bit more information from Mr. Balot about how this was

20  created before I rule on authenticity.

21         MR. RYAN: Okay.

22  BY MR. RYAN:

23     Q    When Online Security was able to see the Google

24  Drive Activity Log on its computer monitors, while it's

25  still up in Mr. Juravin's account, were you one of the

85

1    people or the person that was looking at that activity

2    log in the Google Drive account?

3         A    I was one of two people who did.

4         Q    Okay.  And what is the procedure that Online

5    Security used to make a picture of the information in

6    that activity log?

7         A    Well, the process we would follow is we would

8    create a spreadsheet.  All right.  We would save the file

9    right directly from Google and then convert it into a

10   spreadsheet so that we have something that's reviewable,

11   rather than having to access the Google Drive account to

12   continue to look at it or review it.

13        Q    Okay.  So when you do that process or --

14   describe it a little bit better to me.  I mean, you say

15   you create a spreadsheet.  I'm familiar with Microsoft.

16   An Excel spreadsheet?

17        A    Correct.

18        Q    And then you import the information?

19        A    We would import the data directly from the

20   Google Drive account that we're looking at, the activity

21   log that we're looking at, into that spreadsheet.

22        Q    Okay.  And is there any information on the

23   Google Drive activity log that you don't include?

24        A    Well, we point it at a particular file.  And in

25   this case, it would be this file that you're looking at,

1    which now has been converted into a spreadsheet.

2         Q    Okay.  So what I'm talking about is if I were

3    looking at the Google Drive Activity Log in the cloud,

4    would there be an item name?

5              You have a column here called Item Name.  Is

6    that -- is that your description or is that the same

7    description given to it by Google Drive?

8         A    That would be Google Drive.

9         Q    Okay.  And where it says File Extension, is

10   that the same file or same column name that the Google

11   Drive account has?

12        A    That's correct.

13        Q    And where it says Event Description, is that

14   the same column name that the Google Drive account has?

15        A    Correct.

16        Q    And the User column, is that the same name for

17   that column that is in the Google Drive account?

18        A    It would be the same data, yes.

19        Q    And so are there -- every column on this report

20   is named identical to the column in the Google Drive

21   account?

22        A    That is correct.

23        Q    And every column that's on the Google Drive

24   account is reflected on this report?

25        A    Correct.

87

1    Q    So this is a complete copy of the information

2    in the Google Drive account just as if you were scanning

3    down it?

4    A    That's correct.

5    Q    Okay.  When you move it from the Google Drive

6    account into a spreadsheet, does that change the data in

7    any way?

8    A    It should not, no.

9    Q    Okay.  And did you take any steps to make sure

10   that the copy that Online Security made matched what was

11   showing in the Google Drive activity account?

12   A    Yes.  What we do is we look at the number of

13   items and compare that to make sure we got every single

14   item.

15   Q    Okay.  And if I go to the -- to the very first

16   page of this exhibit --

17   A    1291 you're talking about?

18   Q    No, that's last.

19   A    Okay.

20   Q    I'm going -- if you go to -- again, might have

21   a hole punch problem.  But go to Page 2 of 1291.

22   A    Okay.

23   Q    And then look at the page above it.

24   A    I've got to go to the other book.  Excuse me.

25   Okay.

88

1       Q    Okay.  If you go up to line number 1.

2       A    On Page 2 or the page before it?

3       Q    No.  The page above it.

4       A    Okay.  I'm there.

5       Q    And it shows that there was an item viewed on

6   July 24th, 2021 at 8:28 a.m.  Do you see that?

7       A    Yes, I do.

8       Q    Okay.  Would it be safe to assume that you were

9   able or Online Security was able to make this activity

10  log or take this picture of the Google Drive Activity Log

11  at or about -- well, shortly after 8:28 a.m. on July

12  24th?

13      A    Yes, I would.

14      Q    If there had been any activity after that date

15  and before you copied it, it would have been showing on

16  this report, correct?

17      A    That is correct.

18      Q    Okay.

19           THE COURT: All right.  Mrs. Juravin, anything

20  else?

21           MS. JURAVIN: No.

22           THE COURT: Okay.  I am going to -- I'm

23  satisfied that Plaintiff has met the requirements to

24  establish authenticity.  So with that, I will admit

25  Plaintiffs' Exhibit 7.

1          MR. RYAN: Okay.

2          THE COURT: And I don't think we talked about 8

3    yet, right?

4          MR. RYAN: No, we have not.

5          THE COURT: Okay.  And then Ms. -- Mrs. Juravin,

6    if you want to -- I'm just admitting it into evidence.

7    If you want to question, question him about it and the

8    process, I still get to decide what kind of weight I give

9    it, you can ask all those questions when you cross-

10   examine Mr. Balot.  Okay?

11         MS. JURAVIN: Okay.

12         THE COURT: All right.  Thank you.  How much

13   more do you have, Mr. Ryan?

14         MR. RYAN: I got to get through 8, and then I

15   think 9 and 10 should go very quickly.

16         THE COURT: Okay.

17         MR. RYAN: So 8 should not take nearly so long

18   either.

19         THE COURT: Okay.

20         MR. RYAN: So --

21         THE COURT: I only ask because it's about 12:30,

22   so soon we'll want to take a lunch break.

23         MR. RYAN: I apologize.

24         THE COURT: That clock is -- our power went out

25   over the weekend, so that clock's all messed up.

1      MR. RYAN: Okay.

2   BY MR. RYAN:

3      Q    Would you please turn to Exhibit Number 8?  No,

4   it's in the white book.

5      A    White Book.

6      Q    7 and 8 are both in the white book.  So let me

7   take this one back.

8      A    Okay.

9      Q    So go --

10     A    I got it.

11     Q    -- if you will, down to Exhibit 8.

12     A    Thank you.

13     Q    Okay.

14     A    Okay.  I am there.

15     Q    Do you recognize that document, sir?

16     A    Yes, I do.

17     Q    Okay.  What is it?

18     A    This is a file that was found on one of the

19  iMac computers that we forensically imaged.

20     Q    Okay.  And so these are -- and if I go to the

21  last page, is it accurate to say that you found 4,578 of

22  the files that were previously listed as deleted?

23     A    Correct.

24     Q    So out of the 80-plus thousand files that were

25  deleted, you searched elsewhere and you were only able to

1  find 4500 of them?

2     A    That would be correct.

3     Q    Okay.

4          MR. RYAN: I'd like to move Exhibit 8 into

5  evidence.

6          THE COURT: Any objection?  Mrs. Juravin?

7          MS. JURAVIN: I don't have objections.  Don, I

8  think Don would have it, but he's not here.

9          THE COURT: Okay.  I will admit Plaintiffs'

10 Exhibit Number 8.

11         MR. RYAN: Okay.

12 BY MR. RYAN:

13    Q    Would you please turn to Exhibit Number 9?

14    A    I'm there.

15    Q    Do you recognize that document?

16    A    Yes, I do.

17    Q    What is it?

18    A    This is a recap of the forensic imaging of the

19 devices that you had sent to us on this case.

20    Q    Okay.  And these are the devices that you

21 received and searched at Online Security?

22    A    That is correct.

23    Q    Did you participate in making this document?

24    A    I'm sorry.  Again?

25    Q    Did you participate in creating this document?

1     A     Yes, I did.

2     Q     So that's the inventory of devices that you

3  were provided to do your search?

4     A     That is correct.

5     Q     And beyond these devices, you also searched

6  cloud accounts, correct?

7     A     That is correct.

8     Q     All right.

9          MR. RYAN: I'd like to move Exhibit Number 9

10  into evidence.

11          THE COURT: Any objection?

12          MS. JURAVIN: I don't have any.

13          THE COURT: I'll admit Plaintiffs' Exhibit

14  Number 9.

15          MR. RYAN: Okay.

16  BY MR. RYAN:

17     Q     Would you please look at Exhibit Number 10,

18  please?

19     A     Yes.

20     Q     Do you recognize that document?

21     A     Yes, I do.

22     Q     Is that your report?

23     A     Yes, it is.

24     Q     Does it accurately reflect the information that

25  you relied on to reach your opinion?

93

1        A    Yes.

2        Q    And did you reach opinions with regards to

3    whether or not Mr. Juravin intentionally deleted,

4    trashed, or edited files that would have been responsive

5    to the Trustee's, or the search you did for the Trustee's

6    benefit?

7        A    Yes.

8        Q    And what was your opinion?

9        A    That there was intentional deletion of files.

10       Q    Okay.  That would have been responsive to the

11   search that you were running?

12       A    Correct.

13       Q    Okay.

14            MR. RYAN: I'd like to move Exhibit Number 10

15   into evidence.

16            THE COURT: Are you making any adjustment, Mr.

17   Ryan, or are you moving Number 10 into evidence?

18            MR. RYAN: I'm moving 10 into evidence, I

19   thought I asked.  I was waiting for an objection.

20            THE COURT: Well, I saw you reading something --

21            MR. RYAN: Yeah.  No, I --

22            THE COURT: -- so I didn't know if you needed to

23   do something else.  Okay.

24            MR. RYAN: I think -- I think I've covered it.

25            THE COURT: All right.  Mrs. Juravin.

94

1          MS. JURAVIN: I don't have any objections -

2    (indiscernible) I object to that one.

3          THE COURT: All right.  I'll admit Exhibit

4    Number 10.  Really it's a demonstrative exhibit.

5          As far as Mr. Balot's opinion testimony, it's

6    his opinion that he states here in court today, that is

7    admissible.  Technically, Exhibit Number 10 is hearsay,

8    even though he's a witness here.  I'll let him use it,

9    and for the Court's own reference, but it's the testimony

10   on the stand that's going to be the testimony that I

11   review.  Okay?  So it is admitted for that purpose.

12         MR. RYAN: And just to be clear, when I, if we

13   get to the point of writing written closing arguments, if

14   I want to point out specific details in the admitted

15   exhibit that I didn't go through item by item today, that

16   would be okay?

17         THE COURT: No, you need to -- if you want it in

18   the record, then you need to have Mr. Balot testify to

19   it.

20         MR. RYAN: So, okay.  Can we take a break and

21   I'll come back and go through a few more items or do you

22   want me to take the time?  Because if I'm going to go

23   item by item as to the will and trust and the other

24   things and each time it was edited as opposed to giving

25   you examples and then pointing them out in writing.

1          THE COURT: Well, I think, yeah, I think you're

2    misunderstanding.  Mr. Balot's report, which was prepared

3    under 2682, which is only six pages long, technically

4    this is really not an exhibit because it's hearsay.  Even

5    though he's here to testify, it is an out-of-court

6    statement.

7          THE COURT: Okay.

8          THE COURT: We typically allow these to come in

9    more as demonstrative aids so that he can use it on the

10   stand that you can use it.  But as far as what his

11   testimony is today, his opinion, it needs to be solicited

12   from him.

13         I'm not saying you can't refer to the exhibits,

14   but if you want his opinion, then you need to get it out

15   on the record today, anything other than what you've

16   already done.

17         MR. RYAN: All right.  Give me one second.

18         MR. TIMKO: Do you mind if we step outside for a

19   second just because --

20         THE COURT: Okay.

21         MR. TIMKO: -- it's hard to speak softly.

22         THE COURT: Yeah, it is.  It's hard to confirm.

23   So one second.

24         MR. RYAN: I can't hear him talking.  He wants

25   to say something.

1        THE COURT: Well, I just wonder how much would

2   you have in addition to this, whether we should go ahead

3   and take a lunch break.  Or when you come back, how much

4   more are you going to have, do you think?

5        MR. RYAN: I don't know until I hear what Mr.

6   Timko thinks.

7        THE COURT: But other than this, you're pretty

8   much done?

9        MR. RYAN: Correct.

10        THE COURT: Is that what you're saying?  Okay.

11   Go on out.  I'm just going to wait here.

12        MR. TIMKO: Okay.  We'll be super quick, Your

13   Honor.

14        THE COURT: And then you come on back in.

15        MR. TIMKO: Sorry.

16        (Thereupon, a brief pause in the proceedings,

17   after which the following was had.)

18        MR. RYAN: I do have a few more questions.  It

19   won't take long.

20        THE COURT: Okay.  Please proceed.

21   BY MR. RYAN:

22        Q    Mr. Balot, the analysis that you did in order

23   to reach your opinion, is it the type of analysis that is

24   ordinarily done when you're trying to determine whether

25   somebody intentionally or accidentally deleted materials?

1       A     It would fall under that guise.  Yes.

2       Q     Okay.  What kind of factors do people in your

3   industry look for when they're trying to make that

4   determination?

5       A     Well, there's a lot of different data points

6   within a hard drive and the data that you're reviewing

7   that will point to intentional deletion.  Meaning that if

8   all of it was done in a short period of time, as an

9   example.  If it was moved to certain areas of a hard

10  drive, we would find deleted information, or if you have

11  evidence of it somewhere else and you don't find it on

12  the place where it was originally created.

13      Q     Okay.  And you bring up an interesting point.

14  You just talked about when you're doing a search on a

15  hard drive.

16            When you are doing a search of the Google Drive

17  account, does that give you the same type of material

18  that you have when you're looking at a hard drive?

19      A     No, it will not.

20      Q     Okay.  And so is the activity log kind of an

21  alternative to looking under what's obvious on a hard

22  drive?

23      A     Yeah, you could look at it as looking at it

24  under the hood for argument sake.  Trying to determine,

25  you know, what happened, when it happened and, you know,

98

1    who made it happen.

2         Q    Okay.  But when you're looking at something in

3    a cloud account, you don't have that forensic analysis

4    ability.  You have to rely on the Google Drive account --

5         A    Not the --

6         Q    -- or the activity log, rather.

7         A    Not to the full degree you would from a hard

8    drive, correct.

9         Q    Okay.  So anybody in your industry trying to

10   determine whether or not files were intentionally or

11   unintentionally deleted in a Google Drive account would

12   have to do it by analyzing an activity log?

13        A    That would be correct.

14        Q    Okay.  And with regards to analyzing an

15   activity log, are file names an important factor?

16        A    They are a clue.  They're evidence, yes.

17        Q    Okay.  And why is that?  Why are file names

18   important?

19        A    Well, just as we saw earlier in the names of

20   some of these files, we were talking about a trust

21   document, we were talking about a transfer wire document.

22   Just the name alone leads you to what, in all likelihood,

23   the document was.

24        Q    Okay.

25        A    Go ahead.

99

1      Q    And the file extensions, such as WhatsApp,

2    that's important?

3      A    That could be important, yes.

4      Q    Okay.  And whether or not it says MSG or

5    something of that nature, those are important things?

6      A    Yes, it would be.

7      Q    And are those the types of things that people

8    in your industry routinely look for when they're trying

9    to determine what's happened with regards to a particular

10   account?

11     A    Yes.

12     Q    Okay.

13          THE COURT: All right.  Anything else?

14          MR. RYAN: No further questions.

15          THE COURT: All right.  Thank you.

16          Mrs. Juravin, you're going to have a chance.

17   Do you have cross examination questions for Mr. Balot?

18          MS. JURAVIN: Can we do it after the lunch

19   break?

20          THE COURT: Yes.

21          MS. JURAVIN: Excellent.

22          THE COURT: That's what I was going to propose.

23   Yes.  So it is now 12:51.  We will take a break.

24          MR. TIMKO: Thank you.

25          THE COURT: Are the parties looking for a short

1    lunch?  I need some time to go and have lunch.

2              MR. TIMKO: 2:00 o'clock?

3              THE COURT: Yeah, I was going to propose 2:00

4    o'clock.  Okay?  So let's come back at 2:00.  We'll go

5    for the full from 2:00 to 3:45 unless someone runs into a

6    problem and we'll conclude for the day.

7              MS. JURAVIN: I would like to ask if we can

8    finish by 3:45.  I have my kids waiting.  They will be

9    waiting for me to pick them up so.

10             THE COURT: We will finish at 3:45.

11             MS. JURAVIN: Thank you.

12             THE COURT: One way or the other.  Okay?   All

13   right.  Thank you.  So we'll recess until 2:00 p.m.

14             COURTROOM DEPUTY: All rise.

15             (Thereupon, a luncheon recess was taken, after

16   which the following proceedings were had.)

17             COURTROOM DEPUTY: All rise.

18             THE COURT: All right.  You may be seated.

19             Well, let me move around these enormous books

20   real quick.  All right.

21             So Mrs. Juravin has chosen not to join us this

22   afternoon.  She actually apparently stopped by the intake

23   desk of our clerk's office and informed the staff that

24   there was an emergency with her husband and that she was

25   not coming back.

1          So it appears to me that despite everything

2    I've done to try and give Mr. and Mrs. Juravin their day

3    in court, that they continue to try and delay the trial

4    and basically set up facts for their appeal --

5          MR. TIMKO: Right.

6          THE COURT: -- that that's kind of what they're

7    banking on.  So with that in mind, let's talk about how

8    we're going to go forward, considering you now no longer

9    have an opponent today, which changes things a little bit

10   from what I talked about this morning.

11         MR. TIMKO: Right.

12         THE COURT: So let me look at my list here.  Is

13   everything in evidence?

14         MR. TIMKO: Not everything.

15         THE COURT: There was something we were

16   reserving on.

17         MR. TIMKO: Yeah.  There was some relevance

18   objections.  Hopefully my list is completely accurate.

19   Hopefully Aimee will check me.

20         THE COURT: Yeah, I think that's all that's

21   left, right, is really relevance?

22         MR. TIMKO: Well, relevance and -- oh, we dealt

23   with the attorney-client privilege.  So, yeah, it should

24   just be relevance.

25         THE COURT: Okay.  So anything as far as

102

1  relevance, I will overrule that objection.  This Court

2  will take it into evidence and determine what appropriate

3  weight to give it as far as its relevance to the issues

4  at hand.

5           MR. TIMKO: Should we go through the numbers

6  just so we have it all?

7           THE COURT: Yeah.  So I'll show you, I'll tell

8  you what I have starting at --

9           MR. TIMKO: I think we --

10          THE COURT: Mine is starting at Exhibit Number

11 35.

12          MR. TIMKO: Yes.

13          THE COURT: Okay.

14          MR. TIMKO: So 35.

15          THE COURT: 35, 36, 37.

16          MR. TIMKO: Right.

17          THE COURT: 39.

18          MR. TIMKO: 40.

19          THE COURT: 40, and then 42.

20          MR. TIMKO: Through 46.

21          THE COURT: Through 46.  48?

22          MR. TIMKO: Oh, actually --

23          THE COURT: Oh?

24          MR. TIMKO: -- there may have been more, 48 may

25 have had more objections.  I'm sorry.  To be fair, there

1    may have been more objections to that.  Sorry about that,

2    Your Honor.  I put that folder to the side because I

3    thought we were done with that.

4            THE COURT: Oh, actually, I have that in front

5    of me.  Let me look at it.

6            MR. RYAN: I think it was just relevance.

7            MR. TIMKO: Well, I just, I mean --

8            THE COURT: 48 was authentication, not signed,

9    not certified, no foundation, hearsay, and there's a

10   reason to doubt the authenticity of the material.

11           MR. TIMKO: Yeah.

12           THE COURT: So let's just put a pin in that for

13   a second.

14           MR. TIMKO: Okay.

15           THE COURT: And we'll talk about the rest of it.

16   And then I had 63 that's not in, and 68 and 72.

17           MR. TIMKO: Okay.  I had 73 as well.

18           THE COURT: 63 is relevance.  68 should have

19   come in because there's no objection.  60 -- 72 is

20   relevance.  76 --

21           MR. TIMKO: What about 73?  I don't have that

22   checked off.  I just -- again, I might've just missed the

23   check.

24           THE COURT: Well, I had a check in mine --

25           MR. TIMKO: All right.  Well --

1          THE COURT: -- because there's no objection.

2          MR. TIMKO: Well, if you have a check, then I

3    should have had a check.

4          THE COURT: That's all right.

5          MR. TIMKO: All right.  76?

6          THE COURT: 76 is attorney-client privilege,

7    irrelevant.

8          MR. TIMKO: Okay.

9          THE COURT: So we'll --

10          MR. TIMKO: So we took -- we now took care of

11   that.

12          THE COURT: Irrelevance on 78.  79 attorney-

13   client privilege, relevance.

14          MR. TIMKO: Okay.

15          THE COURT: And then 80 was nothing.

16          MR. TIMKO: Okay.  Yeah, I had 80 checked.

17          THE COURT: Okay.

18          MR. TIMKO: And then 82 through 85.

19          THE COURT: Irrelevance -- relevance.  Okay.

20          MR. TIMKO: Okay.  So --

21          THE COURT: So I will admit those.  And I guess

22   the only thing that I wanted to circle back on then was

23   this 48.  It's part of it is going to depend on how we

24   proceed.

25          MR. TIMKO: 48 is a spreadsheet.

1          THE COURT: Okay.

2          MR. TIMKO: That was the subject matter of the

3     summary judgment and all of that, in the testimony Medina

4     prepared to show basically how much money they sent to

5     UMGI and that, if that rings a bell, but that's -- that's

6     what that is.

7          THE COURT: Okay.

8          MR. TIMKO: So I think, I mean, we can go back

9     to the default issue and then us proving up on default.

10    There are some things that we would have obtained

11    testimony at trial that we don't have depositions for.

12         THE COURT: So let me then step back for a

13    second.

14         MR. TIMKO: Okay.

15         THE COURT: Would the Chapter -- do you want to

16    go over -- not Chapter 11 -- the Eleventh Circuit cases

17    you have, is the default a sanction for not appearing at

18    trial, or is it really just a default judgment for not

19    defending yourself?

20         MR. TIMKO: Oh, it's a -- so that court -- that

21    court actually did not grant default, but the Eleventh

22    Circuit specifically said not showing up at trial is a

23    basis for default.  I would assume that that would have

24    been a sanction.

25         THE COURT: Okay.

1          MR. TIMKO: Just the way it was posed in the

2    opinion, to be fair.  And then obviously you have the

3    right to default for sanctionable conduct.

4          THE COURT: Right.

5          MR. TIMKO: So --

6          THE COURT: So then let's go through.  Tell me

7    what evidence you were planning to present over these

8    days that you don't feel is already encompassed in the

9    documents or in deposition transcripts that I can read.

10         MR. TIMKO: Okay.  That's fair.

11         Well, so we have all the transfers in the bank

12   records.  We have -- I'm sorry, I'm just going through

13   the checklist in my head.

14         We don't have Mr. Kennedy's testimony, really,

15   with respect to his difficulties in administering the

16   case, his difficulties with dealing with the Juravins.

17   You know, they're not showing up at the 341 Meetings.

18   His suspicion.  All, all the things with respect to

19   administration, we don't have that.

20         THE COURT: And that really goes -- does that

21   only go to the motion for sanctions, or is it part of

22   setting aside, if you weren't requesting sanctions, is it

23   part of the main adversary proceedings themselves?

24         MR. TIMKO: I think it's part of the main

25   adversary proceedings --

1          THE COURT: Okay.

2          MR. TIMKO: -- themselves through the --

3          MR. RYAN: Totality.

4          MR. TIMKO: -- totality of the circumstances

5     with respect to fraud, which is why I said earlier this

6     morning we have Mr. Balot and Mr. Kennedy to testify.

7          THE COURT: Okay.

8          MR. TIMKO: But Mr. Kennedy is --

9          MR. RYAN: And he had a -- (inaudible).

10         MR. TIMKO: -- is, I mean, he's having issues.

11    He -- I don't know to share more on this, but he's having

12    difficulty even turning pages.

13         THE COURT: Okay.

14         MR. TIMKO: So just to give you a --

15         THE COURT: Understood.

16         MR. TIMKO: So a declaration on that would

17    probably be helpful.  I can't think -- I'm sure --

18         MR. RYAN: Some of this is from the docket, too,

19    though.

20         MR. TIMKO: Some of it would be from the docket,

21    too.  So we might be able to reduce that.

22         I'm sure there's one or two things out there

23    that I can't think off the exact top of my head.  There

24    was a couple of questions I wanted to ask Mr. Juravin.

25    I --

1    THE COURT: I understand.

2    MR. TIMKO: I assume that I was not going to be

3  able to question him.

4    There was a couple of things that I wanted to

5  ask Mrs. Juravin about but I think her deposition

6  testimony will take care of that, and obviously I can't

7  get a declaration of her.  And then Mr. Green would

8  probably have to submit a declaration as well, just with

9  respect to --

10    MR. RYAN: The destroyed vehicles.

11    MR. TIMKO: The destroyed vehicles.

12    MR. RYAN: We have pictures and --

13    MR. TIMKO: Yeah, the destroyed vehicles, and I

14  can resubmit, I guess, the Kelleher Declaration with

15  respect to not being aware of ahead of time.  I think

16  that covers all of the highlights.

17    The issue, the other issue we may have is just

18  -- I think you wanted a 20-page closing, which may be a

19  little bit more to stick to that page limit with respect

20  to just because there's so much, because a lot of it

21  you're going to hear, so I may not necessarily put it in

22  the closing but I'll note that you've heard it.  You know

23  what I mean?

24    THE COURT: Right.

25    MR. TIMKO: So there might be some of those

1    issues as well.  But, I mean, honestly, I mean, you've

2    seen the motion for summary judgment.  We're just kind of

3    adding to that.  And then you also, depending on, you

4    know, we were going to ask for negative inference with

5    respect to the ESI.  I mean, you've heard that -- I

6    forget the exact number -- 80,000 documents or whatever

7    have been -- were deleted between the break order and the

8    date of the recovery.  And then -- oh, and then we would

9    also request to have some of the -- we have somebody

10   compiling this now, but some of the documents that

11   Juravin filed also added into the record.  We could give

12   you a chart on that in a filing.

13            THE COURT: You know, I've taken judicial notice

14   of my entire docket today.  I made that note.  We can add

15   it to the pro memo.  Usually judicial notice means, you

16   know, it's just a notice that --

17            MR. TIMKO: Yeah.

18            THE COURT: -- someone filed something.  But if

19   it's a pleading filed by Mr. Juravin, then it's also an

20   admission as well.

21            MR. TIMKO: Right.

22            THE COURT: So anything in there I think is fair

23   game.

24            MR. TIMKO: Okay.

25            THE COURT: And all this stuff.  The majority of

1    it, I'm guessing, was all filed after your exhibits were

2    due.  That's my guess.

3              MR. TIMKO: A majority of it was.  And,

4    specifically, we're thinking about -- well, yeah, some of

5    it was filed on that Monday.  Some of it -- I think a

6    majority was, though, filed on the 20th, which was after.

7    And in there there's a --

8              THE COURT: Oh, you mean his exhibits.

9              MR. TIMKO: His exhibits.

10             THE COURT: Oh, okay.  Okay.  I'm sorry.  I

11   thought you --

12             MR. TIMKO: But there are some bank records in

13   there that we didn't have, which I don't know why we

14   didn't have them since they've been asked for.  And a

15   couple --

16             MR. RYAN: Declaration.

17             MR. TIMKO: There's a Declaration of Paul

18   Simonson who -- it was filed with respect to the break

19   order and he filed it within his exhibits and there's

20   some helpful admissions in that as well of Mr. Juravin.

21   So I would like to have that put into evidence for that

22   reason.  And, you know, my plan was to ask him about that

23   Declaration.  But I think we have -- I think we've got 99

24   point -- 99 point -- 99 percent of everything in.  I

25   guess, if there's something that we trip over when we

1  prepare it, if we'd be allowed to submit a -- you know,

2  because we're submitting declarations anyway, you know,

3  maybe add some of those facts to the declaration.  I can

4  even write a footnote that this --

5              THE COURT: Okay.

6              MR. TIMKO: If that really matters to you.

7              THE COURT: Well, I'm just trying to --

8              MR. TIMKO: But I think we can address

9  everything.

10             THE COURT: My preference would be to avoid

11  declarations and basically have this be an unopposed

12  trial.  But now that we actually have no one --

13             MR. TIMKO: Yeah.

14             THE COURT: -- in the defense seat, and I don't

15  want to prolong this and cause people to incur additional

16  costs they don't need to, I'm trying to figure out the

17  best way to conclude it, get all the evidence in, the

18  testimony we need, so that I can write an opinion

19  realizing that this most likely is going to go up on

20  appeal.  How far it goes is always the question.  But

21  making sure that we, you know, dot our I's and cross our

22  T's because, like I said, I've done everything I think I

23  can to, A, move the case forward while still giving Mr.

24  Juravin a chance to defend himself.

25             MR. TIMKO: Well, if we -- if we do the default,

1    as I understand it, and I did some very quick research on

2    this issue when all of this started going crazy, if we go

3    the default route, I believe that they're required to

4    file a motion for reconsideration to contest the default.

5    I think that Rule 55(c).  And then they're only able to

6    -- and if they file that, under Eleventh Circuit law they

7    have to prove that they have a meritorious defense in

8    order to reach reconsideration.  And then if you rule

9    against them, then they have the right to appeal.  So let

10   me see if I can --

11             THE COURT:  Well, I --

12             MR. RYAN:  But the scope of that appeal is

13   narrower.

14             MR. TIMKO:  Yes.

15             THE COURT:  Yeah, I'd like to -- do you have

16   copies of the cases that you're looking at?

17             MR. TIMKO:  Yeah.  I'm digging through right

18   now, Your Honor.

19             MR. RYAN:  And, Judge, if, if the case had been

20   tried, by the close of the evidence, I would have been

21   seeking leave to amend to conform to the evidence because

22   I think what it would show with regards to the 950,000

23   that went from NVLC to UMGI is that UMGI and Dan -- I'm

24   sorry, Don and Anna were all working together, and they

25   really should have joint and several liability on that

1    money.

2              MR. TIMKO: So I'm not -- so if I may approach.

3              THE COURT: Yes, go ahead.

4              MR. TIMKO: So this is the -- this is the

5    Eleventh Circuit opinion, and I highlighted the language

6    here where it says failure to appear as a basis for

7    default.  But I do think the Eleventh Circuit was

8    thinking of it as a sanction in that.

9              THE COURT: Okay.

10             MR. TIMKO: And then this Liberty Mutual

11   (indiscernible) Force case, I just -- I don't have

12   anything highlighted in here, but it was helpful because

13   it kind of takes you through the rulings in the Eleventh

14   Circuit, what you do when.  Can you default somebody

15   that's actually appeared?  Does it have to be a clerk's

16   default?

17             THE COURT: Um-hum.

18             MR. TIMKO: It like kind of takes you through

19   the procedures of that.

20             And then rule 55(c), see if I can grab that

21   real quick.  Yeah, I was really curious as to how we were

22   going to deal with this today.  All right.  55(c), 55(c)

23   just says the court may set aside entry of default for

24   good cause and it may set aside a final default judgment

25   under Rule 60(b).

1          THE COURT: Um-hum.

2          MR. TIMKO: So I don't know if that cuts off

3    their right to do it.  Well, I think it does.  If you --

4    I think if you do a default judgment, it's saying that

5    you may set it aside under 60(b).  I don't think -- I

6    guess the question is whether or not the case law allows

7    for an actual appeal and how that is read.

8          THE COURT: Well, right.  And regardless of what

9    it allows for, I mean that's really going to be for the

10   district court to decide because I have no doubt that the

11   notice will be filed.

12         MR. TIMKO: Right.

13         THE COURT: And that that's how he'll proceed.

14   And then they'll determine what the proper method is.

15         I guess what, you know, for a default judgment,

16   I still have to satisfy myself that the Plaintiff is

17   entitled to the relief that the Plaintiff seeks.

18         MR. TIMKO: Right.

19         THE COURT: Which means looking at some

20   evidence.  Doesn't mean -- usually in the default

21   context, going through a full trial, right --

22         MR. TIMKO: Right.

23         THE COURT: -- we were here and so I said, well,

24   what's, you know, what's the harm and actually will help

25   us to do that.  Now that we don't have a defendant, I'm

1    inclined to go down the default route, but I still want

2    to make sure that we have the --

3              MR. TIMKO: Right.

4              THE COURT: -- documents, the evidence, the

5    record, so that I can make a ruling based on the merits.

6    And, you know, it looks like a default, but to me it's

7    really a judgment.  It's really a judgment on the merits

8    at this point.

9              MR. RYAN: I'm confident that with the

10   documentary evidence that's in there and some deposition

11   testimony that's of record that we can establish every

12   element of the relief that the Trustee --

13             THE COURT: Okay.

14             MR. RYAN: -- and the POA are seeking, you know,

15   as to the financial liability and revocation of the

16   discharge.

17             THE COURT: Um-hum.

18             MR. TIMKO: And it was very helpful to have Mr.

19   Balot testify today, I thought.

20             THE COURT: Yeah.

21             MR. RYAN: Yeah.

22             THE COURT: And with respect to the Trustee's

23   case, Mr. Ryan, my difficulty in that one has always been

24   that we had MCO Complaints, we had the Juravin

25   Complaints, they overlapped a lot, and so it wasn't clear

1   to me.  One test I always use when I'm considering

2   summary judgment or default judgment is, do I even know

3   what I would be giving you if I said, yes, I'm going to

4   give you a judgment?  I'm not really sure what you're

5   seeking, and I don't have like a full list, and perhaps

6   it's in the exhibit book that I haven't looked at, of all

7   the transfers that you're attempting to avoid and against

8   who.

9            MR. RYAN: Yes.  There are, in the documentary

10  evidence, we have both the bank records identifying each

11  transfer, and we have a summation --

12            THE COURT: Okay.

13            MR. RYAN: -- with regards to those transfers

14  and, you know, so there's different parts as to different

15  Defendants.

16            THE COURT: Um-hum.

17            MR. RYAN: But so, for instance, the original

18  Juravin Incorporated, we have a claim against it.  It's

19  defaulted long ago.  We just had to prove up the amounts,

20  and we have a list of those amounts.

21            We have a claim against the new Juravin

22  Incorporated, and we've alleged that it's just a

23  successor entity to the original Juravin Incorporated,

24  and we are seeking to have both those entities, and

25  because the second entity was formed by Anna Juravin by

1    taking assets from the estate, including the name of the

2    first entity, that she's involved in that claim as well.

3            Then there's a claim against Anna Juravin

4    individually for money that she received from MCO, and

5    she knew exactly the fraud that was going on between all

6    of the Juravin entities, and so she's responsible for

7    that transfer.  There can't be any normal course of

8    business.

9            Then there's some money that she received out

10   of UMGI that was successor transferee of the monies that

11   went from Juravin to NVLC, back to UMGI, and out to Don

12   and Anna.  And that's where I was getting to the point

13   that really our claim against UMGI, if I amended the

14   pleadings to conform to the evidence, it would be against

15   all three of them jointly and severally.  And that's

16   really the only monetary judgment that I think has

17   potential value, because Juravin Inc. and JINC aren't

18   going to be something that we get.  Well, I mean, it's a

19   judgment but --

20           THE COURT: Um-hum.

21           MR. RYAN: -- I don't know how valuable it is.

22   And a judgment against Anna individually as opposed to

23   something that they're both responsible for might get

24   them to do something with the money that we just never

25   found.

1          THE COURT: Okay.

2          MR. RYAN: I had to create a cheat sheet after

3     everything collapsed what was left, you know, because

4     obviously transfers from MCO to Juravin and back and

5     forth are no longer viable.

6          THE COURT: Yeah.  I'm just trying to think for

7     purposes of going forward whether it's better to --

8     whether there's going to be any difference at the end of

9     the day, other than the procedural ones that you've

10    described, to have a judgment on the merits or really a

11    default judgment.  Whether, you know, like I said, for

12    the Trustee's --

13         MR. RYAN: Right.

14         THE COURT: -- purposes whether it makes a

15    difference.

16         For your purposes, Mr. Timko, I doubt it makes

17    any difference, right, whether it's -- whether I call it

18    a default judgment or whether I call it a judgment after

19    as a result of trial.  It's not a -- it's not a JNOV

20    because there is no verdict here.

21         MR. TIMKO: Right.

22         THE COURT: But essentially the same, the same

23    kind of thing, right?

24         MR. RYAN: I think the important part is that

25    regardless of how you get there, there should probably be

1    some findings, stated findings, you know, besides they

2    just didn't show up.

3              THE COURT: Okay.

4              MR. RYAN: With all the evidence that's in.

5              THE COURT: It's such a procedural conundrum,

6    because I can't say I've come across this or read any

7    kind of opinions that dealt with it in this way, and I

8    hate for us to just go and put, okay, well, here's the

9    default, and we've done all this work that would allow me

10   to make some findings.  I would love to make findings.

11             MR. TIMKO: Do we want to do a renewed, renewed

12   motion for summary judgment?  I'll address some

13   affirmative defenses.

14             THE COURT: Well --

15             MR. RYAN: I think that --

16             THE COURT: I think -- yeah.

17             MR. RYAN: Yeah.  Every time I've come across a

18   situation that I've never had to deal with before,

19   something peculiar always is existence in every case, but

20   none that I've experienced like this where it's just, you

21   know, one day after another of something I've never seen.

22             But, with regards to the procedural conundrum,

23   maybe we could submit some sort of memorandum of law and,

24   you know, take -- and give it some hard thought.  Because

25   I appreciate what you just said, and I would prefer that

1    we get it right, you know.  I don't want to be in a

2    situation looking back six months from now where I've --

3              THE COURT:  Okay.  Let me give you this choice.

4    I'll conclude the -- well, I will suspend the trial for

5    today.  I'm going to go back and look at some of these

6    cases, and I'll issue an order that kind of just lays out

7    how I want you to proceed.

8              MR. TIMKO:  Okay.

9              THE COURT:  As far as declarations, as far as

10   closing arguments.  If it turns out that my conclusion is

11   the best course of action is just to enter default

12   judgment, then I may have you submit proposed documents

13   to that effect.  Because there's really -- it's not

14   really appropriate for me to make findings on a default

15   judgment, I don't think, or even really on a summary

16   judgment.  I mean, I can determine what's undisputed --

17             MR. TIMKO:  Right.

18             THE COURT:  -- maybe I can say it's undisputed

19   because they haven't submitted any evidence.  But if it's

20   something more than that, then I may have you submit a

21   closing argument.  But I still have the issue, Mr. Ryan,

22   that I do need kind of it's spelled out what it is that

23   you're asking for.  And we'll go from there.  I'll spell

24   it all out.

25             The other option is, like I said, I was going

1   to give you the option, the other option is you put Mr.

2   Kennedy on today if you wanted to and we complete the

3   trial with them not being here if you feel like that's a

4   better use of your time.  I'm going to give you that

5   option.  I'm kind of feeling that you don't think so.

6   Especially with Mr. Kennedy's situation, that you would

7   prefer not to try to put him on the stand.

8          MR. RYAN: Yeah.  And having two witnesses come

9   up from --

10          THE COURT: Yeah.

11          MR. RYAN: -- Miami tomorrow --

12          THE COURT: Right.

13          MR. RYAN: -- to put some facts on the table, if

14   it's going to end up in a default anyway, it's just --

15          THE COURT: Right.

16          MR. RYAN: -- it's not fair to them either.

17          THE COURT: Well, if we did all that, it

18   wouldn't be.  I would just go ahead and make a ruling.

19   I'd have you give me a closing argument.  I'd just make a

20   ruling based on the evidence uncontroverted.  Basically,

21   I'd make my findings, and it would be a judgment after

22   trial at that point.  So that's -- that's the reason I

23   give you that option, if you wanted to do it that way.

24          It may be that I could still fashion a way to

25   get that testimony in, but once we leave here today

1  anything that you file on the record you're going to have

2  Mr. Juravin is also going to start filing things on the

3  record -- on the docket, I mean.

4          MR. TIMKO: We did do depo designations and they

5  were not --

6          THE COURT: You did.

7          MR. TIMKO: They were not disputed.

8          THE COURT: Um-hum.

9          MR. TIMKO: So the testimony is there.

10          THE COURT: Right.  You have the -- you have the

11  depo testimony.  Was Mr. Kennedy ever deposed?  Did that

12  ever actually happen?

13          MR. TIMKO: No, he wasn't.  That was -- that was

14  the one we --

15          THE COURT: Yeah.

16          MR. TIMKO: So you set the time by the 23rd,

17  and Mr. Ryan provided times that he was available and Mr.

18  Juravin -- well, he filed a recent motion on his due

19  process rights, so that's his story that --

20          THE COURT: Right.  Right.

21          MR. TIMKO: But he decided to not go forward.

22  We'll just leave it at that.

23          MR. RYAN: I did say in the first line of one of

24  my responses that, you know, it's clear to everybody

25  involved here that you are jockeying for another

1   appellate argument.  We've given you times.  These are

2   when we can do it, we're glad to do it.

3            THE COURT: Um-hum.

4            MR. RYAN: And his response to that was, no,

5   it's got to start 9:00 a.m. on this particular date, and

6   since you won't agree to that today, we're not going to

7   have any deposition and I'll take it up on appeal.  So

8   it's the same theme that we've seen with everything else

9   he's ever done.

10           THE COURT: Okay.  So if you don't want to, you

11  know, have witnesses come up tomorrow, which I completely

12  understand and I don't disagree with, then let me go back

13  and see if the best course of action is for me to just go

14  down the default route or if there's something in between

15  that I can have you do so that I would be in a position

16  to go ahead and make findings and issue a judgment on the

17  merits.  Okay.

18           MR. RYAN: Okay.  Yeah, I can tell you I agree

19  with everything that you're trying to do.  I'd love to

20  have some findings because I think what's going on here

21  is a horrible turn of events.

22           THE COURT: Um-hum.

23           MR. RYAN: It's an abuse of the system.

24           THE COURT: You've got Mr. Arora's deposition.

25           MR. RYAN: I do.

1           THE COURT: And who -- Mr. Greene, was that the

2     other one?

3           MR. TIMKO: Well, there was Mr. Arora, and

4     then --

5           MR. RYAN: Mr. Medina.

6           MR. TIMKO: We got Mr. Medina who's the

7     accountant for NVLC, who's the one that put that

8     spreadsheet together.

9           THE COURT: Oh, yes.  Yes.

10          MR. TIMKO: And reviewed everything.

11          THE COURT: Um-hum.

12          MR. TIMKO: We don't -- well, actually, Mr.

13    Juravin took Mr. Greene's deposition but not on anything

14    that was generally relevant to this case.  So I might

15    need a declaration from him.

16          THE COURT: Okay.

17          MR. TIMKO: And we need a declaration from the

18    Trustee.

19          MR. RYAN: We also took the depositions of Don

20    and Anna where we --

21          MR. TIMKO: Yeah, we have Don and Anna.

22          MR. RYAN: -- talked about the destroyed

23    vehicles, where we talked about the overstated claim for

24    Mr. Zuckerman, the overstated claim for Mr. Arora.  I

25    mean, it's just --

1          MR. TIMKO: The problems with those depositions

2     is that they're largely nonresponsive.  That's one of the

3     difficulties.  And one reason I would have liked to have

4     been able to put the Juravins on the stand is because

5     maybe we would have gotten some answers to -- because,

6     you know, I'll give you an example.

7          THE COURT: Right.

8          MR. TIMKO: The Israel issue.  So you had

9     already continued the trial, and he said that he was

10    leaving for Israel on November 9th, and he agreed to take

11    his deposition on the 10th.  So I asked a very

12    straightforward question, are you going to Israel?  And

13    the response was unbelievable.  I mean, it was just --

14          THE COURT: Um-hum.

15          MR. TIMKO: That's irrelevant, I'm not talking

16    about that.  And it was right after I asked him if he

17    would ever -- if he was honest with the Court, and he

18    always said he was.  And so then I went into those

19    questions, and I can read you the testimony.  I was going

20    to read it to you before.  It got to the point where he

21    just decided not to answer any further questions, said it

22    was irrelevant and, I mean, it could have been very easy

23    to just say, I don't have a plane ticket yet but I'm

24    planning on going on the 11th, you know.  Like it was --

25    but that's, I mean, and you asked that we file our

126

1    deposition transcript, the deposition transcripts because

2    you entered that order of motion to compel him to go.

3              THE COURT: Um-hum.

4              MR. TIMKO: I know you -- I know you have a busy

5    docket, so that's probably not on your list of things to

6    do, but if you go through there and read ten pages you'll

7    get a -- you'll get an idea of how that was.  He wouldn't

8    answer any questions about his companies because he

9    stated once they were sold he, quote, psychologically

10   departed, unquote, from those companies and refused to

11   answer any questions.

12             So one of the things that we're hamstrung a

13   little bit by is, and this is I guess in the other

14   sanctions motion, is that they just wouldn't answer

15   questions.  Anna was a little better.  I mean, she took

16   the Fifth a couple of times.  She did answer some

17   questions, but she was also somewhat difficult.  But Mr.

18   Juravin was -- I mean, it got to the point where filing

19   another motion to compel just didn't make sense.  It was

20   just like let's get him to trial and go.

21             I did suspect that they wouldn't testify

22   because --

23             THE COURT: Um-hum.

24             MR. TIMKO: -- he's mentioned many times that

25   he's afraid of being incarcerated.  So I wouldn't expect

1    him to actually show up and take the stand but...

2            MR. RYAN: I don't know that it's here or there

3    with regards to any particular finding, but I want to

4    tell you some background to something that happened when

5    we were in front of you the other -- before he was

6    leaving for Israel, I think it was.

7            We ended up getting his deposition, and we

8    asked him if he was using a ghostwriter, and he refused

9    to answer.  And when he got in here and we brought that

10   to your attention, he learned that there were going to be

11   some consequences for that.  And he said, oh, no, no, I'm

12   not using a ghostwriter, and now he's tried to make it

13   look like everything is Chat, GPT, whatever.

14           THE COURT: Right.

15           MR. RYAN: But the writing styles change.  Well,

16   the background to that was that after doing the entire

17   FTC case in English, he came in front of Judge Jennemann

18   for their discharge hearing and insisted he had to have

19   an interpreter, and she cut through the chase on that

20   about halfway through.   But as the Trustee doesn't have

21   the same weight as a judge, we had very difficult times.

22   I mean, it took two hours to get him to answer questions

23   with regards to his name.

24           THE COURT: Um-hum.

25           MR. RYAN: And he would say -- he would listen

1  to the question in Hebrew, he would be listening to the

2  answer in English, and he would start a Hebrew

3  conversation with the interpreter halfway through

4  correcting, and just many, many arguments.

5          So we had this thing going on.  Anna was doing

6  the same thing.  She needed a Polish interpreter.  But we

7  found a pleading in Massachusetts that he filed pro se

8  where he writes right in Paragraph 7, I read and

9  understand English well.

10         THE COURT: Um-hum.

11         MR. RYAN: And we questioned him about that.

12 And in his deposition he says, oh, I didn't read that

13 before I filed it.  I didn't write it.  Some retired

14 attorney named Susan, I don't know her last name, wrote

15 that for me.  Well, Susan Lachman is in the ESI.  She is

16 a member of the Massachusetts Bar, but she lives in

17 Florida, and she's not a member of the Florida Bar.  And

18 so he's got this long history of using ghostwriters and,

19 you know, whether or not she's been assisting him here or

20 not, I don't know, but when he was here and said, no, I

21 don't use a ghostwriter, after he learned that that would

22 be upsetting to you, I just don't give it any credibility

23 at all.

24         THE COURT: Okay.

25         MR. RYAN: It's just who he is.

129

1              THE COURT: Okay.

2              MR. TIMKO: There's a -- there's a pattern of --

3   and we're taking up too much of your time, but there's a

4   pattern of being able to say things in court that are not

5   under oath and being asked a very similar question in

6   deposition and refusing to answer the question because he

7   is under oath.

8              THE COURT: Um-hum.

9              MR. TIMKO: Like that's something --

10             THE COURT: Right.

11             MR. TIMKO: So while we have taken their

12  depositions, I can't say that we got answers to.  The

13  answers we got were pretty good but --

14             THE COURT: Yeah.

15             MR. TIMKO: -- we didn't get our questions

16  answered.  That was -- that was one major advantage to

17  trial would have been to actually ask them questions.

18  This is a case where I can honestly say that the -- I

19  guess we do have a sanctions motion on file, but it did

20  hamstring prosecution.

21             MR. RYAN: I don't think he would answered them

22  at trial either.

23             MR. TIMKO: Well --

24             THE COURT: Well, let me, like I said, let me do

25  this.  Let me go back and think about it, and what I will

1    do is issue instructions on how we're going to proceed

2    and what I want you to submit.  And just keep in mind

3    that in doing this, right, and taking it out of the

4    courtroom today and kind of putting it on the docket

5    then, I expect to get a slew of additional filings from

6    Mr. Juravin, and we'll just address that.  It bogs down

7    my court having to address everything but that's where we

8    are.  And let me give these back to you, I've written

9    down the citations.  I'm going to look at that.  But I

10   just want to figure out the best way to proceed given the

11   unusual procedural posture we find ourselves in.  Okay?

12            MR. TIMKO: There was --

13            MR. RYAN: One more question.

14            THE COURT: Sure.

15            MR. RYAN: You said that rightfully the other

16   day that you were quite tired with the way this case was

17   going, and a lot of it, you know, it's us responding.

18            THE COURT: Um-hum.

19            MR. RYAN: And we anticipate this next wave of

20   things going in the docket and it would be my normal

21   practice to respond, but I think at this point --

22            THE COURT: You don't -- you don't need to

23   respond.  I will notify you if I want a response --

24            MR. TIMKO: That was going to be what I was

25   going to say.

1          THE COURT: -- on something.  But sometimes I,

2     you know, you've responded.  As we were preparing for

3     trial, I tried to and I did read everything that he filed

4     and make sure that I was addressing it, trying to give

5     him his day in court to the best of my ability.  But I

6     will -- I will address everything.  It just sometimes

7     takes a day or two for us to do that.

8          So make sure -- we have things called one-click

9     orders, which are those kind of formal orders you see,

10    those are easy because it's almost one click, it's

11    actually two or three clicks, but pretty close.  But then

12    you see the other ones that are a little more formal,

13    those we have to actually draft.

14         So I will -- and I try to enter the appropriate

15    order, so I make sure that the reason I'm doing what I do

16    is clear, especially considering that Mr. Juravin does

17    like to appeal my rulings.  But --

18         MR. RYAN: Not just yours.

19         THE COURT: Yeah.  So --

20         MR. RYAN: It's everybody's.

21         THE COURT: But I will address this really

22    quickly, especially now that my week is free, and let you

23    know how I want to proceed and what's best.  Okay?

24         MR. TIMKO: Okay.

25         MR. RYAN: Thank you very much for your time,

1  Judge.

2          THE COURT: Thank you.

3          MR. TIMKO: Thank you.

4          THE COURT: And make sure I have -- you leave

5  one of the sets of exhibits here, the books.

6          MR. RYAN: Okay.

7          (Thereupon, the taking of the proceedings was

8  concluded)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

133

# C E R T I F I C A T E

I certify that the foregoing is a correct transcript

from the electronic sound recording of the proceedings in

the above-styled matter.


*Cynthia D. Vachon*                    December 29, 2024

Cynthia D. Vachon

Notary Public-State of Florida

Commission Expires: 07/24/2026

Commission Number: HH291609

**A**

**a.m** 4:1 88:6,11 123:5
**ability** 48:6 55:12
65:25 98:4 131:5
**able** 23:16 24:3 28:14
32:11 33:23 49:14
50:18 53:16 54:14
55:19 59:22 60:6,9
65:16 66:4 70:9
71:23,24 72:15 75:3
76:24 80:23 81:6,11
81:14 84:23 88:9,9
90:25 107:21 108:3
112:5 125:4 129:4
**above-styled** 133:4
**abuse** 123:23
**access** 52:20 54:11,14
55:21,22 57:5 58:9
58:10,17 65:17,18
70:3,7 85:11
**accessed** 68:13 71:14
**accessing** 66:24
**accidental** 81:1
**accidentally** 96:25
**account** 13:19 27:10
51:25 52:1,3,20,21
52:23 53:3,10,16,19
54:12 55:25 56:1,11
56:13 57:6,18 58:9
58:10,10,12,14 60:7
60:20,22 66:19 67:4
69:6,8 70:4,8 71:14
72:14 82:6 83:10,13
84:25 85:2,11,20
86:11,14,17,21,24
87:2,6,11 97:17
98:3,4,11 99:10
**accountant** 124:7
**accounts** 16:12,13
50:15 51:3 54:1,15
55:6,9,14,22,23
56:5,15 57:15 59:17
59:24 60:15,16
80:13,15 92:6
**ACCREDITED** 1:48
**accurate** 59:7 90:21
101:18

**accurately** 57:3 83:16
92:24
**acreporters@emba...**
1:49
**act** 81:1
**acted** 42:14
**action** 120:11 123:13
**actions** 80:24
**activities** 59:2 65:23
**activity** 52:25 53:2,8
53:18 58:3,7 59:3,7
59:10 65:5,16,21,22
66:25 67:8,12 70:25
71:12 73:19 74:8,11
74:14 75:8,25 82:5
84:24 85:1,6,20,23
86:3 87:11 88:9,10
88:14 97:20 98:6,12
98:15
**actual** 30:3 54:21
114:7
**add** 43:24 109:14
111:3
**added** 109:11
**adding** 39:15 109:3
**addition** 17:15 96:2
**additional** 111:15
130:5
**address** 5:6 9:1,14,17
9:22 10:19 12:3,22
18:15 19:5 22:25
23:24 33:6,8,14
34:19 35:12 40:15
40:24 41:16,20,25
46:10 111:8 119:12
130:6,7 131:6,21
**addressed** 11:3,15
39:6 40:15,23
**addresses** 19:9 22:3
25:21
**addressing** 10:6
131:4
**adjustment** 93:16
**adjustments** 45:4
**Administered** 1:7
**administering** 106:15
**administration**

106:19
**administrative** 83:12
**admissible** 30:15
94:7
**admission** 109:20
**admissions** 110:20
**admit** 9:16 15:2 20:6
29:24 30:1 31:9,12
32:3 44:15 81:21
84:12 88:24 91:9
92:13 94:3 104:21
**admitted** 12:21 13:13
14:25 32:18 94:11
94:14
**admitting** 29:22
31:16 32:5,8,10
89:6
**ADV** 1:17,19,20,21
1:22,23
**advantage** 129:16
**adversary** 2:19 4:11
4:21 106:23,25
**affirm** 46:5
**affirmative** 40:16,17
40:22 41:15 119:13
**afford** 5:16
**afraid** 126:25
**afternoon** 23:3
100:22
**ago** 116:19
**agree** 41:19 123:6,18
**agreed** 125:10
**Ah** 47:1
**ahead** 7:12 24:1 37:7
40:12 43:22 44:23
63:10 96:2 98:25
108:15 113:3
121:18 123:16
**AI** 62:5
**aids** 95:9
**Aimee** 101:19
**alleged** 116:22
**allow** 26:11 30:10,17
42:2 55:18 95:8
119:9
**allowed** 23:11 111:1
**allowing** 43:17

**allows** 114:6,9
**alternative** 97:21
**amend** 112:21
**amended** 117:13
**amount** 67:24
**amounts** 116:19,20
**analysis** 96:22,23
98:3
**analyzing** 67:18
98:12,14
**Andrew** 71:15 72:5
**Angeles** 46:12
**Anna** 2:21 4:20 22:15
39:4 72:22,25 73:9
74:12,18,22 75:19
75:22,25 112:24
116:25 117:3,12,22
124:20,21 126:15
128:5
**Anna's** 29:6
**answer** 50:3 77:1
125:21 126:8,11,14
126:16 127:9,22
128:2 129:6
**answered** 129:16,21
**answers** 125:5 129:12
129:13
**anticipate** 130:19
**anybody** 98:9
**anyone's** 34:18
**anyway** 111:2 121:14
**apart** 44:16
**apologize** 64:19
70:19 89:23
**app** 81:15
**apparently** 100:22
**appeal** 37:25 40:2,5,7
101:4 111:20 112:9
112:12 114:7 123:7
131:17
**appear** 37:9 73:10
113:6
**appearances** 4:13,14
**appeared** 44:4
113:15
**appearing** 2:8,17,24
2:29 105:17

**appears** 101:1
**appellate** 123:1
**appreciate** 119:25
**approach** 46:19
  61:14 62:25 113:2
**appropriate** 37:12
  102:2 120:14
  131:14
**approve** 40:20
**area** 79:8
**areas** 79:7 97:9
**aren't** 117:17
**argue** 40:21
**argument** 27:22
  69:24 97:24 120:21
  121:19 123:1
**arguments** 13:1
  94:13 120:10 128:4
**arising** 36:13
**Arora** 41:11 42:21
  124:3,24
**Arora's** 123:24
**arose** 33:4
**aside** 106:22 113:23
  113:24 114:5
**asked** 93:19 110:14
  125:11,16,25 127:8
  129:5
**asking** 120:23
**aspect** 50:17 51:14
**aspects** 69:25
**assert** 19:1
**assets** 117:1
**assist** 47:7
**assisting** 128:19
**Association** 1:18 2:18
  4:18
**assume** 8:19 73:18
  88:8 105:23 108:2
**assumption** 73:20
**attached** 12:7 35:15
  35:17,18,19 56:19
  56:21
**attack** 5:11
**attempting** 116:7
**attention** 54:25 81:10
  127:10

**attorney** 8:5 9:1
  10:20 11:9 16:17
  17:19 19:9 44:4,5
  54:2 55:21 128:14
**attorney-** 17:22
  104:12
**attorney-client** 8:25
  9:3 10:21 11:9 16:7
  17:18 18:15,25 19:4
  19:14,16 20:10,16
  20:19,23 101:23
  104:6
**attorneys** 18:4
**August** 70:8,14
**authentic** 10:9
**authenticate** 13:7
  14:1
**authentication** 11:1
  103:8
**authenticity** 8:25 9:9
  9:18,19 10:8 26:5
  83:25 84:13,20
  88:24 103:10
**authorize** 40:20
**available** 17:7 122:17
**Avenue** 2:14
**avoid** 111:10 116:7
**aware** 7:17 8:2 23:22
  25:13 54:10 108:15

---

**B**

**back** 7:5 12:25 28:23
  40:13 41:22 43:4
  45:21 48:4 63:6
  66:5 70:5 75:10
  77:5,6,14 90:7
  94:21 96:3,14 100:4
  100:25 104:22
  105:8,12 117:11
  118:4 120:2,5
  123:12 129:25
  130:8
**background** 127:4,16
**backward** 65:25
**backwards** 21:10
**bad** 29:10
**Balot** 3:8 11:21 14:13

33:7,16 35:2 38:8
41:6 45:3,24 46:1
46:11 48:17,22 63:7
65:1 66:17 83:3
84:6,8,19 89:10
94:18 96:22 99:17
107:6 115:19
**Balot's** 11:2,21 27:20
  33:3 34:11 42:5
  94:5 95:2
**bank** 21:15,16 26:20
  26:21,23 27:1 60:20
  68:9 106:11 110:12
  116:10
**banking** 101:7
**bankruptcy** 1:1,36
  4:4,9 30:7 32:2
  42:14,17
**Bar** 128:16,17
**Bartolone** 16:22 18:7
  27:7 54:3 55:21
**based** 8:18 43:19
  52:4,5 59:18 69:13
  71:11,22,23 75:5
  76:11 81:2,4 115:5
  121:20
**basically** 14:3 38:21
  39:5 59:19 101:4
  105:4 111:11
  121:20
**basis** 20:5 32:8 51:16
  105:23 113:6
**BCPO** 38:18
**BCPOA** 31:2 38:19
**Beach** 2:7 42:21 43:2
**bearing** 20:3
**beep** 46:24
**beginning** 71:4
**behalf** 2:8,17 4:15,17
**believe** 11:20 22:15
  33:1 57:14 59:25
  60:12 77:12 112:3
**bell** 105:5
**Bella** 1:17 2:17 4:17
  30:19
**benefit** 28:11 31:21
  93:6

**best** 9:13,16 26:17
  27:25 43:5,22 55:12
  55:24 59:25 61:1
  111:17 120:11
  123:13 130:10
  131:5,23
**better** 10:6 47:22
  58:6 62:1,5 85:14
  118:7 121:4 126:15
**beyond** 92:5
**big** 47:3 49:19 64:18
  82:1
**bigger** 64:18
**bills** 31:15
**binder** 27:3
**bit** 7:24 16:8 44:16
  48:23 69:16 84:3,19
  85:14 101:9 108:19
  126:13
**blank** 28:3,4
**blood** 5:9
**Bloodworth** 2:12
**blow** 64:22
**body** 25:17
**bogs** 130:6
**book** 55:1 64:5,9 77:7
  77:15 87:24 90:4,5
  90:6 116:6
**books** 100:19 132:5
**bottom** 64:15 65:1
  72:19 78:1,7
**box** 2:27 46:2
**Bozarth** 2:13
**break** 24:4,11 45:12
  65:15 89:22 94:20
  96:3 99:19,23 109:7
  110:18
**brief** 45:19 47:9
  96:16
**briefcase** 63:11,13
**briefly** 24:9 81:4
**bring** 61:5 63:9,12
  97:13
**broad** 24:5 36:6
**brought** 6:12 26:18
  39:12 81:10 127:9
**BUILDING** 1:38

**burden** 41:17
**business** 25:13 26:1
  43:3 49:16 71:17
  117:8
**busy** 126:4
**bytes** 65:24

**C**

**C** 1:38 2:1 4:2 133:1
  133:1
**C-level** 49:3
**calendar** 7:18,23
**California** 38:9 46:12
**call** 37:20 42:20
  53:12 118:17,18
**called** 16:14 17:3
  48:25 52:4,25 67:15
  86:5 131:8
**calls** 4:9 45:24
**can't** 12:2 16:21
  17:22,24 18:18 39:9
  77:1 78:13 79:20
  95:13,24 107:17,23
  108:6 117:7 119:6
  129:12
**Capouano** 2:13
**care** 5:5,8,12,15,25
  6:13 7:7 73:13,24
  104:10 108:6
**cars** 38:24,25 39:1
**case** 1:5,6,8 4:9 6:18
  8:3,22 17:22 22:18
  22:19 23:6 26:18
  28:17,23 29:12 30:7
  32:2 37:8 39:8
  41:22 42:7,9,14,17
  43:9 50:22,23 53:21
  53:23 58:9 60:19
  72:2 85:25 91:19
  106:16 111:23
  112:19 113:11
  114:6 115:23
  119:19 124:14
  127:17 129:18
  130:16
**cases** 36:7,14 43:15
  43:16 44:3 54:19

72:1 105:16 112:16
  120:6
**categories** 24:5
**cause** 111:15 113:24
**caveat** 29:14
**CC'd** 54:19
**certain** 72:1 81:9
  97:9
**certainly** 23:6 42:15
**Certificate** 3:13 30:2
**certified** 103:9
**certify** 133:2
**cetera** 31:16
**challenge** 28:8
**chance** 9:6 99:16
  111:24
**change** 32:21 39:9
  75:4 87:6 127:15
**changed** 75:2
**changes** 101:9
**Chapter** 2:8,29 38:14
  105:15,16
**Charles** 3:8 46:11
  48:17
**Charlie** 45:24
**chart** 109:12
**chase** 127:19
**Chat** 127:13
**cheat** 118:2
**check** 11:25 101:19
  103:23,24 104:2,3
**checked** 103:22
  104:16
**checklist** 106:13
**choice** 120:3
**chosen** 100:21
**circle** 104:22
**Circuit** 36:6 37:9
  105:16,22 112:6
  113:5,7,14
**circumstances** 23:15
  30:13 36:19 42:15
  42:15 107:4
**citations** 37:21 130:9
**claim** 116:18,21
  117:2,3,13 124:23
  124:24

**clarifies** 38:2
**clear** 17:11 44:13
  94:12 115:25
  122:24 131:16
**clerk's** 100:23 113:15
**click** 131:10
**clicks** 131:11
**client** 17:23 104:13
**clients** 37:6
**clinic** 7:7
**clock** 89:24
**clock's** 89:25
**close** 112:20 131:11
**closely** 23:7
**closing** 13:1 27:22
  38:3 94:13 108:18
  108:22 120:10,21
  121:19
**cloud** 16:12 18:10
  51:3,25 52:1 53:10
  53:16,19 54:1,15
  55:6,9,14,18 56:15
  57:5,14 59:17 60:7
  66:19 70:4 80:13
  86:3 92:6 98:3
**clue** 98:16
**collapsed** 118:3
**Collina** 1:17 2:18
  4:18
**Collina's** 30:19
**column** 65:8 66:22
  67:3,7,14 68:12
  86:5,10,14,16,17,19
  86:20,23
**com** 74:12 75:22
  76:19
**come** 4:12 9:14 10:17
  11:7 28:8 33:8
  41:22 46:1 52:10
  64:20 65:14 77:12
  82:12 83:23 94:21
  95:8 96:3,14 100:4
  103:19 119:6,17
  121:8 123:11
**comes** 5:22 10:8 12:4
  21:3,6 35:12
**comfortable** 39:11,13

**coming** 42:21 100:25
**Commission** 133:9
  133:10
**communicate** 54:2,5
**communication** 27:7
  80:4
**communications**
  17:24 18:7 54:7,19
  54:22 80:11
**companies** 126:8,10
**company** 48:25 49:5
  49:7,17,19,20,21
  52:12,19 54:11,18
  79:10
**compare** 52:7 87:13
**compel** 31:11 126:2
  126:19
**compiling** 109:10
**Complaint** 29:23
  40:20
**Complaints** 29:19,24
  115:24,25
**complete** 87:1 121:2
**completely** 101:18
  123:11
**compliance** 30:3,8
**complicated** 24:21
  29:12
**computer** 46:22,24
  47:10 61:6 70:2
  84:24
**computer's** 12:6
**computers** 77:13
  90:19
**concern** 5:10
**concerned** 34:20
  84:13
**conclude** 7:19 100:6
  111:17 120:4
**concluded** 132:8
**conclusion** 120:10
**condition** 37:1
**conditions** 25:19
**conduct** 36:17 42:18
  106:3
**confident** 115:9
**confidentiality** 25:24

confirm 29:5 95:22
conform 112:21
  117:14
conformed 55:10
confused 34:25
confusion 25:8
connected 61:6
connecting 47:14,18
  51:13
connection 38:22
connects 47:15
consecutively 28:7
consequences 127:11
consider 6:22 36:8
considered 60:18
considering 101:8
  116:1 131:16
consolidated 1:18
  4:10 44:15
constantly 50:20
consulting 49:2
consumer 25:14
contacted 54:4
contain 19:4
contend 12:13
contended 36:22
content 69:3
contest 112:4
context 114:21
continuance 6:21
  36:5,11,12,21
continuation 63:19
  63:22
continue 6:8,23 13:9
  14:15 36:7,8 85:12
  101:3
continued 125:9
continuing 7:10
conundrum 119:5,22
conversation 128:3
convert 85:9
converted 86:1
convince 37:1
convoluted 34:9
cooperation 18:8
copied 88:15
copies 18:1,2 22:13

26:18 29:18 112:16
copy 12:8 16:12
  30:16 53:10 61:19
  62:10 68:9 87:1,10
corner 65:1
correct 26:13 30:22
  33:13 34:12 42:4
  52:9 54:24 58:4,21
  58:25 59:21 65:6,20
  66:9 67:13 68:3,4,6
  68:14 70:11 72:25
  74:9,24 75:1,9,19
  75:22,23 76:4,21,22
  78:15,24,25 79:2,3
  79:17 81:16 82:4
  83:14 85:17 86:12
  86:15,22,25 87:4
  88:16,17 90:23 91:2
  91:22 92:4,6,7
  93:12 96:9 98:8,13
  133:2
correcting 128:4
cost 5:16
costs 111:16
couldn't 23:5,16 34:6
  83:10
counsel 7:9 53:23
counsels 6:24
County 42:23,24
  43:2
couple 31:6 107:24
  108:4 110:15
  126:16
course 117:7 120:11
  123:13
court 1:1,48 4:4,7,8,9
  4:14,16,19,22 5:2,4
  5:12,19,24 6:3,7,16
  7:2,15,17 8:12,16
  9:12,21 10:1,7,12
  11:12,17,23 12:2,10
  12:16,19 13:3,6,8
  13:12,16,21,24 14:3
  14:6,19,22,24 15:2
  15:4,8,10,12,14,19
  15:21,25 16:3,5
  17:20 18:11,14,20

18:22,24 19:7,11,13
19:18,25 20:8,12,15
20:18,22,25 21:3,7
21:11,13,17,20,23
22:1,3,10,13,17,19
23:4,13,17 24:1,6
24:21,23 25:2,18,25
26:8,10 27:12,18,23
28:6,21 29:3,8,11
30:10,25 31:4,8,25
32:17,20 33:3,14,24
34:2,8,13,16,18,25
35:8,10,17,21,25
36:6,20 37:6,11
38:5,10 39:23 40:1
40:5,10,23 41:7,9
41:19,24 42:6,10
43:8,13,25 44:7,14
44:21 45:1,6,8,10
45:12,16,21,23 46:1
46:13,17,19,21 47:1
47:5,8,10,16,18,22
47:24 48:1,9,12,14
48:22 50:7 61:5,14
61:21,25 62:3,7,9
62:14,16,18,20,23
63:1,4,10,20,24
64:3,6,14,17,20
66:11 77:18 78:1,15
81:19,21,25 82:3,7
82:10,12,17,19,21
83:16,23 84:2,9,17
88:19,22 89:2,5,12
89:16,19,21,24 91:6
91:9 92:11,13 93:16
93:20,22,25 94:3,6
94:17 95:1,7,8,20
95:22 96:1,7,10,14
96:20 99:13,15,20
99:22,25 100:3,10
100:12,18 101:3,6
101:12,15,20,25
102:1,7,10,13,15,17
102:19,21,23 103:4
103:8,12,15,18,24
104:1,4,6,9,12,15
104:17,19,21 105:1

105:7,12,15,20,21
105:25 106:4,6,20
107:1,7,13,15 108:1
108:24 109:13,18
109:22,25 110:8,10
111:5,7,10,14
112:11,15 113:3,9
113:17,23 114:1,8
114:10,13,19,23
115:4,13,17,20,22
116:12,16 117:20
118:1,6,14,22 119:3
119:5,14,16 120:3,9
120:18 121:10,12
121:15,17 122:6,8
122:10,15,20 123:3
123:10,22,24 124:1
124:9,11,16 125:7
125:14,17 126:3,23
127:14,24 128:10
128:24 129:1,4,8,10
129:14,24 130:7,14
130:18,22 131:1,5
131:19,21 132:2,4
Court's 19:2 94:9
courtroom 4:3,9 12:9
  36:20 44:21 45:18
  45:21 46:4,9 61:8
  61:10,12 100:14,17
  130:4
covered 93:24
covering 39:6
covers 27:5 108:16
crazy 112:2
create 83:4 85:8,15
  118:2
created 23:19 49:5
  72:10 82:14,15,25
  84:6,7,20 97:12
creating 91:25
credibility 39:12
  128:22
creditor 30:6
criteria 69:13
cross 84:10 99:17
  111:21
cross- 89:9

**curb** 79:10
**curious** 41:23 113:21
**cut** 127:19
**cuts** 114:2
**Cynthia** 133:7

**D**

**D** 2:3,9,26 3:1 4:2
  133:7
**Dade** 42:23,24 43:2
**daily** 51:16
**damaged** 21:24
**Dan** 112:23
**data** 16:11,13 52:13
  53:12 56:16 67:18
  85:19 86:18 87:6
  97:5,6
**database** 49:6 52:17
**date** 25:5 65:8 66:13
  66:17,18 75:8,10,11
  82:14 83:10 84:15
  88:14 109:8 123:5
**dates** 76:1
**Daubert** 33:1
**day** 22:23 44:12 53:4
  65:24 67:9 76:16
  79:15 100:6 101:2
  118:9 119:21
  130:16 131:5,7
**days** 24:19 70:6
  106:8
**DCS** 30:7
**deadline** 25:7 30:15
**deal** 8:10,19 9:12,13
  10:16 11:7 13:21
  14:11,13 21:2,3,6
  22:2,16 26:17 34:9
  113:22 119:18
**dealing** 8:20,22,22
  106:16
**deals** 19:20 33:3
**dealt** 17:17 21:9
  32:13 101:22 119:7
**Dean** 2:12
**Debtor** 1:14
**December** 72:6 133:6
**decide** 84:11 89:8

114:10
**decided** 122:21
  125:21
**deciding** 36:7
**decision** 24:2
**declaration** 27:2
  38:13 56:21,23 57:3
  107:16 108:7,8,14
  110:16,17,23 111:3
  124:15,17
**declarations** 37:19
  42:3 111:2,11 120:9
**deduce** 71:12
**default** 37:12,22
  43:13,14 105:9,9,17
  105:18,21,23 106:3
  111:25 112:3,4
  113:7,14,16,23,24
  114:4,15,20 115:1,6
  116:2 118:11,18
  119:9 120:11,14
  121:14 123:14
**defaulted** 116:19
**defaults** 44:2
**defend** 6:18 8:3 43:17
  111:24
**defendant** 1:26 2:24
  4:20 43:10,16
  114:25
**Defendant's** 32:5
**Defendants** 116:15
**defending** 105:19
**defense** 40:22 111:14
  112:7
**defenses** 40:16,17
  41:16 119:13
**defined** 65:21
**degree** 98:7
**delay** 101:3
**delete** 79:4
**deleted** 58:18,24 59:6
  59:8,16,23 60:7
  66:4,8 69:19,22,25
  70:5,10,13,15 71:20
  76:17,18 77:3,11
  79:16 80:10,20 81:7
  90:22,25 93:3 96:25

97:10 98:11 109:7
**deleting** 79:1 80:24
**deletion** 69:24 79:7
  79:11,12 80:9 93:9
  97:7
**deletions** 80:25
**demonstrate** 53:7
**demonstrative** 94:4
  95:9
**Dennis** 2:9,26
**departed** 126:10
**department** 47:21
**depend** 4:25 104:23
**depending** 109:3
**depends** 58:8
**depict** 58:17
**depo** 39:9 122:4,11
**deposed** 35:6 122:11
**deposition** 31:12 32:7
  33:5 39:5,7,19 42:3
  106:9 108:5 115:10
  123:7,24 124:13
  125:11 126:1,1
  127:7 128:12 129:6
**depositions** 33:23
  37:17 105:11
  124:19 125:1
  129:12
**deprived** 23:9
**DEPUTY** 4:3,9 12:9
  45:18,21 46:4,9
  61:8,10,12 100:14
  100:17
**describe** 85:14
**described** 118:10
**description** 19:19,24
  19:25 67:8 80:6
  86:6,7,13
**descriptive** 57:7
  68:24
**designations** 122:4
**desk** 100:23
**despite** 101:1
**destroyed** 38:25 39:1
  39:3 108:10,11,13
  124:22
**destruction** 42:16

**detail** 9:2 16:8 29:15
  81:5
**details** 94:14
**determination** 71:24
  97:4
**determine** 52:12
  80:23 96:24 97:24
  98:10 99:9 102:2
  114:14 120:16
**determining** 52:1
**device** 51:21 53:11
**devices** 16:11,13
  50:15,24 51:4,18
  54:1 55:6,9,14 56:5
  56:15 59:17,23
  80:13 91:19,20 92:2
  92:5
**didn't** 6:20,22 9:7
  17:10 18:8 23:2,6
  24:4,11 25:9 33:18
  35:10,25 40:14,19
  41:16,17,18 65:17
  66:13 70:7 93:22
  94:15 110:13,14
  119:2 126:19
  128:12,13 129:15
**difference** 6:2 44:10
  69:18 118:8,15,17
**different** 60:8 69:20
  76:25 79:7 97:5
  116:14,14
**difficult** 24:7 48:7
  126:17 127:21
**difficulties** 106:15,16
  125:3
**difficulty** 43:9 54:11
  107:12 115:23
**digging** 112:17
**dinging** 47:13
**direct** 3:10 42:2
  48:20
**directions** 55:11
**directly** 18:4,6 54:4
  85:9,19
**disagree** 41:21
  123:12
**disagreement** 27:8

discern 23:8
discharge 115:16
  127:18
disconnecting 47:19
discovered 38:20
discovery 9:11 26:23
  32:5 49:1
discretion 36:7
discussed 17:3,12
  81:5
disproves 20:3
disputed 122:7
district 1:2 4:5
  114:10
DIVISION 1:3
docket 22:6,12 25:8
  25:23 26:2 28:21,23
  29:13,18 32:1
  107:18,20 109:14
  122:3 126:5 130:4
  130:20
dockets 23:4
Docs 31:17
document 11:16
  13:18 19:24 20:2
  26:6 48:7 55:2
  57:16,20 60:5 68:7
  74:16,17,23 75:2
  76:11,16,25 77:9,10
  79:13,14 81:12,18
  90:15 91:15,23,25
  92:20 98:21,21,23
documentary 115:10
  116:9
documents 6:14 9:3,4
  9:10 10:14 14:24
  16:24,25 17:1,10,12
  17:18 18:10 22:16
  23:10 26:7,10 27:11
  27:13 28:20 30:3,8
  30:13,16,20,20,21
  31:5,5 36:2 42:16
  57:11,13 60:25
  106:9 109:6,10
  115:4 120:12
doesn't 10:23 30:14
  39:20 40:21 48:10

58:19 68:2 84:15
  114:20 127:20
doing 36:23 38:15
  39:14 49:4 51:12,15
  68:22 74:10 80:17
  97:14,16 127:16
  128:5 130:3 131:15
Don 1:12,24 23:15
  67:3 71:14,17 72:22
  73:9,12,23 74:18,21
  75:18,25 76:19 91:7
  91:8 112:24 117:11
  124:19,21
don't 5:22 6:13,24
  7:14 13:4,11 18:1
  20:22 21:10,20
  24:14 25:8 27:1
  28:1,1,22 29:1,4
  30:2,16 31:18 35:11
  35:19 37:1,25 38:1
  38:15 39:14 40:3,15
  43:19 44:9 59:4,13
  66:2,7 68:15 77:21
  77:24 78:10,11
  81:20 83:20 85:23
  89:2 91:7 92:12
  94:1 96:5 97:11
  98:3 103:21 105:11
  106:8,14,19 107:11
  110:13 111:14,16
  113:11 114:2,5,25
  116:5 117:21 120:1
  120:15 121:5
  123:10,12 124:12
  125:23 127:2
  128:14,20,21,22
  129:21 130:22,22
dot 72:6 73:12,24
  74:12 75:22 76:19
  80:2 111:21
doubt 27:21 28:12
  34:18 103:10
  114:10 118:16
download 53:14
dozen 61:23
draft 37:19 131:13
draw 54:25

drive 2:22 52:20,21
  53:3 54:11 72:14
  79:6 82:5 84:24
  85:2,11,20,23 86:3
  86:7,8,11,14,17,20
  86:23 87:2,5,11
  88:10 97:6,10,15,16
  97:18,22 98:4,8,11
Dropbox 16:21
drugs 5:22
due 24:23 36:19
  39:17 110:2 122:18
duly 37:10 48:18
dying 62:24

E

E 2:1,1 3:1 4:2,2
  133:1,1
earlier 10:22 55:5
  61:13 76:24 98:19
  107:5
early 7:24
easier 9:22 12:11
  29:2 44:16 63:2
  64:1
easy 125:22 131:10
economy 44:18
edited 58:15,23 59:12
  60:7 66:8 70:12
  74:19,23 93:4 94:24
edits 58:11,20 74:15
  75:6
educational 48:23
effect 120:13
effort 17:5 38:6
Egerton 2:12
either 9:11 17:23
  20:3 27:24 38:3
  54:2,4 75:25 89:18
  121:16 129:22
elaborate 84:2
electronic 1:47 48:8
  49:1 61:3 64:21
  82:22,24 133:3
electronically 50:10
element 115:12
elephant 5:6

Eleventh 36:6 37:9
  105:16,21 112:6
  113:5,7,13
email 25:21 68:5
emails 18:4,19 22:22
  22:23 54:16
emergency 31:10
  100:24
employee's 71:18
employees 49:24
enable 49:14
encompassed 106:8
ended 57:17 69:11
  127:7
English 127:17 128:2
  128:9
enormous 100:19
enter 4:13 37:22
  120:11 131:14
entered 16:9 29:20
  126:2
entire 4:24 109:14
  127:16
entities 116:24 117:6
entitled 44:1 114:17
entity 116:23,25
  117:2
entry 37:12 76:1
  113:23
equate 40:21
equipment 5:15
erasure 79:12
error 47:10
ESI 9:4,11 13:19 16:9
  43:19 52:8 55:4
  109:5 128:15
especially 44:20
  121:6 131:16,22
ESQUIRE 2:3,11
essentially 118:22
establish 88:24
  115:11
estate 38:24 117:1
et 31:16
event 67:8 68:21
  72:24 74:13 76:15
  80:6 86:13

**events** 123:21
**eventually** 35:3
**everybody** 37:18
    42:20 122:24
**everybody's** 131:20
**evidence** 21:25 26:12
    31:22,22 32:24
    40:12 43:21 44:12
    51:23 57:22 81:18
    81:24 89:6 91:5
    92:10 93:15,17,18
    97:11 98:16 101:13
    102:2 106:7 110:21
    111:17 112:20,21
    114:20 115:4,10
    116:10 117:14
    119:4 120:19
    121:20
**evidentiary** 20:1
**ex** 31:17
**exact** 73:18 78:23
    83:10 107:23 109:6
**exactly** 34:22 38:18
    52:12 117:5
**examination** 3:10
    48:20 99:17
**examine** 84:10 89:10
**examined** 48:18
**example** 28:3 42:20
    58:16 67:21 97:9
    125:6
**examples** 68:17 94:25
**Excel** 85:16
**Excellent** 99:21
**exchange** 24:18
**Excuse** 87:24
**executives** 49:3
**exhibit** 9:17 11:15
    12:5,25 13:18 18:19
    19:9 24:5,5,11,12
    24:12,18 25:6,7,25
    26:1 28:3,18,18,24
    29:16,22,23,25
    30:17,18,23 31:9,10
    31:13,14,18 32:3,4
    32:6 48:11 53:7
    55:1 56:18 57:8

58:1 63:22 64:13
    71:2 76:24 77:6
    81:17,22,23 82:14
    82:14 83:21 84:4,12
    87:16 88:25 90:3,11
    91:4,10,13 92:9,13
    92:17 93:14 94:3,4
    94:7,15 95:4 102:10
    116:6
**exhibits** 7:25 8:6,9,15
    8:21 13:8 17:16
    18:2,3,5 19:3,4 21:9
    21:18 22:4,5,11,24
    23:2,18,22 24:4,15
    24:16 25:11 26:3,18
    27:3 28:10,12,13,16
    29:6,9 32:6,13
    46:18 47:2 48:5
    95:13 110:1,8,9,19
    132:5
**existed** 59:16
**existence** 119:19
**expect** 40:1 69:7
    126:25 130:5
**experience** 48:24
    68:19
**experienced** 119:20
**expert** 33:4
**Expires** 133:9
**explore** 39:23
**expressed** 54:13
**Ext** 67:15
**extension** 67:16
    71:23 72:9,10,12
    86:9
**extensions** 67:23 99:1
**extent** 28:16 31:19,25
**extra** 62:14

                    **F**

**F** 133:1
**facility** 5:15,25,25
**fact** 36:22 39:17
**factor** 98:15
**factors** 36:8 97:2
**facts** 101:4 111:3
    121:13

**failing** 19:1
**failure** 37:9 113:6
**fair** 6:25 102:25
    106:2,10 109:22
    121:16
**fairness** 24:20
**fall** 97:1
**familiar** 56:23,25
    85:15
**far** 7:13 8:6 22:5 25:6
    29:5 32:13 52:4
    54:21 94:5 95:10
    101:25 102:3
    111:20 120:9,9
**fashion** 34:23 121:24
**fast** 79:20
**faster** 44:22
**favor** 40:3,3,6
**February** 1:31 4:1
    72:6
**FEDERAL** 1:38
**feel** 31:20 106:8
    121:3
**feeling** 121:5
**Fifth** 39:7,9 126:16
**figure** 26:16,17 34:6
    43:5 44:20,21 47:6
    111:16 130:10
**file** 9:6 16:14,14 24:3
    25:4,6 37:23 53:17
    58:23,23,23,24
    66:25 67:3,15,16,22
    67:22 68:2 69:6,10
    69:19,19 70:1,15
    71:11,12,15,19,22
    71:23,24 72:4,9,9
    72:12,21 73:8,11,16
    73:19,19 74:6 75:7
    76:2,3,11,16,23
    78:23 79:5,25 80:7
    85:8,24,25 86:9,10
    90:18 98:15,17 99:1
    112:4,6 122:1
    125:25 129:19
**filed** 6:8,21 11:14
    24:17 25:7 28:10
    29:24 31:1,6 82:21

83:16 109:11,18,19
    110:1,5,6,18,19
    114:11 122:18
    128:7,13 131:3
**filer's** 71:15
**files** 59:6,8,11,16,20
    59:23 65:4 66:3
    67:9 68:13,19 69:3
    69:16 72:3 80:24
    81:1,9 90:22,24
    93:4,9 98:10,20
**filing** 26:25 40:20
    109:12 122:2
    126:18
**filings** 130:5
**fills** 65:24
**final** 113:24
**finally** 65:16
**financial** 60:18
    115:15
**find** 27:6 34:22 91:1
    97:10,11 130:11
**finding** 48:4 127:3
**findings** 11:20 119:1
    119:1,10,10 120:14
    121:21 123:16,20
**fine** 30:13
**finish** 100:8,10
**finishes** 52:11
**firms** 49:3
**first** 5:6 16:24 25:1
    30:6 35:3 41:3
    45:10 71:2 79:15
    87:15 117:2 122:23
**five** 44:25 45:13
**fix** 61:22
**fixed** 61:12
**Florida** 1:2,40 2:7,16
    2:23,28 4:1,5
    128:17,17 133:8
**folder** 47:3 62:12
    63:17,23 103:2
**follow** 41:12 50:21
    60:17 85:7
**following** 7:21 45:20
    96:17 100:16
**follows** 48:19

**footnote** 111:4
**Force** 113:11
**foregoing** 133:2
**forensic** 77:13 91:18 98:3
**forensically** 90:19
**forget** 109:6
**forgot** 63:9
**form** 81:6
**formal** 131:9,12
**format** 53:13 83:4,5,6 83:8
**formed** 116:25
**forth** 43:4 118:5
**forward** 4:12 8:11 14:15 43:13,17,22 101:8 111:23 118:7 122:21
**found** 60:3,5 90:18 90:21 117:25 128:7
**foundation** 103:9
**four** 43:15 59:1
**frame** 65:22
**frankly** 8:17
**fraud** 42:12 107:5 117:5
**fraudulent** 42:13
**free** 131:22
**Friday** 22:7,9,24 23:2
**front** 6:9 75:11 103:4 127:5,17
**frustration** 54:13
**FTC** 127:17
**full** 79:12 98:7 100:5 114:21 116:5
**fully** 40:1
**funds** 57:23
**further** 43:2 66:5 73:2 75:7 99:14 125:21

**G**

**G** 4:2
**game** 109:23
**generally** 41:24 124:14
**generated** 82:5

**gentlemen** 41:11
**genuinely** 39:20
**GEORGE** 1:38
**getting** 5:10 18:9 27:9 47:12 48:4 54:11 57:5 81:5 117:12 127:7
**ghostwriter** 127:8,12 128:21
**ghostwriters** 128:18
**give** 16:17 18:9 27:10 28:11,14 46:6 67:17 69:2,16 83:10 89:8 95:17 97:17 101:2 102:3 107:14 109:11 116:4 119:24 120:3 121:1 121:4,19,23 125:6 128:22 130:8 131:4
**given** 9:6 35:4 55:11 55:21,22 69:14 86:7 123:1 130:10
**giving** 47:10 94:24 111:23 116:3
**glad** 123:2
**glasses** 63:8 64:20
**Gmail** 27:9 80:19
**go** 7:11 8:6 12:25 17:1 21:10 23:7 24:1 26:5,19,19 28:1,1,9 40:10,11 40:18 41:3 43:22,22 44:21,22 58:2 59:14 63:8,10 70:5 71:5 72:16,23 73:14 74:2 76:5 77:5,6,14,15 78:19 79:20 87:15 87:20,21,24 88:1 89:15 90:9,20 94:15 94:21,22 96:2,11 98:25 100:1,4 101:8 102:5 105:8,16 106:6,21 111:19 112:2 113:3 115:1 119:8 120:5,23 121:18 122:21 123:12,13,16 126:2

126:6,20 129:25
**God** 4:6 46:7
**goes** 34:10,11 106:20 111:20
**going** 4:25 5:16 7:11 7:15,19 8:10 9:12 10:17 13:21 14:9,13 15:15 17:5 18:24 24:25,25 25:2 26:15 27:25 28:7,11,14 30:10,17 32:3,18,22 33:23 34:18 36:1 37:7 38:19,21 39:16 40:13 41:3,5,5,11 41:12 43:6,18,20 44:12 45:10 47:3 48:2 52:3,12 58:15 70:22 78:5 82:6 84:10,11 87:20 88:22 94:10,22 96:4 96:11 99:16,22 100:3 101:8 104:23 106:12 108:2,21 109:4 111:19 112:2 113:22 114:9,21 116:3 117:5,18 118:7,8 120:5,25 121:4,14 122:1,2 123:6,20 125:12,19 125:24 127:10 128:5 130:1,9,17,20 130:24,25
**GoldFynch** 56:1,6,10 56:13 57:17
**good** 8:10,10 63:14 113:24 129:13
**Google** 27:9 51:25 52:1,20,21,25 53:1 53:3,7,18 54:11 55:13 57:5 58:3,9 66:18 67:11 69:23 70:4 72:11,12,14 79:6 82:5 84:23 85:2,9,11,20,23 86:3,7,8,10,14,17 86:20,23 87:2,5,11 88:10 97:16 98:4,11

**gotten** 69:24 125:5
**GPT** 127:13
**grab** 113:20
**Gralnik** 51:11,12,20 52:10 54:13,17 56:21 57:1
**grant** 105:21
**granted** 36:20
**granting** 31:11
**great** 39:2
**Green** 108:7
**Greene** 35:5,9 37:18 41:13 43:3 124:1
**Greene's** 38:17 124:13
**grounds** 18:16,25
**group** 2:4 9:23
**grouping** 9:24
**guess** 21:2 26:8,25 34:6 35:10 37:19 39:19 56:20 65:24 104:21 108:14 110:2,25 114:6,15 126:13 129:19
**guessing** 110:1
**guise** 97:1
**guy** 61:13

**H**

**hadn't** 66:3
**halfway** 127:20 128:3
**hamstring** 129:20
**hamstrung** 126:12
**hand** 7:4 46:4 102:4
**handed** 7:7
**handful** 60:1
**handle** 10:10 11:10 24:15 55:6
**hands-on** 49:17
**handy** 64:20
**happen** 24:19 80:7 98:1 122:12
**happened** 17:12 34:22 63:21 66:18 72:24 73:7,21 74:13 76:15 97:25,25 99:9 127:4

**happy** 27:4 37:19
**hard** 38:13 53:10
  62:4 95:21,22 97:6
  97:9,15,18,21 98:7
  119:24
**harm** 114:24
**hasn't** 40:7
**hate** 119:8
**haven't** 13:25 17:17
  24:9 28:23 29:14
  116:6 120:19
**he'll** 114:13
**he's** 5:19,21,21,21,23
  6:13,18 7:11 10:23
  11:2 32:20 37:2
  38:13,14,19,21
  39:18 42:5 45:10
  73:25 91:8 94:8
  95:5 107:10,11
  123:9 126:24,25
  127:12 128:18
**head** 106:13 107:23
**heads** 23:5
**health** 5:9 25:14,15
  37:1,8
**hear** 32:14 33:7
  34:20 38:11 43:21
  78:11,13 95:24 96:5
  108:21
**heard** 18:18 44:13
  108:22 109:5
**hearing** 47:13 127:18
**hearsay** 8:25 26:4
  94:7 95:4 103:9
**heart** 5:10
**Hebrew** 128:1,2
**held** 37:9
**help** 14:8 20:2 23:25
  46:7 114:24
**helped** 38:23
**helpful** 26:7 38:16
  67:18 107:17
  110:20 113:12
  115:18
**helps** 38:1
**here's** 43:8,8 119:8
**HH291609** 133:10

**high** 5:9
**highlighted** 113:5,12
**highlights** 108:16
**Hightail** 16:21
**Highway** 2:5
**history** 128:18
**hit** 47:23
**hitting** 70:20
**HOA** 40:19
**hold** 11:12 14:16
  15:21 25:2 47:5
  63:20
**holds** 5:1
**hole** 71:7 87:21
**holiday** 24:21
**home** 6:4,6 50:25
**honest** 125:17
**honestly** 26:7 109:1
  129:18
**Honor** 6:1 7:1 10:25
  12:15 24:18 29:2
  30:23 35:24 45:17
  46:16 62:11 64:2
  96:13 103:2 112:18
**Honorable** 1:35 4:6,7
**hood** 97:24
**hopefully** 7:17
  101:18,19
**hoping** 34:20
**horrible** 123:21
**hospital** 5:13,14,16
**hours** 31:12 71:15,18
  72:5 127:22
**housekeeping** 5:5
  7:13 32:23 35:22
  44:13
**husband** 8:3 100:24
**husband's** 23:17

_____

**I**

**I'd** 43:24 54:25 56:18
  72:14 75:13 77:1,5
  81:17,23 91:4 92:9
  93:14 112:15
  121:19,19,21
  123:19
**I'll** 7:2 11:9,18 12:21

20:6,6 29:24 30:1
  31:12 32:14,21
  34:19 38:18 41:22
  41:22 48:5,11 51:3
  81:21 92:13 94:3,8
  94:21 102:7,7
  108:22 119:12
  120:4,6,23 123:7
  125:6
**I'm** 4:25 6:1 7:7,8
  10:17,22,25 11:13
  14:7,17 18:24 20:13
  23:22 29:6,6 30:10
  30:17 31:16 32:3,5
  32:8,9 37:13 41:23
  42:6 43:20 44:22
  47:12,12 55:14 57:9
  61:13 62:1,17,24
  63:8 64:4,12 70:8
  71:6,8 72:17 73:5
  73:15 76:9 78:3,5
  79:19 82:20 84:10
  84:11,11 85:15 86:2
  87:20 88:4,22 89:6
  91:14,24 93:18
  94:22 95:13 96:11
  102:25 106:12,12
  107:17,22 110:1,10
  111:7,16 112:17,23
  113:2 114:25 115:9
  116:1,3,4 118:6
  120:5 121:4,5
  125:15,23 127:11
  130:9 131:15
**I's** 111:21
**I've** 15:22 18:18
  35:11 36:16 43:4
  49:16 67:24 87:24
  93:24 101:2 109:13
  111:22 119:6,17,18
  119:20,21 120:2
  130:8
**idea** 40:19 126:7
**identical** 60:6 86:20
**identified** 34:3
**identifies** 66:24
**identify** 26:24 28:14

**identifying** 116:10
**ignore** 12:2
**iMac** 90:19
**image** 77:13
**imaged** 90:19
**imagine** 71:16
**imaging** 91:18
**implied** 17:21
**import** 85:18,19
**important** 50:17
  98:15,18 99:2,3,5
  118:24
**inaudible** 107:9
**incarcerated** 39:18
  126:25
**inclined** 115:1
**include** 26:4 85:23
**included** 12:24 18:7
  47:3
**including** 5:17 31:18
  117:1
**incomplete** 34:7
**Incorporated** 19:21
  19:22 44:2 116:18
  116:22,23
**incur** 111:15
**index** 3:15 25:17
**indicate** 67:4
**indication** 69:2
**indiscernible** 94:2
  113:11
**individually** 117:4,22
**industry** 67:24 97:3
  98:9 99:8
**inference** 109:4
**information** 50:10
  51:4 52:7,8,17
  53:15 55:10 56:9
  67:17 69:7 83:17
  84:19 85:5,18,22
  87:1 92:24 97:10
**informed** 100:23
**ink** 33:18
**inpatient** 5:25
**inputting** 52:11,14
**insisted** 127:18
**instance** 40:18 65:23

69:5 116:17
**instances** 80:18
**instant** 80:4
**instructions** 7:16
    55:5 130:1
**intake** 100:22
**intending** 27:13
**intent** 33:5 42:13,16
    42:17
**intention** 5:3 33:6
**intentional** 81:1,3
    93:9 97:7
**intentionally** 33:6
    93:3 96:25 98:10
**Interested** 4:12
**interesting** 97:13
**interpreter** 127:19
    128:3,6
**introduced** 9:17
**inventory** 51:18,19
    51:22 92:2
**involved** 11:10 29:7
    32:2 49:17 117:2
    122:25
**Irrelevance** 104:12
    104:19
**irrelevant** 20:17
    104:7 125:15,22
**Island** 2:28
**isn't** 59:7
**Israel** 125:8,10,12
    127:6
**issue** 7:15 10:21
    11:21 14:10 20:4,19
    23:24 25:12 34:11
    39:8 43:19 52:24
    105:9 108:17,17
    112:2 120:6,21
    123:16 125:8 130:1
**issued** 50:13
**issues** 5:9 9:18 10:6
    11:1,7,9 18:5 22:16
    23:14,21 25:20 26:4
    26:5 32:23 33:4,9
    35:22 36:25 37:8
    38:1 39:12 40:13
    48:1 57:7 102:3

107:10 109:1
**it'll** 24:8
**it's** 4:25 5:14,14,15
    6:21,21,25,25 9:17
    11:17,19 12:23,24
    12:24 13:5 17:13,23
    18:23 20:1 23:3
    25:15 28:2,22 29:11
    30:18,25 34:2,2,3,9
    43:22 44:8,14 45:12
    46:15 47:14,18 48:6
    48:10 50:20 56:14
    57:22 58:8,15 61:8
    61:10,12 62:4 67:16
    68:1,2 70:13 71:8
    72:9 73:12 74:12
    76:12,12 77:7,9
    81:25 83:20 84:16
    84:24 89:21 90:4
    94:4,5,9 95:4,21,22
    104:23 105:20
    106:24 109:16,19
    109:19 114:4 115:6
    115:7 116:6,18,22
    117:18 118:7,17,19
    118:19 119:5,20
    120:13,18,19,22
    121:14,14,16
    122:24 123:5,8,23
    124:25 127:2
    128:25 130:17
    131:10,10,20
**item** 65:2 68:12 75:21
    80:22 86:4,5 87:14
    88:5 94:15,15,23,23
**items** 70:5 87:13
    94:21
**iteration** 49:5

————————————
                J
————————————
**J-P-G** 68:1 80:2
**James** 2:3,11 4:15,17
**January** 72:6
**Jennemann** 127:17
**Jim** 47:20
**JINC** 44:2 117:17
**JINK** 19:21

**JNOV** 118:19
**jockeying** 122:25
**Johnson** 7:4 12:5
    32:11 46:3
**join** 7:10 100:21
**joint** 22:4 112:25
**jointly** 1:7 117:15
**JPG** 67:21 68:1 76:14
    80:2
**judge** 1:36 3:3 6:15
    45:15 63:16 64:12
    70:19 81:17 112:19
    127:17,21 132:1
**judgment** 30:1,19,22
    31:1 37:16,20 38:23
    40:14 41:19 43:14
    105:3,18 109:2
    113:24 114:4,15
    115:7,7 116:2,2,4
    117:16,19,22
    118:10,11,18,18
    119:12 120:12,15
    120:16 121:21
    123:16
**judgments** 31:3
**judicial** 28:24 31:23
    44:18 109:13,15
**July** 70:8 71:12 75:21
    88:6,11
**jump** 69:15 75:13
**jumped** 66:12
**juncture** 74:12
**June** 59:8 65:8,15
    66:4,8 70:10 76:20
    77:11 79:1 81:1,15
**Juravin** 1:12,24 2:21
    4:11,20,20 5:7,7,8,8
    5:14,21 6:1,5,10,12
    6:20 7:5,7,10 8:1,2
    8:5 9:5 11:13,24
    13:9,11 18:7,13,14
    18:17,21,23 19:3,21
    19:22 22:7,8,11
    23:13,14,19 24:13
    24:20 26:11,15 27:8
    28:18 30:3,5,23
    31:2,6,20 34:13,14

34:21 35:22,24 36:3
    36:22 37:23 39:4,15
    39:16 40:1 41:13,14
    43:10,16 44:2,9
    47:2,7 50:14 52:13
    52:17 53:2,18,25
    54:2,17 55:6,9,14
    56:5 57:15 59:16,23
    62:7,8,12,15 63:16
    63:19,22 64:8 66:18
    69:6,8 70:4 71:14
    71:18 72:25 74:12
    74:18 75:22,25
    76:19 77:17,19,21
    78:3,6,9,12,14,17
    79:14 80:12 81:7,19
    81:20 82:7,9,11,13
    82:22,24 83:20,24
    84:1,4,15 88:19,21
    89:5,11 91:6,7
    92:12 93:3,25 94:1
    99:16,18,21 100:7
    100:11,21 101:2
    107:24 108:5
    109:11,19 110:20
    111:24 115:24
    116:18,21,23,25
    117:3,6,11,17 118:4
    122:2,18 124:13
    126:18 130:6
    131:16
**Juravin.com** 67:4
**Juravin's** 6:9 7:8 8:8
    9:15 13:19 16:11,17
    17:16 18:2,3 22:5
    22:15 23:2 24:4,16
    26:10 27:17,25
    28:10,13 29:8,25
    32:14 34:16 36:19
    37:1 43:6 50:24
    53:16 55:21 56:15
    57:5 84:25
**Juravins** 41:17
    106:16 125:4

————————————
                K
————————————
**Karan** 42:21

**KARL** 1:12,24
**keep** 12:3 130:2
**keeping** 20:14
**keeps** 82:5
**Kelleher** 35:5,6 38:22
  108:14
**Kennedy** 2:9,26 4:23
  37:8,18 38:12 41:10
  107:6,8 121:2
  122:11
**Kennedy's** 106:14
  121:6
**keyboarding** 51:7
**keyword** 52:5
**keywords** 52:5
**kids** 100:8
**kind** 6:8 23:25 36:5
  44:18 71:24 89:8
  97:2,20 101:6 109:2
  113:13,18 118:23
  119:7 120:6,22
  121:5 130:4 131:9
**knew** 117:5
**know** 6:23 7:14,25
  10:10 11:18 20:22
  23:3,4 24:12,12,14
  25:6,8,16,16 26:3
  27:9,20 28:1,3 30:2
  30:12 31:19 34:5
  35:19 36:14 37:15
  37:25 38:1,12,15
  39:12,14,18 41:15
  42:8,12 43:6,19
  44:9 45:14 53:6
  55:8,20 62:21 69:20
  71:16,16 77:24
  78:10 80:17 82:11
  82:13 83:11,15 84:6
  93:22 96:5 97:25,25
  106:17 107:11
  108:22 109:4,13,16
  110:13,22 111:1,2
  111:21 114:2,15,24
  115:6,14 116:2,14
  117:21 118:3,11
  119:1,21,24 120:1
  122:24 123:11

  125:6,24 126:4,4
  127:2 128:14,19,20
  130:17 131:2,23
**knowing** 66:7 71:16
**knowledge** 52:16
**known** 17:11

L

**Lachman** 128:15
**lack** 40:21
**lading** 31:16
**language** 113:5
**lapsed** 17:7
**large** 82:1
**largely** 125:2
**late** 22:8,23 24:17
  28:11
**law** 2:4 39:8 41:22
  49:2 112:6 114:6
  119:23
**lawyers** 49:3
**lays** 120:6
**leads** 98:22
**learn** 59:2
**learned** 127:10
  128:21
**leave** 37:3 112:21
  121:25 122:22
  132:4
**leaving** 125:10 127:6
**left** 6:18 64:25 65:1
  66:22 101:21 118:3
**legal** 8:17
**let's** 5:5 16:20 28:4
  39:23 45:12,13
  47:23 67:7 73:2
  77:14 100:4 101:7
  103:12 106:6
  126:20
**liability** 112:25
  115:15
**Liberty** 113:10
**life** 29:2
**liked** 125:3
**likelihood** 98:22
**limine** 11:14 33:2
**limit** 31:12 108:19

**limits** 65:25
**line** 64:24 71:9 72:18
  73:3,15 74:2 75:16
  76:8 78:19 79:22
  80:16,16,21 88:1
  122:23
**lines** 73:14
**list** 12:5,25 25:9 28:8
  29:16 101:12,18
  116:5,20 126:5
**listed** 21:14 51:22
  90:22
**listen** 127:25
**listening** 128:1
**literally** 39:3
**little** 7:24 16:8 29:11
  29:12 34:9 43:2
  44:16 48:23 69:15
  84:2,18 85:14 101:9
  108:19 126:13,15
  131:12
**lives** 128:16
**living** 48:24
**locate** 20:2 59:22
**log** 9:6 52:25 58:4,7
  59:3,7,10 65:5,16
  65:21,22 67:10
  70:25 74:15 75:8
  76:1,17 82:6 84:24
  85:2,6,21,23 86:3
  88:10,10 97:20 98:6
  98:12,15
**long** 48:10 49:4 58:12
  89:17 95:3 96:19
  116:19 128:18
**longer** 12:6 101:8
  118:5
**look** 7:2 10:23 11:18
  23:7 31:15 52:12,21
  53:1 56:18 60:10,14
  60:24 64:21 65:7,25
  69:16 71:9 72:14,23
  75:16 76:8 77:1,3
  77:14 79:22 85:12
  87:12,23 92:17 97:3
  97:23 99:8 101:12
  103:5 120:5 127:13

  130:9
**looked** 13:25 17:2
  24:10 28:23 29:14
  39:2 69:5 70:15
  75:3 76:24 116:6
**looking** 10:22 11:13
  17:3,4 40:13,25
  64:12 68:21 73:25
  76:3 78:1,3 83:21
  85:1,20,21,25 86:3
  97:18,21,23 98:2
  99:25 112:16
  114:19 120:2
**looks** 15:17 31:15
  71:14 76:13 81:2
  115:6
**Lori** 1:35 4:6
**Los** 46:12
**lost** 37:25
**lot** 8:21 9:24 38:3,4
  64:18 97:5 108:20
  115:25 130:17
**love** 119:10 123:19
**lunch** 89:22 96:3
  99:18 100:1,1
**luncheon** 100:15

M

**main** 30:7 106:23,24
**maintained** 53:2
**major** 39:8 129:16
**majority** 109:25
  110:3,6
**making** 45:4 46:21
  46:24 53:6 58:10
  91:23 93:16 111:21
**malfeasance** 60:18
**marked** 55:1
**mass** 25:17
**Massachusetts** 128:7
  128:16
**matched** 87:10
**material** 16:16,18,20
  17:7 19:4 55:16,17
  56:4,14 81:7 97:17
  103:10
**materials** 96:25

**matter** 53:9 105:2
  133:4
**matters** 4:11 5:6 7:13
  36:17 111:6
**maximize** 7:22
**MCO** 31:14 115:24
  117:4 118:4
**Mead** 2:12
**mean** 6:17 9:10,23
  10:7 24:9 26:24
  32:25 33:18 38:14
  38:18 40:3 41:17
  68:2 72:8 82:17
  85:14 103:7 105:8
  107:10 108:23
  109:1,1,5 110:8
  114:9,20 117:18
  120:16 122:3
  124:25 125:13,22
  125:25 126:15,18
  127:22
**Meaning** 6:3 97:7
**means** 109:15 114:19
**medical** 7:6
**Medina** 41:12 42:20
  105:3 124:5,6
**meet** 33:11
**Meetings** 106:17
**member** 128:16,17
**memo** 109:15
**memorandum**
  119:23
**mention** 35:14 36:1
**mentioned** 126:24
**meritorious** 112:7
**merits** 115:5,7
  118:10 123:17
**Merritt** 2:28
**message** 47:11,12
**messages** 80:18
**messaging** 80:5
**messed** 89:25
**messy** 44:14
**met** 88:23
**method** 114:14
**Miami** 121:11
**microphone** 46:15

77:23 78:11
**microscopic** 81:5
**Microsoft** 85:15
**Middle** 1:2 4:5
**might've** 103:22
**mind** 32:21 95:18
  101:7 130:2
**mine** 23:20 102:10
  103:24
**minute** 23:11 84:11
**minutes** 44:25 45:13
**mirror** 16:14
**miscellaneous** 31:18
  31:19
**misleading** 19:20
**missed** 30:15 103:22
**misspoke** 10:25
**mistake** 6:22 17:4
**misunderstanding**
  95:2
**mixed** 25:11
**moment** 69:17
**Monday** 24:24 110:5
**monetary** 117:16
**money** 11:4 37:7 38:6
  38:20 72:22 73:9
  74:21 75:18 105:4
  113:1 117:4,9,24
**monies** 117:10
**monitor** 54:7,23
**monitors** 84:24
**months** 36:21 37:10
  120:2
**Montverde** 2:23
**moot** 18:23 34:8
**morning** 7:21 22:6
  33:22 101:10 107:6
**motion** 6:8 11:14
  12:23 29:25 31:10
  31:12 33:1,2,21
  34:13 35:19 37:23
  38:8,8,23 39:17
  56:20 106:21 109:2
  112:4 119:12
  122:18 126:2,14,19
  129:19
**motions** 30:19,25

31:17 33:1 34:11
  35:20 37:16
**move** 43:13,17 48:6
  79:20 81:17,23 87:5
  91:4 92:9 93:14
  100:19 111:23
**moved** 97:9
**moving** 93:17,18
**MP4** 67:22
**MSG** 99:4
**multiple** 8:13 54:14
**music** 67:22
**Mutual** 113:10

**N**

**N** 2:1 3:1 4:2
**name** 19:20 25:20
  33:19 46:9 59:20
  65:2 67:1 68:12,25
  69:6 71:11,15,17
  72:21 73:8,16 76:2
  76:11 78:24 79:25
  81:9 86:4,5,10,14
  86:16 98:22 117:1
  127:23 128:14
**named** 66:22 67:3
  68:20 86:20 128:14
**names** 68:12,15,18
  71:22 98:15,17,19
**narrower** 112:13
**Natural** 29:21 32:7
**nature** 80:5 99:5
**navigate** 62:4
**nearly** 89:17
**necessarily** 25:20
  68:2 108:21
**necessary** 9:2
**need** 10:8,19,19
  13:25 21:10,20
  31:20 43:17,20 44:8
  44:22 48:5 61:19
  62:24 63:6 94:17,18
  95:14 100:1 111:16
  111:18 120:22
  124:15,17 130:22
**needed** 93:22 128:6
**needing** 7:15

**needs** 43:4 63:16
  95:11
**negative** 109:4
**never** 17:2 54:4
  117:24 119:18,21
**new** 116:21
**newest** 75:11,12
**nine-page** 56:20
**noise** 46:21 78:13
**nonresponsive** 125:2
**normal** 117:7 130:20
**Normally** 24:23
**North** 2:7
**Notary** 133:8
**notation** 58:22
**note** 7:22 14:25
  108:22 109:14
**notebook** 71:3
**notebooks** 70:22
**noted** 40:13
**notice** 28:25 31:23
  109:13,15,16
  114:11
**noticed** 24:6
**notify** 130:23
**November** 36:18
  125:10
**number** 12:17 26:2
  29:18,18,22,23,25
  30:2,17,18 31:9,10
  31:13,14,17 32:3,4
  32:6 49:8 56:18
  61:16 62:19 64:24
  64:25 67:25 71:8
  72:18 75:16,24 76:8
  76:12 78:2,4 79:22
  81:18,22,24 87:12
  88:1 90:3 91:10,13
  92:9,14,17 93:14,17
  94:4,7 102:10 109:6
  133:10
**numbered** 28:7
**numbers** 70:20 78:5
  78:6 102:5
**numeric** 60:16 65:3
  80:1
**numerous** 80:18

**NVLC** 11:4 15:15 38:20 41:11 112:23 117:11 124:7

**O**

**O** 4:2
**o'clock** 45:13 100:2,4
**oath** 129:5,7
**object** 8:12,14 9:15 10:14 13:9 16:18 23:9 24:16 25:10 27:1 81:19 82:8 94:2
**objected** 10:14 13:14 16:1 19:23
**objection** 10:12 11:13,24 12:12,18 15:9,13,16 16:6 17:14 18:15,25 19:12,17 20:6,7 21:1,12 25:7,9 26:6 26:13,14 83:24 91:6 92:11 93:19 102:1 103:19 104:1
**objections** 7:25 8:9 8:13,18 10:18 12:14 12:20 14:17,18,21 15:7 17:2,6 21:14 21:14,25 24:3 91:7 94:1 101:18 102:25 103:1
**observe** 4:24
**obtained** 105:10
**obvious** 97:21
**obviously** 40:5 69:23 106:2 108:6 118:4
**occasions** 54:14
**occurred** 65:15 67:9 71:12 76:20 80:9
**occurring** 57:4
**October** 36:18
**offense** 37:12
**office** 100:23
**oh** 10:24 11:18,23 14:7,17 29:5 42:24 43:1 46:22 63:10,24 63:24 78:6,12

101:22 102:22,23 103:4 105:20 109:8 110:8,10 124:9 127:11 128:12
**okay** 4:16,23 5:2,19 5:24 6:7 7:2,5,12 9:19 11:12,18,23 12:3,10,19 13:6,12 13:13,14,16,23 14:2 14:14,19,22 15:1,4 15:8,8,10,12,14,19 15:25 16:3,5 18:11 18:14,20 19:7,13,18 19:25 20:8,12,15,18 20:21,25 21:7,11,13 21:23 22:1,3,10,13 27:12,18,23 29:11 30:10 31:4,8,24 32:11,12,16,18,19 35:7,8,17,21,25 37:3 41:7,25 42:10 42:10 43:2,23 44:23 44:24 45:7,12,14 46:17,21 47:1,24 48:12,13,15 49:4,8 49:13,19,23 50:3,6 50:9,12,17,23 51:2 51:6,10,12,17,21,24 52:6,10,16,19,24 53:6,14,21,25 54:5 54:7,10,21,25 55:4 55:8,13,20,25 56:4 56:9,13,18,25 57:8 57:10,13,16,20,24 57:24 58:6,13,19 59:1,6,11,14,19,22 60:2,5,10,21 61:2 61:17,18,25 62:3,20 63:4,8,18,24 64:6 64:11,14,17 65:4,7 65:14,18,21 66:2,7 66:10,15,21 67:2,7 67:14,17 68:1,11,15 68:24 69:5,10,15 70:3,7,12,17,22 71:1,6,7,10,11,19 71:22 72:2,5,12,16

72:18,21,23 73:2,2 73:7,10,14,14,18,21 73:25 74:2,13,17,23 75:2,6,13,16,18,24 76:5,8,10,15,18,20 76:23 77:4,6,7,14 78:6,12 79:4,11,14 79:18,22,25 80:3,6 80:11,16,23 81:4,11 82:1,10 83:1,7,11 83:15,19 84:2,17,21 85:4,13,22 86:2,9 87:5,9,15,19,22,25 88:1,4,8,18,22 89:1 89:5,10,11,16,19 90:1,8,13,14,17,20 91:3,9,11,20 92:15 93:10,13,23 94:11 94:16,20 95:7,20 96:10,12,20 97:2,13 97:20 98:2,9,14,17 98:24 99:4,12 100:4 100:12 101:25 102:13 103:14,17 104:8,14,16,17,19 104:20 105:1,7,14 105:25 106:10 107:1,7,13 109:24 110:10,10 111:5 113:9 115:13 116:12 118:1 119:3 119:8 120:3,8 123:10,17,18 124:16 128:24 129:1 130:11 131:23,24 132:6
**old-fashioned** 61:11
**oldest** 75:10,12
**once** 16:16 33:7 53:14 55:13 70:3 75:2 121:25 126:9
**one-click** 131:8
**one's** 6:7 40:23
**ones** 10:1 12:13 15:5 118:9 131:12
**online** 16:9 18:9 48:25 49:19 51:7

53:1 55:15,18,25 56:14 59:15 60:2 83:3,12 84:5,23 85:4 87:10 88:9 91:21
**opinion** 80:25 81:6 92:25 93:8 94:5,6 95:11,14 96:23 106:2 111:18 113:5
**opinions** 93:2 119:7
**opponent** 101:9
**opportunity** 16:18 17:1,9 23:6,10 50:6 50:12 54:1
**opposed** 94:24 117:22
**opposing** 7:9
**option** 120:25 121:1 121:1,5,23
**Orange** 2:14
**order** 9:5 12:21 16:9 16:14 24:17 31:11 31:11 32:9 37:20 43:19 50:13 51:5 52:4,6,8 55:4,11 65:15 96:22 109:7 110:19 112:8 120:6 126:2 131:15
**ordered** 81:8
**orders** 19:2 50:19 131:9,9
**ordinarily** 96:24
**original** 19:22 29:23 116:17,23
**originally** 97:12
**Orlando** 1:3,40 2:16 4:1
**out-of-court** 95:5
**outside** 36:20 51:4 53:15 55:18 79:9 95:18
**overlapped** 115:25
**overlapping** 23:20,21
**overnight** 6:4
**overrule** 18:24 102:1
**oversee** 50:3
**overseeing** 51:14

**overstated** 124:23,24
**overwritten** 70:1
**owned** 67:4
**Owner** 67:3
**Owners** 1:18 2:18
    4:18

**P**

**P** 2:1,1 4:2
**P.A** 2:13
**p.m** 100:13
**P.O** 2:27
**page** 27:6 64:14 71:5
    71:7,8 72:16 73:3
    75:14 76:5 77:15,17
    77:21,25 78:3 79:20
    87:16,21,23 88:2,2
    88:3 90:21 108:19
**pages** 24:8,13 28:3
    83:21 95:3 107:12
    126:6
**paid** 72:22 73:9
    74:21 75:18
**Palm** 2:7 42:21 43:1
**Panel** 2:29
**paper** 48:7 62:1,24
    63:3 64:13 84:4
**papers** 6:12
**paperwork** 7:2
**Paragraph** 128:8
**part** 22:18 29:22 51:5
    54:18 60:12 61:22
    71:2 104:23 106:21
    106:23,24 118:24
**parte** 31:17
**partially** 17:24
**participate** 5:20
    27:25 51:17,25
    91:23,25
**participated** 44:5
**particular** 8:20 11:8
    50:4 51:6,7,25
    79:13,14 85:24 99:9
    123:5 127:3
**particularly** 49:2
**parties** 4:12 7:17
    36:9,11,14,21 37:11

44:3 55:19 99:25
**parts** 116:14
**party** 11:24 36:10
    42:13 53:23
**pass** 28:14
**pattern** 81:2 129:2,4
**patterns** 60:20 68:22
**Paul** 110:17
**pause** 47:9 70:18
    96:16
**PDF** 82:21 83:4,15
    84:7
**peculiar** 119:19
**pending** 33:1,2 36:15
**Pendio** 2:22
**people** 49:22 85:1,3
    97:2 99:7 111:15
**people's** 25:24
**percent** 110:24
**performed** 5:18
    59:18
**period** 70:13 97:8
**peripherals** 51:13
**person** 25:22 35:5
    39:4 51:6 61:22
    85:1
**personal** 52:16
**personally** 52:20
**perspective** 49:2
    69:21
**photograph** 68:2
**phrase** 20:5
**phrases** 52:5 56:16
**physical** 51:23
**pick** 38:23,25 79:10
    100:9
**picture** 68:5,7 85:5
    88:10
**pictures** 108:12
**piece** 64:12
**pieces** 44:16
**pin** 103:12
**place** 13:1 97:12
**placed** 56:6
**places** 34:1,4
**Plaintiff** 1:20 2:17
    45:24 88:23 114:16

114:17
**Plaintiffs** 22:3 28:12
    30:16 31:1,10 81:21
    81:23 88:25 91:9
    92:13
**plan** 110:22
**plane** 125:23
**planning** 4:24 5:19
    27:15,16 41:2 106:7
    125:24
**pleading** 109:19
    128:7
**pleadings** 13:6,10
    22:12 28:17 29:20
    31:8,21,23 32:1
    40:14 117:14
**please** 4:12,14 46:4,9
    48:14,22 56:19 57:8
    63:1 90:3 91:13
    92:17,18 96:20
**plenty** 36:9
**PLLC** 2:4
**POA** 40:19 115:14
**podium** 82:12 83:23
**point** 6:17 9:18 18:6
    18:23 43:20 79:1
    85:24 94:13,14 97:7
    97:13 110:24,24
    115:8 117:12
    121:22 125:20
    126:18 130:21
**pointing** 94:25
**points** 52:22 53:4
    97:5
**Polish** 128:6
**portion** 20:1 49:15
**pose** 17:1,6
**posed** 50:5 106:1
**position** 123:15
**positive** 72:10
**possible** 44:24 70:4
    70:16 83:20
**Possibly** 69:4
**posture** 130:11
**potential** 117:17
**power** 89:24
**practice** 130:21

**practitioner** 49:18
**preexisting** 25:19
**prefer** 119:25 121:7
**preference** 40:11
    111:10
**prejudice** 36:10,10
**preparation** 37:10
**prepare** 36:9,22,24
    60:2 111:1
**prepared** 36:12,23
    51:19 95:2 105:4
**preparing** 51:17
    131:2
**prescribed** 6:5
**present** 6:15 42:2
    106:7
**presentation** 44:10
**presented** 36:3
**presenting** 19:3,3
**presently** 49:21
**preserved** 42:3
**president** 38:20
**presiding** 4:6
**pressure** 5:9
**presumably** 66:2
**presume** 66:3
**presumes** 43:18
**pretty** 40:10 68:17
    96:7 129:13 131:11
**previous** 21:9
**previously** 48:18
    90:22
**primarily** 25:13
**print** 12:6
**printed** 84:4
**printer** 12:7
**prior** 49:6 53:22
**privacy** 7:8
**privilege** 8:25 9:3,6
    10:21 11:9 16:7
    17:18,23 18:16,25
    19:1,14,16 20:10,16
    20:19,23 21:5
    101:23 104:6,13
**privileged** 17:10
**pro** 2:21,24 109:15
    128:7

**probably** 6:22 9:13
9:16 10:5 27:19,21
27:24 41:13 43:11
83:9 107:17 108:8
118:25 126:5
**problem** 28:22 29:16
29:21 33:25 54:17
87:21 100:6
**problems** 36:13 57:4
125:1
**procedural** 38:1
118:9 119:5,22
130:11
**procedurally** 43:21
**procedure** 11:11 85:4
**procedures** 5:17
113:19
**proceed** 6:10 7:12,16
8:7 36:2 41:2 44:8
44:23 45:5 48:14
96:20 104:24
114:13 120:7 130:1
130:10 131:23
**proceeding** 4:11,21
**proceedings** 1:33,47
3:3,5 45:20 47:9
70:18 96:16 100:16
106:23,25 132:7
133:3
**process** 42:19 53:9,25
54:18 60:12 85:7,13
89:8 122:19
**processes** 60:17
**produced** 13:19 30:4
30:14
**production** 32:4
**productions** 28:19
**professional** 48:23
50:7
**program** 72:13 80:19
**programming** 49:6
**prolong** 111:15
**promote** 44:17
**proper** 114:14
**properly** 40:19
**Property** 1:17 2:18
4:18

**propose** 99:22 100:3
**proposed** 37:20
120:12
**proposing** 42:1
**prosecuting** 32:20
**prosecution** 129:20
**protect** 7:8 17:9
25:23
**protocol** 16:10
**prove** 112:7 116:19
**proves** 20:3
**provide** 16:8 36:6
38:21 50:7
**provided** 1:48 30:9
32:9 33:10 40:2
50:24 92:3 122:17
**provides** 49:1
**providing** 7:9 69:12
**proving** 105:9
**PSR** 29:21
**psychologically** 126:9
**Public-State** 133:8
**pull** 44:16 61:3 62:23
**punch** 71:7 87:21
**purchased** 38:24
**purport** 29:15
**purports** 84:14
**purpose** 56:3 94:11
**purposes** 32:22 118:7
118:14,16
**pursue** 41:18
**put** 16:20 18:13
33:16 34:5 36:3
40:12 45:3 55:17
56:10 79:8 103:2,12
108:21 110:21
119:8 121:1,7,13
124:7 125:4
**putting** 49:8 53:13
58:1 130:4

**Q**

**qualifications** 33:4,7
**question** 8:10 13:4
26:8 58:6 77:1 89:7
89:7 108:3 111:20
114:6 125:12 128:1

129:5,6 130:13
**questioned** 128:11
**questionnaire** 25:16
**questionnaires** 25:14
**questions** 8:24 39:8
50:3 61:24 84:9,12
89:9 96:18 99:14,17
107:24 125:19,21
126:8,11,15,17
127:22 129:15,17
**quick** 10:18 31:15
47:7 96:12 100:20
112:1 113:21
**quickly** 28:1 40:11
58:2 89:15 131:22
**quite** 130:16
**quote** 126:9

**R**

**R** 2:1 4:2 133:1
**raise** 25:1 35:23
40:16 41:18 46:4
**raised** 8:1 10:22,24
11:21 17:13 33:10
36:25
**raising** 84:12
**ran** 55:13
**rapid** 74:19
**reach** 92:25 93:2
96:23 112:8
**reached** 22:6
**read** 12:25 34:1
50:12,19 51:1 64:19
106:9 114:7 119:6
125:19,20 126:6
128:8,12 131:3
**readable** 53:13
**reading** 93:20
**ready** 6:24 45:14
47:24
**real** 10:18 47:7
100:20 113:21
**reality** 17:2
**realize** 28:6
**realizing** 111:19
**really** 10:19 15:22
20:5 24:14 34:8

36:4,23 38:18 39:15
64:7 94:4 95:4
101:21 105:18
106:14,20 111:6
112:25 113:21
114:9 115:7,7 116:4
117:13,16 118:10
120:13,14,15
131:21
**realm** 59:9 79:6
**reason** 35:10 46:25
68:16 103:10
110:22 121:22
125:3 131:15
**reasons** 34:21 37:13
**recall** 35:20 56:12
59:5,13
**recap** 91:18
**receive** 16:22 22:22
22:23
**received** 16:23 22:22
22:23 26:22,23
91:21 117:4,9
**recess** 45:19 100:13
100:15
**recognize** 55:1 57:11
67:23 90:15 91:15
92:20
**recognizing** 68:23
**recollect** 52:4
**recollection** 55:24
59:25 61:1
**reconsideration**
37:24 112:4,8
**record** 9:16 12:23
36:4 37:21 46:10
68:9 73:1,12 74:1
83:4 94:18 95:15
109:11 115:5,11
122:1,3
**recorded** 1:47
**recording** 1:47 46:15
133:3
**records** 7:6 18:13
21:15 25:13,15
26:21,21,24 27:1
106:12 110:12

116:10
recover 75:5 76:24
recovered 9:4,11
 13:20 16:11 56:14
recovering 50:10
 69:11
recovery 9:4 109:8
red 70:24 77:7
redactions 70:19
reduce 107:21
refer 27:21 47:3 51:3
 67:21,22 95:13
reference 21:8 30:11
 32:1 94:9
referred 56:1
referring 42:6
reflect 57:3 59:11
 92:24
reflected 86:24
reflects 59:7 83:16,22
refused 126:10 127:8
refusing 129:6
regarding 29:20 37:1
regardless 114:8
 118:25
regards 16:11 18:8,9
 21:13 23:1 35:4
 44:12 50:9,13,14
 51:24 53:2,6 54:17
 54:22 57:5 59:6
 67:9 74:17 93:2
 98:14 99:9 112:22
 116:13 119:22
 127:3,23
registered 67:5
regroup 45:1
related 4:10 30:19,20
 30:22 31:4,5
relating 23:15 72:3,3
relationship 53:22
relatively 38:17
relevance 8:18 12:3
 15:11 16:6 21:1,5,6
 21:23,25 26:4
 101:17,21,22,24
 102:1,3 103:6,18,20
 104:13,19

relevancy 10:16 11:7
 14:21 15:7 20:7,20
relevant 13:7 124:14
relied 92:25
relief 114:17 115:12
rely 98:4
remainder 11:6
remarkably 34:25
remember 16:21
renewed 119:11,11
repeat 21:17,21
 30:24
report 11:3 14:12
 28:22 29:18 33:10
 60:2 86:19,24 88:16
 92:22 95:2
reporter 3:13 33:24
 34:2
REPORTERS 1:48
reporting 53:8,18
repository 55:18 56:6
represent 8:5 64:25
 66:13
representative 32:7
represented 44:6,7
representing 8:4
represents 65:2 66:17
request 32:5 36:5,19
 109:9
requested 26:21
requesting 106:22
require 50:23 60:10
 60:14,24
required 16:12 32:9
 51:2 52:8 55:10
 112:3
requirements 33:11
 88:23
research 112:1
reserve 20:8,19
reserved 34:21
reserving 101:16
reside 6:3
resolution 72:22 73:9
 73:15 74:21 75:18
resolve 20:24 36:12
resolved 20:18

respect 8:8,18 9:1,2,9
 9:19 10:13,16 11:1
 11:4,8 24:10 38:7
 41:15 106:15,18
 107:5 108:9,15,19
 109:5 110:18
 115:22
respond 78:13 130:21
 130:23
responded 131:2
responding 130:17
response 30:12 123:4
 125:13 130:23
responses 122:24
responsible 117:6,23
responsive 16:16
 55:15,17 56:5,10
 57:17 81:7 93:4,10
rest 26:3 103:15
restart 47:23
restrictions 7:18
resubmit 108:14
result 118:19
retired 128:13
review 9:6 16:18 17:9
 23:7,10 50:13,19,21
 50:23 51:2,21 53:5
 54:16 55:19 56:11
 85:12 94:11
reviewable 85:10
reviewed 7:6 52:22
 58:3 71:15 72:6
 124:10
reviewing 36:2 54:20
 59:2 71:18 83:9
 97:6
revisit 31:19
revocation 115:15
rhyme 68:16
Richard 51:11,12
rid 69:24
right 4:19,22 5:4 6:7
 6:17 7:4 8:16 9:15
 11:23 12:1,10,12
 13:3,12 14:4,5,6
 15:23,25 18:14,18
 18:22 21:11,19,20

21:22 22:17,19
 23:13,23 24:6,22,22
 25:4,18 28:5,21
 32:12,23 33:12
 34:10,14,15,17
 35:21 38:3,5,5,10
 40:4 41:16 42:8
 43:11,12 44:8 45:8
 45:8,16 46:1,4,13
 47:22 48:9,14 59:5
 61:6,7 63:10 64:3
 65:7 67:2 72:7
 73:16 75:8 78:15
 81:12,21,25 82:7
 84:5,17 85:8,9
 88:19 89:3,12 92:8
 93:25 94:3 95:17
 99:13,15 100:13,18
 100:20 101:5,11,21
 102:16 103:25
 104:4,5 106:3,4
 108:24 109:21
 112:9,17 113:22
 114:3,8,12,18,21,22
 115:3 118:13,17,21
 118:23 120:1,17
 121:12,15 122:10
 122:20,20 125:7,16
 127:14 128:8
 129:10 130:3
rightfully 130:15
rights 83:13 122:19
rings 105:5
rise 4:3 45:18,21 63:8
 100:14,17
roadmap 50:21
roads 39:21
rolling 16:24
room 5:6
route 112:3 115:1
 123:14
routinely 99:8
rule 19:1 33:11 37:24
 40:2,3,24 84:20
 112:5,8 113:20,25
ruled 12:24 40:6
ruling 19:15 40:2

115:5 121:18,20
**rulings** 113:13
  131:17
**run** 16:15 48:25 53:9
  60:19
**running** 49:17 59:19
  93:11
**runs** 100:5
**Ryan** 2:3,4 3:10 4:15
  4:15,24,25 5:3 8:7
  8:21 9:1 10:4,5
  11:10,16 12:22,23
  13:4,7,15,18,23
  14:2,9,12,20 15:9
  15:11,13,15,18,20
  15:24 16:4,6 18:6
  18:12 19:9,12,14,19
  20:10,16,21,23 21:1
  21:5,8,12,19,22,24
  22:2,14 23:1,23
  27:6,18,19 28:5
  29:5 31:24 32:16,19
  33:13,17 34:12,15
  34:17,24 35:2,7,9
  35:13 42:23,25
  43:24 44:1,11,24
  45:2,7,9,11,15,24
  46:18,23 47:2,11,12
  47:23,25 48:3,10,13
  48:15,21 61:3,9,11
  61:16,18,20,21,23
  62:1,4,13,15,16,17
  62:19,21 63:2,5,18
  63:21 64:4,7,10,12
  64:16,18,21,23
  66:11,11,15,16
  70:19,21 77:17,20
  77:23 78:5,8,10,13
  78:16,18 81:17,23
  82:2,4,16,18,20,23
  83:1,2 84:18,21,22
  89:1,4,13,14,17,20
  89:23 90:1,2 91:4
  91:11,12 92:9,15,16
  93:14,17,18,21,24
  94:12,20 95:17,24
  96:5,9,18,21 99:14

103:6 107:3,9,18
108:10,12 110:16
112:12,19 115:9,14
115:21,23 116:9,13
116:17 117:21
118:2,13,24 119:4
119:15,17 120:21
121:8,11,13,16
122:17,23 123:4,18
123:23,25 124:5,19
124:22 127:2,15,25
128:11,25 129:21
130:13,15,19
131:18,20,25 132:6

─────── **S** ───────

**S** 2:1 4:2
**safe** 88:8
**sake** 9:20 69:24 97:24
**sanction** 34:13
  105:17,24 113:8
**sanctionable** 106:3
**sanctions** 31:11 38:7
  42:11 43:19 106:21
  106:22 126:14
  129:19
**satisfied** 88:23
**satisfy** 114:16
**save** 4:6 37:6,21 38:2
  38:4 85:8
**saw** 8:16 39:1 93:20
  98:19
**saying** 39:9 58:19
  67:11 95:13 96:10
  114:4
**says** 19:19 20:17
  21:13 28:21 30:18
  30:25 31:4,14 39:17
  64:14 65:8 67:8
  68:12 77:25 80:9
  86:9,13 99:4 113:6
  113:23 128:12
**scanning** 87:2
**scared** 39:18
**schedule** 7:14
**scheduled** 35:14
  36:18 37:10

**scheduling** 24:17
**scope** 112:12
**screen** 58:1 61:7,22
  62:23
**screenshot** 76:12,13
  80:1,1
**scroll** 18:3
**se** 2:21,24 128:7
**seal** 25:22
**search** 16:15,17 52:6
  52:11,15,17 55:13
  56:10,16 57:17
  59:20 60:10,14,21
  60:24 69:13 80:12
  81:8 92:3 93:5,11
  97:14,16
**searched** 52:2,3
  90:25 91:21 92:5
**searches** 59:18 60:13
**searching** 51:13
**seat** 46:13 111:14
**seated** 4:8 45:23
  100:18
**second** 11:12 15:22
  36:16 39:24 47:5
  59:14 64:5 66:12
  68:11 70:23 73:25
  77:15 95:17,19,23
  103:13 105:13
  116:25
**Security** 16:10 18:9
  48:25 49:19 51:7
  55:15 56:14 59:15
  60:2 83:3,12 84:23
  85:5 87:10 88:9
  91:21
**see** 4:23 6:15 10:18
  11:14 13:2 16:20
  17:20 18:4 21:14
  22:5 28:2,8 34:1
  37:7 47:5 52:21
  56:19 57:25 59:15
  61:22 63:21 65:2,12
  65:16 66:5 67:7
  69:7 70:14 72:19
  73:2 74:6 75:3 81:2
  84:23 88:6 112:10

113:20 123:13
  131:9,12
**seeing** 35:20 61:7,9
**seeking** 36:11 112:21
  115:14 116:5,24
**seeks** 114:17
**seen** 35:11 65:19
  109:2 119:21 123:8
**sense** 126:19
**sent** 22:7,8 91:19
  105:4
**serious** 37:11
**services** 49:1
**session** 4:5 45:22
**set** 6:24 16:24 33:5
  33:22 61:20 101:4
  113:23,24 114:5
  122:16
**sets** 23:22 132:5
**setting** 106:22
**settlements** 29:20
**seven** 24:19
**severally** 117:15
**share** 39:21 107:11
**she's** 39:7 61:6 117:2
  117:6 128:17,19
**sheet** 118:2
**shield** 17:23,25
**short** 38:17 97:8
  99:25
**shortly** 88:11
**shouldn't** 23:11
**show** 6:16,17 10:8
  42:13,16 43:5,6
  71:19 75:7 102:7
  105:4 112:22 119:2
  127:1
**showed** 25:7
**showing** 11:17 42:12
  72:5 87:11 88:15
  105:22 106:17
**shows** 18:12 32:21
  88:5
**sic** 74:20
**side** 37:17 79:8 103:2
**signature** 33:19
**signed** 84:16 103:8

significant 17:16,17
similar 24:10 129:5
Simonson 110:18
simply 12:2 28:17
single 28:24 51:21
  80:21 87:13
sir 54:24 90:15
situation 6:10 44:15
  119:18 120:2 121:6
six 95:3 120:2
size 65:22
slew 130:5
small 49:20
softly 95:21
sold 39:2,3 126:9
solemnly 46:5
solicited 95:11
somebody 58:12,23
  71:17 79:4 96:25
  109:9 113:14
something's 58:18
somewhat 126:17
soon 68:17 89:22
sooner 65:18,19
sorry 10:17,25 14:7
  14:17 15:25 20:13
  29:6 55:14 63:9
  70:8 73:5,15 77:15
  82:20 91:24 96:15
  102:25 103:1
  106:12 110:10
  112:24
sort 36:5 119:23
sound 1:47 47:14
  133:3
sounds 47:22
source 84:5,5
South 2:14
speak 8:23 29:4
  46:14 95:21
speaking 34:2 41:24
  77:23
specialized 49:13
specific 7:16 24:18
  25:12 26:6,20 27:2
  27:6 31:21 69:16
  82:20 94:14

specifically 10:22
  25:21 105:22 110:4
specified 16:15,22
specify 27:3
speculation 20:17
spell 120:23
spelled 120:22
spend 17:5
spreadsheet 11:3
  82:3 83:4,6,8,17
  84:6 85:8,10,15,16
  85:21 86:1 87:6
  104:25 124:8
staff 100:23
stand 13:22 14:14
  33:16 45:3,25 46:2
  46:2 94:10 95:10
  121:7 125:4 127:1
standing 40:22
start 7:21 48:10,11
  63:6 68:23 122:2
  123:5 128:2
started 35:23 53:21
  112:2
starting 64:4 102:8
  102:10
state 46:9
stated 119:1 126:9
statement 95:6
states 1:1,36 4:4,7
  94:6
stay 5:17 6:5
staying 6:4
step 95:18 105:12
steps 9:7 79:15 87:9
stick 108:19
stipulate 28:2 32:15
stipulation 10:12
stop 15:21 66:11
stopped 34:4 40:7
  100:22
storage 80:14
stored 50:10 51:4
story 122:19
straightforward
  125:12
streamline 79:19

Street 1:39 46:12
stroke 5:10
stuck 44:18
studied 24:9
stuff 13:24 109:25
styles 127:15
subject 105:2
submit 26:6 37:19
  108:8 111:1 119:23
  120:12,20 130:2
submitted 23:20
  30:21 37:16 120:19
submitting 19:3
  111:2
subpoena 30:5,8
subpoenaed 30:6
substantially 28:11
succession 74:19
successor 116:23
  117:10
sufficient 27:10 33:11
  36:24
suggest 27:23
Suite 2:6,15
summary 30:1,19,21
  30:25 31:2 37:16
  38:23 40:14 41:19
  105:3 109:2 116:2
  119:12 120:15
summation 116:11
super 96:12
supervise 49:23 50:1
  54:22
supplemental 26:25
supplements 31:7
support 30:21
supposed 16:10,15
  41:25 50:14 62:13
  80:12
sure 4:25 6:1 7:21
  12:15 14:25 39:11
  39:13 46:14 61:13
  71:8 72:15 78:14
  87:9,13 107:17,22
  111:21 115:2 116:4
  130:14 131:4,8,15
  132:4

surrounding 42:14
  71:22
Susan 128:14,15
suspect 126:21
suspend 120:4
suspicion 106:18
swear 46:3,5
switch 70:22
sword 17:23,25
sworn 48:18
symbols 56:16
system 52:7 56:2 80:4
  123:23
systems 69:20

---

T

T 133:1,1
T's 111:22
Tab 57:8
table 121:13
tails 23:5
take 4:14 5:5 9:7
  14:24 25:23 27:24
  28:24 30:20 31:22
  31:23 33:15,17 39:9
  42:4,4 44:24 45:12
  45:13 79:9 87:9
  88:10 89:17,22 90:7
  94:20,22 96:3,19
  99:23 102:2 108:6
  119:24 123:7
  125:10 127:1
taken 3:8 39:7 45:19
  55:17 70:1 100:15
  109:13 129:11
takes 113:13,18
  131:7
talk 7:20 26:15,16
  35:11 45:3 101:7
  103:15
talked 81:11 89:2
  97:14 101:10
  124:22,23
talking 10:1 15:5
  55:5 86:2 87:17
  95:24 98:20,21
  125:15

**tech** 13:24
**technical** 48:1 49:2
   51:13
**technically** 94:7 95:3
**technology** 62:2,5
**tell** 6:19 25:22 38:18
   48:22 53:16 57:10
   57:22 58:13,15,20
   60:6,9 69:18 72:15
   74:20,21 76:10
   81:14 84:10 102:7
   106:6 123:18 127:4
**temporary** 79:8
**ten** 45:13 126:6
**term** 69:23
**terms** 16:16 50:21
   51:23 52:11,15
   54:14 69:21
**test** 116:1
**testified** 48:19 50:9
**testify** 11:2,5 38:19
   39:1,20 94:18 95:5
   107:6 115:19
   126:21
**testifying** 46:14
**testimony** 3:8 11:2
   27:20 30:12 33:25
   34:11 35:4 38:12,17
   38:21 39:10 42:2,5
   46:6 50:7 66:14
   94:5,9,10 95:11
   105:3,11 106:14
   108:6 111:18
   115:11 121:25
   122:9,11 125:19
**text** 80:18
**texting** 43:4
**Thank** 4:19,22 12:7
   12:10 45:15,16,17
   46:20 63:1,14,25
   64:8 70:17 77:19
   78:9,17 89:12 90:12
   99:15,24 100:11,13
   131:25 132:2,3
**that's** 5:3 8:9,16 9:23
   9:23 10:9 11:25
   15:13 17:10 19:8,15

20:5 26:2,8 28:7
   29:11,22 30:13 33:2
   34:2,2 35:3,13
   39:15 40:21 42:2,5
   47:14 52:7,8,24
   53:13,15 58:21 59:9
   59:19 60:17 62:6,17
   62:18,21 63:14 64:3
   64:20 67:5,11,18
   70:1 72:9,10 73:18
   74:10,24 75:9 76:3
   82:1,21 85:10 86:12
   86:23 87:4,18 92:2
   94:10 99:2,22 101:6
   101:20,20 103:16
   104:4 105:5,5
   106:10 110:2
   113:15 114:9,13
   115:10,11 117:12
   117:15 119:4 121:3
   121:22,22 122:19
   125:2,15,25 126:5
   129:9 130:7
**theme** 123:8
**theory** 17:21
**there's** 7:25 10:10,20
   13:4 17:15,17 21:8
   23:21 24:9,14 25:11
   25:12,21 26:4,4,5
   27:2 31:20 32:8,25
   33:1 37:8 39:8 48:5
   56:20 59:4 60:18
   61:23 63:24 65:8,14
   66:22 67:2,14 68:11
   73:3 78:23 82:14
   97:5 103:9,19 104:1
   107:22 108:20
   110:7,17,19,25
   116:14 117:3,9
   118:8 120:13
   123:14 129:2,2,3
**they'll** 11:4 114:14
**they're** 10:9 16:15
   24:10 32:17 40:17
   44:3,6,7 50:5 63:11
   97:3 98:16 99:8
   101:6 106:17 112:3

112:5 117:23 125:2
**they've** 17:11,13 44:4
   110:14
**thing** 16:24 35:4
   39:22 43:24 69:22
   72:24 104:22
   118:23 128:5,6
**things** 16:23 23:4
   24:21 32:2 33:18
   38:2 39:6,18 40:25
   42:12 43:3 52:24
   58:11 66:10 94:24
   99:5,7 101:9 105:10
   106:18 107:22
   108:4 122:2 126:5
   126:12 129:4
   130:20 131:8
**think** 5:22 6:21,25
   9:13,15 10:13 11:6
   11:14 13:4,25 21:10
   23:11 26:12,20 27:5
   27:7,19 29:1,4 31:6
   33:9,15,17,20 35:11
   35:15,18 36:18
   40:15,17 41:24
   43:15,21 44:1,8,22
   46:22 47:25,25 57:7
   61:24 62:13 63:16
   68:16 72:10 83:20
   89:2,15 91:8 93:24
   93:24 95:1,1 96:4
   101:20 102:9 103:6
   105:8 106:24
   107:17,23 108:5,15
   108:18 109:22
   110:5,23,23 111:8
   111:22 112:5,22
   113:7 114:3,4,5
   117:16 118:6,24
   119:15,16 120:15
   121:5 123:20 127:6
   129:21,25 130:21
**thinking** 35:13 110:4
   113:8
**thinks** 96:6
**third** 36:16 67:7
   72:19

**thought** 10:24 35:5
   37:15 42:19 43:1
   64:1,7 93:19 103:3
   110:11 115:19
   119:24
**thousand** 90:24
**three** 36:21 48:5
   49:21 56:20 117:15
   131:11
**throw** 79:9
**throwing** 37:13
**Thursday** 6:14
**ticket** 125:23
**tie** 42:18
**ties** 42:9
**time** 7:14,20,22 9:20
   12:3 17:5,6,11
   23:16 27:24 30:6
   36:9,16,17,24 37:6
   37:6,22 38:3,4,13
   38:20 43:5 53:8
   57:1 65:10,22 66:25
   72:13 73:10,25
   74:10 83:12 94:22
   94:24 97:8 100:1
   108:15 119:17
   121:4 122:16 129:3
   131:25
**timeline** 18:12
**times** 75:24 122:17
   123:1 126:16,24
   127:21
**timestamp** 34:5
**Timko** 2:11 4:17,17
   8:7,8,14,17 9:14,19
   9:22 10:3,5,11,13
   11:20 12:1,15,17,20
   13:14,17 14:5,7,11
   14:16,23 15:1,3,6
   15:17 16:2 17:15,21
   19:6,8,23 20:7,9,13
   22:13,15,18,21
   23:21,24 24:2,8,22
   24:25 25:4,19 26:1
   26:9,14 27:15 29:1
   29:4,10 32:25 35:6
   35:15,18 37:3,5

38:6,11 39:25 40:4
40:9 41:5,8,10,21
42:1,4,8,11,24 43:1
43:9,12,23 45:17
46:22,24 47:7,14,17
47:20,20 61:19
62:11,25 63:12,15
64:1,8 77:25 95:18
95:21 96:6,12,15
99:24 100:2 101:5
101:11,14,17,22
102:5,9,12,14,16,18
102:20,22,24 103:7
103:11,14,17,21,25
104:2,5,8,10,14,16
104:18,20,25 105:2
105:8,14,20 106:1,5
106:10,24 107:2,4,8
107:10,14,16,20
108:2,11,13,25
109:17,21,24 110:3
110:9,12,17 111:6,8
111:13,25 112:14
112:17 113:2,4,10
113:18 114:2,12,18
114:22 115:3,18
118:16,21 119:11
120:8,17 122:4,7,9
122:13,16,21 124:3
124:6,10,12,17,21
125:1,8,15 126:4,24
129:2,9,11,15,23
130:12,24 131:24
132:3
**Timko's** 41:4
**tired** 130:16
**today** 6:11,13,14 7:12
7:18,20,23 11:2,22
27:14,16,24 28:15
30:17 32:10 33:6
34:21 35:23 36:25
37:2,7 41:3 42:5
44:6,7,19 52:25
81:10 94:6,15 95:11
95:15 101:9 109:14
113:22 115:19
120:5 121:2,25

123:6 130:4
**today's** 7:10 32:22
44:20
**tomorrow** 11:5 32:14
32:21 41:10 42:22
121:11 123:11
**top** 64:15 107:23
**total** 49:11
**totality** 42:15 107:3,4
**tracking** 58:8
**tracks** 58:9 72:13
**training** 49:14,15
**transcribed** 33:24
34:22
**transcribing** 34:5
**transcript** 1:33,48
34:3,19 35:1,12
126:1 133:2
**transcripts** 106:9
126:1
**transfer** 19:20 20:4
53:14 57:23 74:20
76:13,14 98:21
116:11 117:7
**transferee** 117:10
**transferred** 53:17
58:3
**transferring** 53:10,12
**transfers** 60:11 74:18
81:15 106:11 116:7
116:13 118:4
**TransferWise** 76:25
81:12,18
**trash** 69:21,23 79:4,7
79:7,9,10
**trashed** 58:23 59:12
66:8 69:19 70:5,10
70:13 79:15 93:4
**trashing** 79:2 80:25
**trial** 1:33 3:5 4:24
5:20 7:10 10:10
24:15,19 26:16
27:24 36:2,10,17,23
36:24 37:2,10,11,22
39:10 42:17 101:3
105:11,18,22
111:12 114:21

118:19 120:4 121:3
121:22 125:9
126:20 129:17,22
131:3
**trials** 36:8
**tried** 36:16 112:20
127:12 131:3
**trip** 110:25
**trust** 60:25 69:6,8
94:23 98:20
**Trustee** 2:8,26,29
4:15 8:22 17:8
26:22 30:18 38:14
44:1 53:22 55:22
56:7 69:12 75:3
115:12 124:18
127:20
**Trustee's** 22:16
28:19,19 32:4,6
56:11 93:5,5 115:22
118:12
**truth** 46:6,7,7
**try** 26:15,16,17 34:18
44:17 59:15 101:2,3
121:7 131:14
**trying** 43:5 62:17
79:19 84:11 96:24
97:3,24 98:9 99:8
111:7,16 118:6
123:19 131:4
**turn** 57:8 90:3 91:13
123:21
**turning** 107:12
**turns** 120:10
**two** 36:15 37:16 39:7
56:19 79:7,15 85:3
107:22 121:8
127:22 131:7,11
**type** 69:10 96:23
97:17
**typed** 52:7
**types** 40:25 50:19
99:7
**typically** 69:2 95:8

_____
**U**
_____
**U.S** 2:5

**ultimately** 56:4
**Um-hum** 9:21 12:19
29:3 40:9 113:17
114:1 115:17
116:16 117:20
122:8 123:3,22
124:11 125:14
126:3,23 127:24
128:10 129:8
130:18
**Um-um** 69:1
**UMGI** 25:13 26:1
44:3 72:22 73:9,15
75:18 105:5 112:23
112:23 117:10,11
117:13
**unable** 37:2
**unbelievable** 125:13
**unconnects** 47:15
**uncontroverted**
121:20
**understand** 6:2 34:10
38:7 108:1 112:1
123:12 128:9
**understanding** 9:5
57:4 68:19
**Understood** 44:14
107:15
**undisputed** 120:16
120:18
**unintentionally**
98:11
**United** 1:1,36 4:4,7
**unopposed** 111:11
**unquote** 126:10
**unresponsive** 39:19
**unusual** 130:11
**upsetting** 128:22
**urgent** 5:8,12,15,25
6:13 7:7
**use** 5:23 16:10 17:10
17:22,24 20:5 27:13
32:22 33:23 34:19
48:6 56:2,7 68:24
69:20,23 78:10 94:8
95:9,10 116:1 121:4
128:21

**user** 66:22,24 67:1
74:10 76:18 80:8
86:16
**users** 67:6 68:24
**usually** 10:9 109:15
114:20

**V**

**v** 1:22,35 4:6
**Vachon** 133:7
**valuable** 117:21
**value** 37:7 60:16 65:3
80:1 117:17
**various** 16:13 18:4
**Vaughan** 1:35 3:3
4:6
**vehicle** 21:24
**vehicles** 108:10,11,13
124:23
**verdict** 118:20
**verify** 6:9
**version** 48:8 53:1
60:8 61:4 82:21,24
83:15,17
**viable** 118:5
**viewed** 58:23 59:9
72:25 74:18,25
75:21 88:5
**viewing** 73:11
**views** 75:6
**visual** 67:22 68:2
**Vitamins** 29:21 32:7
**voluminous** 23:3

**W**

**W-E-B-M** 72:6
**wait** 96:11
**waiting** 79:9 93:19
100:8,9
**waive** 17:24
**waived** 10:15 12:20
19:1
**waiver** 17:11,21
**walk** 12:13
**want** 6:10,16,19 7:3
8:6 12:12 18:15
25:22 30:11 32:15

33:14 35:23 36:3
37:20 38:11 39:11
39:13,20,23 45:1
61:21 63:12 66:2
69:15 71:5,9 72:16
76:8 77:15 79:22
82:16 89:6,7,22
94:14,17,22 95:14
105:15 111:15
115:1 119:11 120:1
120:7 123:10 127:3
130:2,10,23 131:23
**wanted** 11:25 16:22
26:19 35:14 44:13
104:22 107:24
108:4,18 121:2,23
**wants** 31:25 95:24
**Warehouse** 31:14
**WASHINGTON**
1:39
**wasn't** 23:16 35:2,6
36:1,4,23 56:9 79:1
115:25 122:13
**wave** 130:19
**way** 9:13 25:11 26:5
26:17 29:12 38:4
42:3 44:21 61:11,24
66:7 72:19 75:13
87:7 100:12 106:1
111:17 119:7
121:23,24 130:10
130:16
**ways** 63:2
**we'd** 111:1
**we'll** 7:20,21 12:3,3
14:11,24 20:8,18,19
21:3 35:12 37:2
59:14 68:16 89:22
96:12 100:4,6,13
103:15 104:9
120:23 122:22
130:6
**we're** 7:14 8:19 9:12
13:21 14:9,12 15:15
20:13 28:14 32:22
36:1 39:14,15 40:7
44:17,18 47:24

49:21 68:21 70:25
85:20,21 101:8
109:2 110:4 111:2
123:2,6 126:12
129:3 130:1
**we've** 34:6 37:15
81:4 110:23 116:22
119:9 123:1,8
**webm** 72:8
**Wednesday** 7:19,23
27:17
**week** 7:14 16:23,25
131:22
**weekend** 89:25
**weeks** 83:9
**weight** 89:8 102:3
127:21
**welcome** 7:11 63:15
**went** 15:4 38:25
75:25 80:16,21
89:24 112:23
117:11 125:18
**weren't** 17:4,5 32:9
44:15 106:22
**West** 1:39 42:21 43:1
46:11
**what's** 6:2 55:1 60:18
73:7 82:6 97:21
99:9 114:24,24
120:16 123:20
131:23
**whatnot** 51:8,14
**WhatsApp** 80:2,3,19
99:1
**white** 90:4,5,6
**who's** 41:6,8 58:10
67:5 74:10 124:6,7
**WiFi** 48:3
**wire** 76:13,14 98:21
**wish** 26:11
**wishes** 7:10
**withdrew** 44:4,5
**witness** 8:20 10:8
11:8 13:22 15:16
29:16 39:16 45:10
46:2,8,11,16,19,20
61:15,17 62:5,9

63:11,14 64:9,11
82:19 94:8
**witnesses** 27:14 37:6
41:3,4 121:8 123:11
**won't** 96:19 123:6
**wonder** 96:1
**wondering** 46:23
**word** 3:15 60:21
**words** 56:15
**work** 50:1,4,14,18,20
51:13 52:14 54:21
55:8 67:24 75:12
119:9
**working** 53:25
112:24
**wouldn't** 40:6 60:9
121:18 126:7,14,21
126:25
**write** 111:4,18
128:13
**writes** 128:8
**writing** 94:13,25
127:15
**written** 13:1 27:22
94:13 130:8
**Wrong** 64:9
**wrote** 57:1 128:14

**X**

**X** 3:1

**Y**

**yeah** 8:16 10:4 11:17
12:16 13:15,21 14:9
14:11,12 15:18
19:23 20:22 21:17
22:21,23 23:1 24:1
25:2 26:9 29:1,11
34:8 35:2,13,21
39:25 41:24 42:18
44:14 47:16 48:3
51:24 62:17 64:10
65:2 68:11 74:20
75:12 77:5 78:8
93:21 95:1,22 97:23
100:3 101:17,20,23
102:7 103:11

104:16 108:13
109:17 110:4
111:13 112:15,17
113:21 115:20,21
118:6 119:16,17
121:8,10 122:15
123:18 124:21
129:14 131:19
**years** 36:15 38:15
49:9,11,12,16 67:25
68:22
**you'd** 27:4
**you'll** 18:4 126:6,7
**you're** 8:2,3,4 39:11
39:13 41:16,25 42:1
43:11 44:8 45:14
46:14 47:3 61:9
63:15 67:18 70:22
77:23 78:1,21 79:9
81:11,14 84:12,13
85:25 87:17 95:1
96:7,10,24 97:6,14
97:18 98:2 99:16
108:21 112:16
116:4,7 120:23
122:1 123:19
**you've** 50:9 67:23
70:3 81:10 95:15
108:22 109:1,5
118:9 123:24 131:2
**YOUNG** 1:38

**Z**

**zeros** 60:19
**Zoom** 2:26 4:23
**Zuckerman** 124:24

**0**

**07/24/2026** 133:9

**1**

**1** 3:5 12:17 13:12
25:6 28:21 29:18
55:1 88:1
**10** 14:4,11,12 28:18
32:4 89:15 92:17
93:14,17,18 94:4,7

**10:02:52** 4:1
**10th** 125:11
**11** 14:17 28:18 32:6
105:16
**11:00** 45:13
**110** 2:6
**11th** 125:24
**12:30** 89:21
**12:51** 99:23
**1291** 64:14,14 71:5,9
72:16 75:14 76:6
77:16 79:20 87:17
87:21
**133** 3:13
**1337** 75:16
**134** 3:15
**15** 75:21
**15118** 2:22
**17** 73:2 74:2
**17,739** 72:18
**1732** 71:9 72:5
**17703** 74:4
**17707** 74:2
**17713** 73:15
**17717** 73:3
**18-6821** 4:10
**1997** 49:6

**2**

**2** 12:22 13:8,12 25:6
29:18,22 56:19
87:21 88:2
**2:00** 100:2,3,4,5,13
**20** 14:16,16 38:15
**20-1801** 4:10
**20-page** 108:18
**2019** 30:7
**2021** 59:8 70:8,14
71:13 75:21 76:20
88:6
**2024** 1:31 4:1 133:6
**20th** 25:5 110:6
**21** 65:8 66:4,8
**21-103** 2:19 4:11
**21-ap-103** 29:24
**21-ap-142** 29:19
**22-ap-19** 29:19

**22nd** 59:8 65:8,15
66:4,8 70:10 76:20
77:11 79:1 81:1,15
**23rd** 70:8,14 122:16
**24th** 88:6,12
**252** 72:16
**25th** 46:11
**26** 1:31 4:1
**26(a)(2)** 33:11
**2682** 95:3
**27** 49:12,16
**29** 133:6

**3**

**3** 12:22 13:8,12 26:1
29:23
**3,000** 5:17
**3:45** 7:19 100:5,8,10
**30** 38:15 70:6
**32** 75:14
**34** 14:16,17 15:4
**341** 106:17
**35** 14:20 15:5,6,6
102:11,14,15
**36** 102:15
**37** 14:20 15:6 102:15
**37404** 76:8
**38** 15:7
**39** 15:3,6 71:8 102:17

**4**

**4** 3:3 13:14 29:25
**4,578** 90:21
**40** 15:3,7 71:5 102:18
102:19
**400** 1:39 26:2
**400-6** 26:2
**407** 1:50
**41** 15:9
**412** 11:16
**42** 15:11 102:19
**420** 2:14
**439** 31:17
**441** 31:17
**443-9289** 1:50
**4500** 91:1
**46** 15:11 102:20,21

**47** 15:13
**48** 3:10 15:15 102:21
102:24 103:8
104:23,25
**49** 15:16,17
**490** 31:18

**5**

**5** 13:14 25:7 28:3
30:2,17
**50** 15:22
**500** 24:8,13
**504** 76:5
**51** 15:22,22
**52** 15:22
**53** 15:23
**54** 16:1,2
**541848** 2:27
**55(c)** 37:24 112:5
113:20,22,22
**56** 15:17
**57** 15:20
**58** 16:2
**5th** 65:14

**6**

**6** 13:18 14:3,11 30:18
30:23 31:9 57:8
76:25 77:6 81:18,22
**6/22/21** 80:9
**6:18-bk-06821-LVV**
1:5,8
**6:20-bk-01801-LVV**
1:6
**6:21-ap-00103-LVV**
1:17
**6:21-ap-00141-LVV**
1:19
**6:21-ap-00142-LVV**
1:20
**6:22-ap-00016-LVV**
1:21
**6:22-ap-00019-LVV**
1:22
**6:22-ap-00020-LVV**
1:23
**60** 103:19

**60(b)** 113:25 114:5
**601** 64:15,15
**62** 15:20 16:4,5
**63** 16:6 103:16,18
**636** 2:5
**63786** 78:19
**64** 16:7 19:6
**64861** 79:23
**65** 19:6
**66** 10:22 19:10,11
**67** 10:22 19:12
**68** 19:12 103:16,18
**69** 10:23 19:14
**691** 77:22,25

---
**7**

**7** 2:8,29 14:8,9 31:10
  31:13 38:14 48:11
  58:1 61:16 62:21
  63:22 71:2,4 81:24
  88:25 90:6 128:8
**70** 10:23 19:16 20:13
**700** 2:15
**71** 19:19 20:6
**716** 73:5
**72** 20:7 103:16,19
**73** 20:9 103:17,21
**74** 10:23 20:10 24:12
**75** 20:14 24:12
**76** 10:23 20:16
  103:20 104:5,6
**77** 10:23 20:23
**78** 21:1 104:12
**79** 10:23 21:5,8
  104:12

---
**8**

**8** 31:14 61:15 62:19
  64:7,13 89:2,14,17
  90:3,6,11 91:4,10
**8's** 62:22
**8:28** 88:6,11
**80** 21:12 104:15,16
**80-plus** 90:24
**80,000** 59:8 65:23
  66:3 109:6
**81** 21:13

**82** 104:18
**841** 77:15,18,20,21
  78:15,16
**85** 104:18
**855** 79:20
**8th** 71:12

---
**9**

**9** 31:17 32:3 89:15
  91:13 92:9,14
**9:00** 123:5
**900** 77:22
**90034** 46:12
**9032** 46:11
**950,000** 112:22
**99** 110:23,24,24
**99,028** 65:4
**99028** 64:25
**9th** 125:10